1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GODES & PREIS, LLP**
James N. Godes (State Bar No. 132183)
 *jgodes@gaplegal.com*
Michael L. Kibbe (State Bar No. 302137)
 *mkibbe@gaplegal.com*
300 Spectrum Center Drive, Suite 1420
Irvine, CA  92618
Telephone: (949) 468-0051
Facsimile: (949) 872-2281

Attorneys for Plaintiffs
WELK RESORT GROUP, INC. and WELK RESORTS PLATINUM OWNERS
ASSOCIATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP, INC., and WELK RESORTS PLATINUM OWNERS ASSOCIATION<br><br>                                        Plaintiffs,<br><br>v.<br><br>REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT TEAM; SCHROETER GOLDMARK & BENDER, P.S.; and KEN B. PRIVETT, PLC,<br>                                        Defendants. | Case No.: **'17 CV 1499 L    AGS**<br><br>**COMPLAINT FOR:**<br><br>**1.  Intentional Interference with Contractual Relations**<br>**2.  Violation of 18 U.S.C. 1961,** *et seq.*<br>**3.  Violation of the California Unfair Competition Law, Business & Professions Code Sections 17200,** *et seq.*<br>**4.  Violation of the California Vacation Ownership and Time-Share Act, Business & Professions Code Sections 11245,** *et seq.*<br>**5.  Violation of the California False Advertising Law, Business & Professions Code Sections 17500,** *et seq.*<br>**6.  Violation of the California Running and Capping Law, Business and Professions Code Sections 6150,** *et seq.*<br>**7.  Violation of California Referral Service Law, Business and Professions Code Sections 6155,** *et seq.*<br><br>**DEMAND FOR JURY TRIAL (to all claims where available)** |

-1-
**COMPLAINT**

By way of this Complaint, Plaintiffs Welk Resort Group, Inc., and the Welk Resorts Platinum Owners Association (collectively, "Welk"), aver against Defendants Reed Hein & Associates, LLC (doing business as Timeshare Exit Team), Schroeter Goldmark & Bender, and Ken B. Privett, PLC, (collectively, "Defendants"), as follows:

## INTRODUCTION

1.      Timeshare Exit Team and its co-conspirators have utilized illegal and unethical business practices to defraud thousands of vacation owners. Defendants' scheme to disrupt Welk's contractual relationships with their vacation owners involves using fraudulent advertising, making false statements and unrealistic promises to unsuspecting owners, which allows them to extract exorbitant, unwarranted fees. Defendants utilize their fraudulent scheme to interfere with Welk's business, by impeding Welk's ability to communicate with its customers, and directing Welk's customers and the Association's members to stop paying their pre-existing financial obligations to Welk, with false guarantees that there will be no consequences to the vacation owner's credit scores. Their unscrupulous, callous, and illegal schemes have caused severe consequences for unsuspecting consumers and for the Welk business. Their schemes have caused financial and reputational damage to Welk, which has enjoyed more than 50 years of providing high-quality vacation ownership opportunities and resort stays to millions of people through its resorts. As a result of this wide-ranging, fraudulent racketeering scheme, Welk and the Association have no other option but to seek justice for themselves and injunctive relief to prevent the Defendants from further damaging vacation owners and vacation ownership companies from throughout the U.S. who could become the next victims of this unscrupulous web of bad actors.

## NATURE OF ACTION

2.      Defendants, in unison as part of a wide-ranging scheme, have intentionally interfered in Welk vacation owner purchase contracts by leading Welk's owners to believe that Timeshare Exit Team works with Welk to "dissolve" such contracts and repair negative credit reporting information, on a guaranteed basis, through its

"relationship" with Welk. In reality, Reed Hein & Associates LLC (which is not a law firm) is systematically and intentionally soliciting Welk vacation owners under the trade name "Timeshare Exit Team," in a fraudulent scheme designed to induce Welk owners to breach their contracts with and payment obligations to Welk—all while steering them to instead pay $5,000, or more, to Reed Hein and its co-defendants.

3.     Welk develops vacation resort properties in California, Missouri, and Mexico. In tandem with its resort operations, Welk contracts with an affiliate to sell its vacation ownerships to guests who visit its resorts. When customers purchase a Welk vacation ownership, they typically enter into a Purchase and Sale Agreement and a Promissory Note, both of which contain certain payment obligations to Welk. In addition, Welk purchasers become members of the Association and incur payment obligations to the Association.

4.     Despite being well-aware of the contractual relationship between Welk, the Association, and the vacation owners, Timeshare Exit Team systematically markets itself to Welk owners through radio and internet advertisements—and in person at events such as the San Diego County Fair—claiming to be a "Consumer Protection Firm" that will "dissolve [their] timeshare contract … Safely. Legally. Forever."   *See* **Exhibit A.** Timeshare Exit Team's misleading marketing efforts are designed to induce Welk customers and Association members to breach their contracts with and obligations to Welk, and instead to enter into a contract with Timeshare Exit Team. Owners are misleadingly advised by Defendants that they have no obligation to pay any further money to Welk, and that there will be no consequence to the owners for failing to meet their contractual payment obligations.

5.     On information and belief, Timeshare Exit Team uses this marketing scheme to develop leads that it then sells to attorneys and law firms such as Ken B. Privett, PLC ("Privett") and Schroeter Goldmark & Bender ("SGB"), in violation of California laws prohibiting non-attorneys from obtaining business for law firms in exchange for compensation, and without registering as a Lawyer Referral Service with the California

Bar (which is required by Business & Professions Code § 6155 and California Rules of Professional Conduct, Rule 1-320 (Financial Arrangements with Non-Lawyers)).

6.      Timeshare Exit Team and their cadre of attorneys then conspire to send bare-bones, generic, one-page attorney demand letters to Welk, wherein the attorney claims to represent the owners that Timeshare Exit Team has induced to breach their contract. *See* **Exhibit B.**  However, their attorneys never provide specific information about the nature of the owners' purported (and in many cases, non-existing) dispute—despite multiple requests by Welk for any details whatsoever. Welk is further informed and believes that the owners are often not even aware that they are "represented" by these law firms, and that they are not even aware of, much less consent to, the trivial, one-size-fits-all letters being sent. Timeshare Exit Team's lawyers then instruct Welk not to communicate with the owners further, and to communicate only to the attorneys purportedly representing the owners.  Accordingly, Welk can never inform those owners of the consequences of non-compliance with their obligations.

7.      On information and belief, the law firms conduct little to no investigation of any Welk owner's purported dispute; they have little to no direct contact with most of the Welk owners that they purport to represent; and instead they are simply acting at Timeshare Exit Team's direction in return for a slice of the fee that Timeshare Exit Team has wrongfully and illegally diverted to themselves.

8.      Timeshare Exit Team and its co-conspirators have developed and executed this illegal fee-splitting scheme in order to collect and profit from fees that they obtain from Welk's owners—fees that otherwise would have been used to pay Welk for amounts properly owed to Welk and the Association.

9.      Defendants then intentionally take no further action (legal or otherwise) until the owners are considered to be in breach of their Welk contracts because they failed to meet their contractual payment obligations.  This, of course, subjects Welk owners to legal action to collect their outstanding debt, and negatively impacts their credit, contrary to Defendants' patent misrepresentations.

**COMPLAINT**

10.     Defendants' fraudulent scheme has caused Welk owners to breach their vacation purchase contracts and become delinquent in their payment obligations to Welk, and has wrongfully routed hundreds of thousands of dollars into Defendants' coffers, that would otherwise have been used to pay down debts and association fees rightfully owed to Welk.  For example, on January 20, 2016, two Welk owners contacted Welk via letter, stating that they had "spoken to … Timeshare Exit Team (855) 577-0626 … [who] assured me that the case … justifies the cancellation of our timeshare with your resort." On April 16, 2016, a Welk owner contacted a Welk employee via email, and stated, "We have contacted Timeshare Exit Team and they have assigned [a law firm] to file civil suit. They have advised the process will take 6-8 months to obtain the Mutual Release."  Welk never received a lawsuit filed on behalf of the owner.

11.     Likewise, on April 27, 2016, two Welk owners filed a civil lawsuit in the Superior Court of California, County of San Diego, naming Welk and Reed Hein as co-defendants.  The owners' allegations made clear they had been duped by Reed Hein into believing that Timeshare Exit Team has some type of direct business relationship with Welk:  The owners complained that "… Defendant Reed Hein, has a particularly cozy (yet purportedly arms-length) relationship with the other defendants in that an exit agreement between Reed Hein and [the owners] is built into the timeshare purchase transaction whereby [the owners] purportedly agree to sell their timeshare interest to Reed Hein (instead of back to the [Welk] directly) for a set price).  However, this set price ($5795 for [the owners]) is unconsciously high … the relationship between Reed Hein and [Welk] is not an arms-length relationship, that Reed Hein is not a third party with respect to [Welk] and that [Welk has] a material interest in either this purported exit agreement or in the purported exit fee associated with invoking the exit agreement." Welk was damaged by this insofar as it had to settle the owners' lawsuit under confidential terms and expended legal fees defending the case, and suffered harm to its reputation from being associated with Defendants' illegal scheme.

12.     Moreover, on or about July 3, 2017, a Welk employee attended the San

Diego County Fair at the Del Mar Fairgrounds. The employee stopped at a Timeshare Exit Team booth present at the fairgrounds' exhibitor area.  ***See* <u>Exhibit C.</u>** Defendants' representative (Angie Poole) made several false promises to the individual in order to secure business in an attempt to interfere with Welk's operations, including:

    a.  That the cost of service from Timeshare Exit Team would be approximately "$2,000 to $5,000" up front;

    b.  That the individual could "stop paying on the timeshare" in order to afford Timeshare Exit Team's services;

    c.  That Timeshare Exit Team works with experienced attorneys who "guarantee" they will get people out of their contracts;

    d.  That Timeshare Exit Team "does business with Welk";

    e.  That Timeshare Exit Team instructs owners to "stop paying" on their ownerships and that this activity "won't negatively affect" their credit; and

    f.  That exit from a timeshare ownership is "guaranteed" and all credit repair is also "guaranteed" if credit has been negatively affected.

13.    As a result of Defendants' wrongful conduct, Welk has suffered monetary and non-monetary damages, and seek redress for Defendants' illegal acts, as well as declaratory and injunctive relief to end Defendants' illegal practices and prevent further losses to Welk and the Association.

<b><u>PARTIES</u></b>

14.     Welk is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Marcos, California. Welk develops eight high-quality resort properties in California, Missouri, and Mexico. As part of its operations, Welk offers vacation ownerships for sale at its resort locations.

15.    The Association is a non-profit corporation existing under the laws of the State of California. Customers who make vacation ownership purchases become members of the Association.

16.     Plaintiffs are informed and believe, and on that basis aver, that Defendant Reed Hein & Associates, LLC ("ReedHein") is a limited liability company, organized and existing under the laws of the State of Washington, with a corporate office in Lynnwood, Washington.

17.     Plaintiffs are informed and believe that Defendant Timeshare Exit Team ("Timeshare Exit Team"), is an alter-ego dba of ReedHein, operating out of the same corporate office location in Lynnwood, Washington, as ReedHein.

18.     Plaintiffs are informed and believe that at all times herein mentioned, Defendants ReedHein and Timeshare Exit Team were the alter egos, agents, servants, accomplices, and/or employees of each other, acting within the course and scope of said relationships, and whose acts or omissions averred herein were authorized, adopted, approved or ratified by each other.

19.     Plaintiffs are informed and believe that Defendant Schroeter Goldmark & Bender ("SGB") is a professional service firm, organized and existing under the laws of the State of Washington, with a corporate office in Seattle, Washington.

20.     Plaintiffs are informed and believe that Defendant and Ken B. Privett, PLC ("Privett") is a professional service firm, organized and existing under the laws of the State of Oklahoma, with a corporate office in Pawnee, Oklahoma.

## **JURISDICTION**

21.     This action is brought pursuant to 28 United States Code §1332 (diversity jurisdiction). This Court has diversity jurisdiction over the subject matter of this action because the amount in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

22.     Together, Welk's monetary damages and the injunctive relief sought, which would preserve the value of Welk's contracts with current owners and members and allow for cost savings obtained by the cessation of Defendants' tortious conduct, is valued at well over $75,000.

///

**VENUE AND FORUM**

23.     Venue and forum are proper in the Southern District of California, pursuant to Title 28, United States Code §1391(b), because a substantial part of the events or omissions on which Plaintiffs' claims are based occurred in this District, including the wrongful actions of the Defendants.

**GENERAL AVERMENTS**

24.     Welk has valid and enforceable vacation ownership purchase contracts with numerous customers, dating back many years. Through these contracts, Welk vacation owners agree to pay Welk for their vacation ownership. They also become members of the Association, and agree to pay maintenance fees, also known as Vacation Owner Association Dues ("VOA Dues"), to the Association, which enables the Association and Welk to maintain their high service standards and resort quality.

25.     On information and belief, Defendants are co-conspirators, acting in unison, and have been engaging in a scheme designed to disrupt Plaintiffs' contractual relationships with its vacation owners and members, which includes:

    a.  Misrepresenting that Defendants have a preexisting agreement with Welk or otherwise do business with Welk to guarantee termination of any purchase contracts;

    b.  Misrepresenting that Defendants can guarantee that there will not be any negative credit reporting by Welk or that any prior negative credit reporting by Welk can be eliminated;

    c.  Misrepresenting to Plaintiffs' owners and members that stopping payment on a Welk contract or on Association dues will not affect their credit or constitute a breach of their contracts with Welk;

    d.  Sending unsolicited and/or knowingly fraudulent and misleading correspondence to Plaintiffs' owners and members regarding their contractual obligations;

    e.  Deceptively representing to Plaintiffs' owners and members, among

-8-
**COMPLAINT**

other things, that Timeshare Exit Team "guarantees" to permanently eliminate their contractual obligations; and

    f.   Soliciting Welk owners and Association members to pay Defendants in lieu of paying on their contractual obligations to Welk and the Association.

26.   Defendants' scheme consists of obtaining vacation ownership clients via digital marketing, radio advertisements, in-person event solicitation, and, on information and belief, direct mail advertisements, within and outside of the State of California, in some cases using the endorsements of celebrities. Defendants assign this lead to a Timeshare Exit Team representative.  (For example, on May 27, 2016, two former ReedHein employees filed suit against ReedHein and Timeshare Exit Team, alleging in their complaint that the company "assists timeshare owners in dissolving their timeshare contracts" and would assign them "leads" and provide them "scripts" to use with timeshare owners.  ***See <u>Anderson et al v. Reed Hein & Associates LLC</u><u>. Docket 2:16-cv-00785-RSL W.D.Wash. May 27, 2016</u>***).

27.   On information and belief, Defendants then instruct Welk owners and Association members to cease paying any money to Welk or the Association, and instead convince owners to pay Defendants directly for their services. In either event, Defendants' actions are unlawful, as they impermissibly interfere with the contractual relationship between Welk and owners and members through false and deceptive means.

28.   On information and belief, after obtaining a lead through this marketing scheme, Timeshare Exit Team passes the lead to a rotating band of attorneys and/or law firms such as SGB and Privett, while sharing a flat fee in exchange for the referral. (For example, on July 6, 2016, Timeshare Exit Team CEO Brandon Reed told USAToday.com that "his company uses lawyers 'to get the resort to take the timeshare back.'"  ***See <u>Exhibit D.</u>***)  Plaintiffs are informed and believe that Defendants collect a flat fee from vacation owners totaling $5,000 or more, depending on the amount of their outstanding vacation ownership debt to Welk, which they split among and between

themselves.

29.     Timeshare Exit Team's co-conspirator law firms and attorneys then contact Welk in order to "negotiate" an exit of the vacation ownership contract. However, no factual information is provided to Welk about the purported dispute, other than the fact that the vacation owners are interested in exiting their ownership. For example, the attorneys make no specific claims on their "clients'" behalves, and instead demand that Welk no longer contact the vacation owners directly, as they are represented by counsel in this unidentified dispute. On information and belief, many owners are never contacted by their "attorney" or law firm after they are solicited by Timeshare Exit Team to breach their Welk contracts; they are not aware what outside attorney is acting and communicating on their behalf; and they have no direct relationship or contact with "their attorney."

30.     Meanwhile, as Welk waits for Timeshare Exit Team's co-conspirators to provide factual support for any kind of valid dispute as to the ownership (which almost never arrives), it receives no payments on the affected owners' purchase contracts per the advice given to the owners by Defendants, and the Association receives no payment for outstanding dues. These breaches inevitably result in legal action and negative reporting to credit agencies against the owners, contrary to Defendants' advertising and express representations to the owners.

## FIRST CLAIM FOR RELIEF

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### Against All Defendants

31.     Plaintiffs incorporate averments set forth in paragraphs 1-30 above, as if set forth in full herein.

32.     As averred herein, Plaintiffs have valid and enforceable contracts with vacation owners and members.

33.     Defendants had knowledge of the existence of those contracts between Plaintiffs and the vacation owners. Further, Defendant ReedHein advertises on its website

that it is dedicated to assisting owners to get out of their contracts, and states boldly that "our personal GUARANTEE to you is that our team of consumer advocates will get your out of your timeshare, period." ***See* Exhibit E.** In some instances, ReedHein describes itself as a "Consumer Protection Firm," while in others it states that it is not a law firm. Defendants have also advised vacation owners that they can easily terminate or void their contracts, such that the owners can walk away from any contractual obligation with no consequence whatsoever.

34.     Defendants intended to disrupt the contracts between Welk and their vacation owners and members, as they sent targeted correspondence directly to Welk's vacation owners advising them that they could assist them in canceling or avoiding their vacation ownership obligations. In those marketing materials, among other false promises, Defendants advised that their services are "GUARANTEED."

35.     Defendants then conspire with each other and send bare-bones, generic, one-page attorney demand letters to Welk, wherein a law firm claims to represent the owners that Defendant Timeshare Exit Team has induced to breach their contract. However, their attorneys never provide specific information about the nature of the owners' dispute—despite multiple requests by Welk for any details whatsoever.  Instead, Defendants instruct Welk not to communicate with the owners further, and to communicate only to the attorneys purportedly representing the owners, all to Welk's detriment.

36.     Defendants' intent is to harm Welk along with the owners, including disruption to and diminishment of Welk's business, contractual relationships, and reputation.

37.     Defendants' conduct has disrupted vacation ownership contracts, threatens to continue to disrupt vacation ownership contracts, and has made the performance of vacation ownership contracts more expensive and/or difficult.

38.     Welk has had to expend money, time, and energy in maintaining its established contractual relationships with vacation owners and members, and Welk has suffered reputational damage as a result of Defendants' conduct. Defendants' conduct

was a substantial factor in causing Welk's harm. Because of Defendants' conduct, Welk is entitled to relief, including monetary damages and attorneys' fees and costs.

39.     Further, Defendants' conduct was done maliciously, oppressively, and with the intent to interfere with Welk's existing contracts, all for Defendants' illicit benefit at Welk's expense. Accordingly, Welk is entitled to punitive and exemplary damages from Defendants, pursuant to California Civil Code section 3294 *et seq.*, in an amount sufficient to punish them for the tortious conduct averred herein and to dissuade them and others similarly situated from engaging in such conduct in the future.

**SECOND CLAIM FOR RELIEF**

**VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

**Against All Defendants**

40.     Plaintiffs incorporate averments set forth in paragraphs 1-39 above, as if set forth in full herein.

41.     This claim arises under 18 U.S.C. section 1962(c), which provides in part: "it shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity."

42.     Timeshare Exit Team, SGB and Privett are enterprises within the meaning of 18 U.S.C. 1961(4) that engaged in activities averred herein that affect or impact the state of California, to wit:  Timeshare Exit Team, SGB and Privett conspired to unlawfully disrupt the contracts between Welk and their vacation owners and members, when Timeshare Exit Team targeted Welk's vacation owners who owned timeshares in California; advised them that they could assist them in canceling or avoiding their vacation ownership obligations and contracts; and then sold those owners as leads to SGB and/or Privett (or engaged in a fee-splitting arrangement with them).

43.     Defendants acted in concert, and participated in the enterprise's affairs

-12-

**COMPLAINT**

through a pattern of racketeering activity, consisting of numerous and repeated uses of mail and wire communications, in order to execute a scheme to defraud Welk, the Association, and vacation owners and members.

44. On information and belief, Defendants sent or caused to be sent, materials by wire for the purpose of executing the scheme. These activities amount to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials include, but are not limited to, interstate website and digital advertisements, and interstate credit card transactions.

45. On information and belief, Defendants sent or caused to be sent, materials via U.S. mail or commercial interstate carriers for the purpose of executing the scheme. These activities amount to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. On information and belief, the materials include, but are not limited to direct mail pieces, contracts, and letters promoting the scheme.

46. The predicate acts which constitute this pattern of racketeering activity include:

a. On or about July 1, 2017, and continuing today, Defendants each conspired to cause the fraudulent use of interstate wires through Timeshare Exit Team's Internet website, which states that "our personal GUARANTEE to you is that our team of consumer advocates will get you out of your timeshare, period." This activity fraudulently induces Welk owners to breach their contract with Welk, in violation of 18 U.S.C. section 1343. *See* **Exhibit E.**

b. On or about November 30, 2016, and continuing today, Defendants each conspired to cause the fraudulent use of interstate mail to fraudulently induce Welk's owners and members to breach their contracts by offering and mailing loan agreements to pay for any settlement with Welk, including credit card transaction information, and send bare-bones,

generic, one-page attorney demand letters to Welk, wherein the attorney claims to represent the owners that Timeshare Exit Team has induced to breach their contract, in violation of 18 U.S.C. section 1341. *See* **Exhibit F.**

c.  On or about January 12, 2017, Defendant Privett conspired with other Defendants to cause the fraudulent use of interstate mail in furtherance of Defendants' scheme to fraudulently induce Welk's owners and members to breach their contracts with Welk, by sending a bare-bones, generic, one-page attorney demand letter to Welk, wherein the attorney claims to represent the owners that Timeshare Exit Team has induced to breach their contract, in violation of 18 U.S.C. section 1341. *See* **Exhibit B.** Welk is further informed and believes that the owners are often not even aware that they are "represented" by Defendant Privett, and that they are not even aware of, much less consent to, the trivial, one-size-fits-all letters being sent by Privett's firm.  Timeshare Exit Team's lawyers instruct Welk not to communicate with the owners further, and to communicate only to the attorneys purportedly representing the owners. Accordingly, Welk can never inform those owners of the consequences of non-compliance with their obligations – all in furtherance of Defendants' fraudulent racketeering scheme.

d.  On or about March 1, 2017, Defendant SGB conspired with other Defendants to cause the fraudulent use of interstate mail in furtherance of Defendants' scheme to fraudulently induce Welk's owners and members to breach their contracts with Welk, by sending a bare-bones, generic, one-page attorney demand letter to Welk, wherein the attorney claims to represent the owners that Timeshare Exit Team has induced to breach their contract, in violation of 18 U.S.C. section 1341. *See* **Exhibit B.** Welk is further informed and believes that the owners are often not even

aware that they are "represented" by Defendant SGB, and that they are not even aware of, much less consent to, the trivial, one-size-fits-all letters being sent by SGB's firm. Timeshare Exit Team's lawyers instruct Welk not to communicate with the owners further, and to communicate only to the attorneys purportedly representing the owners. Accordingly, Welk can never inform those owners of the consequences of non-compliance with their obligations – all in furtherance of Defendants' fraudulent racketeering scheme.

47. These acts of racketeering, occurring within five years of one another, constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

48. The enterprise was created and/or used as a tool to carry out the pattern of racketeering activity.

49. Defendants have committed directly, or aided and abetted the commission of the racketeering activities, and the acts pose a threat of continued racketeering activity, and therefore constitute pattern as such.

50. Defendants knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendants obtained money, and transferred money between them, as a result of these violations.

51. As a direct and proximate result of Defendants' unlawful racketeering activity, Welk has been substantially harmed by Defendants' actions and has suffered damages in an amount to be proven at trial.

52. Under the provisions of 18 U.S.C. §1964(c), Defendants are jointly and severally liable to Welk for three times the damages that Welk suffered, plus costs of brining the suit, and reasonable attorney's fees in connection herewith.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### Against All Defendants

53. Plaintiffs incorporate averments set forth in paragraphs 1-52 above, as if set

forth in full herein.

54.     Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

55.     Defendants' acts and practices, as averred herein, constitute unlawful, unfair and fraudulent business practices, in violation of the UCL.

56.     California Business and Professions Code section 17204 allows a person, which includes a corporation, injured by unfair business acts or practices to prosecute a civil action for violation of the UCL.

57.     Defendants' acts and practices, as averred herein, constitute unlawful practices in that they are tortious, and, in particular, intentionally interfere with contractual relations between Plaintiffs and their vacation owners and members, and violate 18 U.S.C. 1962(c), and Business and Professions Code sections 6150, *et seq.* (California's Runners and Cappers Act), 6155 (California's Lawyer Referral law), 11245, *et seq.* (California's Vacation Ownership and Time-Share Act), and 17500, *et seq.* (California's False Advertising Act).

58.     Defendants' business practices, as detailed herein, are also unfair, as they are unethical, oppressive, and unscrupulous, and they violate fundamental policies of this State. Further, any justification for Defendants' wrongful conduct is outweighed by the adverse effects of such conduct. Plaintiffs and vacation owners could not reasonably avoid the harm caused by Defendants' wrongful practices. Furthermore, Defendants' acts and practices constitute unfair business practices in that they misled consumers by making misrepresentations and untrue statements about their relationship and contractual obligations with Welk, their ability to guarantee an exit from their vacation ownership, and that Welk's vacation owners and members would incur no consequences if they stopped paying on their contractual obligations.

59.     Assuming, arguendo, that Defendants' practices are not express violations of the laws, those practices fall within the penumbra of such laws and a finding of

unfairness can properly be tethered to public policy. Thus, Defendants engaged in unfair business practices prohibited by Business & Professions Code sections 17200, *et seq.*

60.     Defendants' business practices, as detailed herein, are also fraudulent, as they misled consumers by making misrepresentations and untrue statements about their relationship and contractual obligations with Welk, their ability to guarantee an exit from their vacation ownership, and that Welk's vacation owners and members would incur no consequences if they stopped paying on their contractual obligations. On information and belief, reasonable members of the public are likely to be deceived by Defendants' misrepresentations and untrue statements.

61.     As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices averred herein, Plaintiffs have suffered injury in fact. Plaintiffs have been injured in that they have had to expend money, time and energy in maintaining established relationships with vacation owners, that they would not otherwise have had to do but for Defendants' unlawful, unfair and fraudulent conduct. Further, Plaintiffs have suffered reputational damage as a result of Defendants' conduct. Defendants' conduct is such that it would also mislead a reasonable vacation owner. Moreover, Defendants' are profiting from their wrongful conduct in the form of fees charged.

62.     Welk has also suffered injury as a result of Defendants' actions for which there is no adequate remedy at law. Welk is informed and believes and thereon avers that unless restrained by order of this Court, Defendants will continue the acts averred above, or similar acts.

63.     Because of Defendants' unfair, unlawful and fraudulent business practices, Welk is entitled to relief, including restitution for costs incurred associated with Defendants' solicitations and disgorgement of all profits accruing to Defendants because of their unlawful and unfair business practices, injunctive relief, and attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5.

### FOURTH CLAIM FOR RELIEF

**VIOLATION OF THE CALIFORNIA VACATION OWNERSHIP AND TIME-SHARE ACT**

**Against Defendant Reed Hein & Associates, LLC**

64.     Plaintiffs incorporate averments set forth in paragraphs 1-63 above, as if set forth in full herein.

65.     ReedHein's acts and practices, as averred herein, constitute false and misleading advertisements in connection with timeshares, in violation of the California Vacation Ownership and Time-Share Act, California Business and Professions Code section 11245, et seq.

66.     California Business and Professions Code sections 11245 and 11285 allows a person, which includes a corporation, to prosecute an action for an injunction, damages, and/or declaratory relief, in connection with a timeshare, for any material misrepresentation that is false or misleading in connection with the timeshare, or for any material misrepresentation of an incidental benefit.

67.     ReedHein has been sending and providing knowingly false and misleading information to Welk's client vacation owners and members, advising them, among other things, that they are "guaranteed" to permanently eliminate all of their vacation ownership obligations, that they have preexisting relationships with Welk, and that they would incur no damage to their credit reports if they stop payments.

68.     Moreover, as another example of ReedHein's wrongful practices, on or about July 3, 2017, a Welk employee attended the San Diego County Fair at the Del Mar Fairgrounds. The employee stopped at a Timeshare Exit Team booth present at the fairgrounds' exhibitor area. *See* **Exhibit C.**  The representative (Angie Poole) made several false promises to the individual in order to secure business in an attempt to interfere with Welk's operations, including:

      a. That the cost of service from Timeshare Exit Team would be approximately "$2,000 to $5,000" up front;

    b.   That the individual could "stop paying on the timeshare" in order to afford Timeshare Exit Team's services;

    c.   That Timeshare Exit Team works with experienced attorneys who "guarantee" they will get people out of their contracts;

    d.   That Timeshare Exit Team "does business with Welk";

    e.   That Timeshare Exit Team instructs owners to "stop paying" on their ownerships and that this activity "won't negatively affect" their credit; and

    f.   That exit from a timeshare ownership is "guaranteed" and all credit repair is also "guaranteed" if credit has been negatively affected.

69.    Each of these representations made by ReedHein, and its associates, was false and misleading, and in violation of California Business and Professions Code section 11245.

70.    As a direct and proximate result of ReedHein's knowingly false and misleading correspondence, as averred herein, Welk has had to expend money, time and energy in maintaining their established relationships with vacation owners, that they would not otherwise have had to do but for ReedHein's actions.  Additionally, Welk has suffered reputational damage as a result of ReedHein's conduct.  ReedHein's conduct is such that it would also mislead a reasonable vacation owner.

71.    Welk has also suffered injury as a result of ReedHein's actions for which there is no adequate remedy at law. Welk is informed and believes and thereon avers that unless restrained by order of this Court, ReedHein will continue the acts averred above, or similar acts.

72.    Because of ReedHein's knowingly false and misleading scheme, Welk is entitled to relief, including monetary damages, injunctive relief, and attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5.

///

### FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW

#### Against Defendant Reed Hein & Associates, LLC

73. Plaintiffs incorporate averments set forth in paragraphs 1-72 above, as if set forth in full herein.

74. Pursuant to California Business and Professions Code 17500, *et. seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

75. Moreover, as another example of ReedHein's fraudulent and illegal advertising, on or about July 3, 2017, a Welk employee attended the San Diego County Fair at the Del Mar Fairgrounds. The employee stopped at a Timeshare Exit Team booth present at the fairgrounds' exhibitor area. *See* **Exhibit C.** The representative (Angie Poole) made several false promises to the individual in order to secure business in an attempt to interfere with Welk's operations, including:

    a. That the cost of service from Timeshare Exit Team would be approximately "$2,000 to $5,000" up front;

    b. That the individual could "stop paying on the timeshare" in order to afford Timeshare Exit Team's services;

    c. That Timeshare Exit Team works with experienced attorneys who "guarantee" they will get people out of their contracts;

    d. That Timeshare Exit Team "does business with Welk";

    e. That Timeshare Exit Team instructs owners to "stop paying" on their ownerships and that this activity "won't negatively affect" their credit; and

    f. That exit from a timeshare ownership is "guaranteed" and all credit repair is also "guaranteed" if credit has been negatively affected.

76. ReedHein misled consumers by making misrepresentations and untrue statements about their relationship and contractual obligations with Plaintiffs, their ability

to guarantee an exit from their vacation ownership, and that Plaintiffs' vacation owners and members would incur no consequences if they stopped paying on their contractual obligations.

77.    As a direct and proximate result of ReedHein's false advertising practices averred herein, Plaintiffs have suffered injury in fact.  Plaintiffs have been injured in that they have had to expend money, time and energy in maintaining established relationships with vacation owners, that they would not otherwise have had to do but for ReedHein's unlawful, unfair and fraudulent conduct.  Further, Plaintiffs have suffered reputational damage as a result of ReedHein's conduct.  ReedHein's conduct is such that it would also mislead a reasonable vacation owner. Moreover, ReedHein is profiting from its wrongful conduct in the form of fees charged.

78.    The misleading and false advertising described herein presents a continuing threat to Plaintiffs in that ReedHein persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by a binding decision-maker. Plaintiffs are entitled to preliminary and permanent injunctive relief ordering ReedHein to cease its false advertising. Because of ReedHein's false advertising practices, Plaintiffs are entitled to relief, including restitution for costs incurred associated with ReedHein's solicitations and disgorgement of all profits accruing to ReedHein because of its unlawful and unfair business practices, injunctive relief, and attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA RUNNING AND CAPPING LAW

#### Against All Defendants

79.    Plaintiffs incorporate averments set forth in paragraphs 1-78 above, as if set forth in full herein.

80.    Defendants have violated Business and Professions Code sections 6151 and 6152 by engaging in "Running and Capping," the practice of non-attorney agents obtaining business for an attorney or law firm for compensation, or soliciting other to

engage in running in capping.

81.     On information and belief, Defendant ReedHein actively solicit Welk's owners and members through the unfair and misleading practices described above. ReedHein then contracts with vacation owners for a flat fee, determined by the amount the owners still owe to Welk. ReedHein has preexisting agreements with outside attorneys (SGB and Privett) to write letters on the owners' behalf, for a portion of the original flat fee. Although the outside attorneys write to Welk with the claim that they represent the owners, the attorneys do not know the particulars of their "clients'" cases, and instead attempt to negotiate a quick exit, without having to invest time or money researching their position.

82.     Any contract for professional services secured by any attorney at law or law firm in California through the services of a runner or capper is void. Plaintiffs have been substantially harmed by Defendants' violations of Running and Capping laws, and are entitled to relief, including injunctive relief, restitution for costs incurred associated with Defendants' actions, and disgorgement of all profits accruing to Defendants because of their actions.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA LAWYER REFERRAL SERVICES LAWS**

**Against All Defendants**

83.     Plaintiffs incorporate averments set forth in paragraphs 1-82 above, as if set forth in full herein.

84.     Defendants have violated Business and Professions Code sections 6155 and Article 1, Rule 3.700 of Title 3, Division 5, of the Rules of the State Bar of California, by operating for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys, and accepting such referrals, without complying with the registration and other requirements of Business & Professions Code section 6155.

85.     On information and belief, Defendant ReedHein actively solicits Welk's owners and members through the unfair and misleading practices described above.

ReedHein then contracts with vacation owners for a flat fee, determined by the amount the owners still owe to Welk. ReedHein has preexisting agreements with outside attorneys (SGB and Privett) whereby it refers these potential clients to SGB and Privett, for a portion of the original flat fee. Although the outside attorneys write to Welk with the claim that they represent the owners, the attorneys do not know the particulars of their "clients'" cases, and instead attempt to negotiate a quick exit, without having to invest time or money researching their position.

86.    Any contract for professional services secured by any attorney at law or law firm in California through the services in violation of Business and Professions Code section 6155 is void.   Plaintiffs have been substantially harmed by Defendants' violations, and are entitled to relief, including injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members in violation of California Referral Service laws, restitution for costs incurred associated with Defendants' actions, and disgorgement of all profits accruing to Defendants because of their actions.

## PRAYER

Wherefore, Plaintiffs pray for judgment as follows:

### AS TO THE FIRST CLAIM FOR RELIEF

1.    For general and special damages proximately caused by Defendants' tortious conduct, as averred herein.

2.    For punitive damages.

3.    For attorneys' fees.

### AS TO THE SECOND CLAIM FOR RELIEF

1.    For injunctive relief enjoining Defendants from soliciting Plaintiffs vacation owners and members, from false and misleading advertising, and from encouraging and/or offering to assist them in breaching their vacation ownership obligations.

2.    For compensatory damages, in an amount to be proven at trial, which are in excess of the jurisdictional minimum of this Court, including interest as permitted by law;

3.    For treble damages under the 18 U.S.C. 1964(c);

-23-
**COMPLAINT**

1    4.    For attorneys' fees.

## AS TO THE THIRD CLAIM FOR RELIEF

1.    For injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members, from false and misleading advertising, and from encouraging and/or offering to assist them in breaching their vacation ownership obligations.

2.    For restitution.

3.    For disgorgement of profits.

4.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## AS TO THE FOURTH CLAIM FOR RELIEF

1.    For injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members, from false and misleading advertising, and from encouraging and/or offering to assist them in breaching their vacation ownership obligations.

2.    For general and special damages proximately caused by Defendants' conduct, as averred herein.

3.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## AS TO THE FIFTH CLAIM FOR RELIEF

1.    For injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members, from false and misleading advertising, and from encouraging and/or offering to assist them in breaching their vacation ownership obligations.

2.    For restitution.

3.    For disgorgement of profits.

4.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

**COMPLAINT**

## AS TO THE SIXTH CLAIM FOR RELIEF

1.      For injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members, from false and misleading advertising, and from encouraging and/or offering to assist them in breaching their vacation ownership obligations.

2.      For restitution.

3.      For disgorgement of profits, and any fees and other compensation received pursuant to any contracts deemed void for Defendants' violation of Business and Professions Code section 6150, *et seq*.

5.      For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## AS TO THE SEVENTH CLAIM FOR RELIEF

1.      For injunctive relief enjoining Defendants from soliciting Plaintiffs' vacation owners and members in violation of California Referral Service laws.

2.      For restitution.

3.      For disgorgement of profits.

4.      For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## AS TO ALL CLAIMS FOR RELIEF

1.      For costs of suit herein.

2.      For such other and further relief as this Court may deem just and proper.

Date:  July 25, 2017

**GODES & PREIS, LLP**

By:  */s/ Michael L. Kibbe*
_____

James N. Godes
Michael L. Kibbe

Attorneys for Plaintiffs
WELK RESORT GROUP,
INC. and WELK RESORTS
PLATINUM OWNERS
ASSOCIATION

-25-
**COMPLAINT**

EXHIBIT A

## We are NOT a listing company.

Our Consumer Protection Firm is ready to help you dissolve your timeshare contract.
**Safely. Legally. Forever.**

What makes us different:
- Free Consultation
- Local Offices
- Nationally Endorsed and BBB Accredited
- 100% Money Back Guarantee

## Testimonials

They did exactly what they said they'd do... and the people were so kind and willing to answer any questions.

– Marcia D

The team was professional, honest, and I am now timeshare free. I am very pleased with the experience.

– Sue C

**Nationally Endorsed by**







**Tiffany V.** Client Advisor Lynnwood, WA

**timeshareexitteam.com**
**1-855-733-3434**
BY reedhein
A CONSUMER PROTECTION FIRM

# DITCH YOUR TIMESHARE

## we can help you
### EXIT YOUR TIMESHARE

## 100% GUARANTEED

Schedule your free consultation today.

*Angie Poole*

*Alex*
*Brian*

*Dave*





**timeshareexitteam.com**
**1-855-733-3434**   BY reedhein
A CONSUMER PROTECTION FIRM



**Nationally Endorsed by**


THE DAVE RAMSEY SHOW


BBB ACCREDITED BUSINESS


GUARANTEE 100% MONEY BACK

# EXHIBIT B

# KEN B. PRIVETT, PLC ATTORNEY AT LAW

P.O. Box 97, 524 5th Street
Pawnee, Oklahoma74058

Office: (918) 762-2705 or (877) 377-8699
Fax: (918) 513-7779
E-mail: documents@kenprivettplc.com

A member of the bar in the states of Oklahoma & Colorado

January 12, 2017

Welk Resorts
8860 Lawrence Welk Dr.
Escondido, CA 92026

RE: ███████████████████                         ACCOUNT #: ███████████

RESORT:  VILLAS AT THE WELK

Dear Sir/Madame:

Please be advised that we want to terminate the above referenced owners' obligation with your timeshare company, including the mortgage and promissory note, if applicable. We would entertain a small transfer fee.

Please grant us this request.

Thank you.

Sincerely yours,

Ken B. Privett
Manager, PLC

KBP/cr



**SCHROETER**
**GOLDMARK**
**BENDER**

ESTABLISHED 1969

March 1, 2017

Attn: Member Services
Welk Resorts
300 Rancheros Drive, Suite 450
San Marcos, CA 92069

Dear Sir/Madam:

We are writing to advise you that this law firm represents the below referenced owners with regard to their timeshare memberships with your organization.

Our Clients/Your Purchasers:                    Contract/Member Nos.:

Our clients are interested in terminating their time share memberships.  With the lone exception of forwarding routine billings to the clients via mail, you are hereby notified not to contact our clients in any format.  Please direct all further correspondence and communications regarding the proposed termination and anything related to it, to our office.

Also, please confirm within 30 days that this letter has arrived at the correct department, and let us know where to send future correspondence.  You may also confirm receipt by emailing us at leiferman@sgb-law.com.

If you have any questions or would like to discuss these matters further, please do not hesitate to contact our office.  Together with local counsel, we look forward to working with you to resolve these matters.  We thank you in advance for your good consideration.

Sincerely,

JAMES HAILEY
Attorney at Law

THOMAS BREEN
Attorney at Law

EXHIBIT C



# EXHIBIT D

# Got timeshare regret? What to do about it

Nicholas Clements, Special for USA TODAY      7:30 a.m. EDT July 6, 2016



(Photo: iStockphoto)

Did you buy that dream timeshare, only to wake up with buyer's remorse? If you are regretting your purchase, you do have options.

First, the bad news. Timeshares are not investments. Their value declines rapidly over time, and the maintenance fees can and likely will increase. If you feel stuck, here are four options that could help:

- Refinance the timeshare mortgage.
- Sell or give away your timeshare.
- Try to give it back to the resort.
- Work with a company to help you negotiate an exit.

## Refinance your timeshare loan

If you like your timeshare, but you don't like the high interest rate on your loan, you can refinance. LightStream (https://www.lightstream.com/timeshare-loans), an online lender owned by SunTrust Bank, offers a timeshare refinance loan. Interest rates start at 5.99% and there is no origination fee or prepayment penalty. According to Todd Nelson of LightStream, "Financing is most commonly and conveniently offered by developers when buyers purchase their timeshare. As a result, owners may think they have no other option and, in fact, may wind up with higher rates than they may need to pay." You need good credit to qualify.

Home equity loans, personal loans and even 0% balance-transfer offers from credit card companies can often provide lower interest rates than developer loans. You can shop online for personal loans at MagnifyMoney (http://www.magnifymoney.com/compare/personal-loans/) or NerdWallet (https://www.nerdwallet.com/personal-loans) to find the best rates.

Refinancing provides one additional benefit: You will have greater flexibility to negotiate an exit or give away your timeshare because you will no longer have a mortgage attached to it.

## Sell it or give it away

Timeshares rapidly lose value, so you should not be surprised to receive only a fraction of your original purchase price. Sometimes you can't even give them away.

Be cautious of any company that promises an amazing resale price but asks for money upfront. According to the Federal Trade Commission (https://www.consumer.ftc.gov/articles/0073-timeshares-and-vacation-plans#selling), "If you want to sell your deeded timeshare, and a company approaches you offering to resell your timeshare, go into skeptic mode."



USA TODAY

With travel rewards credit cards, timing is everything

(http://www.usatoday.com/story/money/personalfinance/2016/04/14/travel-rewards-credit-cards-timing-everything/82917796/)

As a starting point, try to determine the market value of your timeshare by visiting RedWeek (http://www.redweek.com/) or the Timeshare Users Group (http://tug2.com/timeshare-marketplace.aspx). You can try to sell your timeshare online at these sites. EBay and Craigslist are also popular options. You might have to cover closing costs and some maintenance fees to get a sale.

Before putting your timeshare on the market, check to see if your resort has a sales office. Howard Nusbaum, the CEO of the American Resort Development Association, believes you have better chances if your resort has an active sales office because it "has the ability to recycle inventory quickly."

## Give it back to the resort

You might be able to exit your timeshare obligation completely. Although the resort is under no obligation to work with you, they might. According to Michael Brown, the COO of Hilton Grand Vacations, "Should owners need to exit due to life changes, we offer a resale department that can discuss with them their options, including buy-back consideration."

If your timeshare is not operated by a big brand, make sure you reach out to the right people. Brian Rogers, the owner of Timeshare Users Group, recommends contacting your homeowners association in writing. He encourages people to "be perfectly honest" to get the best result.

*Before putting your timeshare on the market, check to see if your resort has a sales office. (Photo: Getty Images)*



USA TODAY

6 ways to have a happy retirement

(http://www.usatoday.com/story/money/columnist/powell/2016/05/25/6-ways-have-happy-retirement/83547956/)

## Engage with a timeshare exit company

If the resort is not willing to take it back and you cannot sell it, you might want to hire an exit company. These businesses are controversial and expensive, costing $5,000 or more to help you exit your timeshare. Do the math, but offering several years maintenance fees to a potential buyer could be a cheaper option.

At worst, you will pay a timeshare exit company to do something you could easily do yourself.

But if all else fails, you might want to consider a company like Timeshare Exit Team (https://timeshareexitteam.com/). CEO Brandon Reed explains that his company uses lawyers "to get the resort to take the timeshare back." Reed claims that his lawyers will play hardball and they get results. His company offers a guarantee: If they are not successful, you get your money back.

When deciding which company to choose, Rogers warns against using any company that requires an up-front payment. He believes that "if it was that much of a guarantee, there is no reason to charge until the end."

Some people just stop paying on their timeshares. If you do walk away, don't be surprised to see a big hit to your credit score and to start getting regular calls from collection agencies. You might regret your purchase, but you did sign a legally binding contract.

*Nick Clements is the co-founder of MagnifyMoney.com (http://www.magnifymoney.com/), a financial education and price comparison website.*

Read or Share this story: http://usat.ly/29gUscZ

11

# EXHIBIT E

"Our personal **GUARANTEE**
to you is that our team of
consumer advocates will get
you out of your timeshare,
period."

Brandon Reed
Founder, Timeshare Exit Team



## GET A FREE CONSULTATION

or call us at 1-800-848-2911

© 2013-2017 Reed Hein & Associates, LLC
Phone: 800-848-2911
Terms and Conditions
Reed Hein is not a law firm*



Click for Review

reed**hein**
& ASSOCIATES

Corporate Office
3400 188th St. SW Suite 300
Lynnwood, WA 98037

Contact Us



13

# EXHIBIT F

## PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, ▮▮▮▮▮▮▮▮, hereinafter referred to as "Maker", residing at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, promises to pay to the order of Reed Hein & Associates, LLC, hereafter referred to as "Holder", located at 3400 188th Street SW, Lynnwood, WA, 98037 the sum of **One Thousand, ($1,000.00) US Dollars**.

### Payment Terms

(A)     Term – Holder will pay $1,000 to Welk Resorts on behalf of Maker. Maker shall reimburse Holder per the terms stated in the attached Finance Agreement, which is considered part of this Promissory Note and is incorporated herein by reference in its entirety.

(B)     Delivery - Payments shall be delivered to the Holder at the address shown above or any other such address as may later be agreed upon by both parties.

(C)     Prepayments - If the Maker prepays the Note in part, the Maker agrees to continue to make the regularly scheduled payments until all amounts due under the Note are paid. There will be no penalty for prepayment of some or all of the Note.

### Failure to Pay

(A)     Default - Maker will be in default for any of the following reasons: (i) Maker does not pay the full amount of each by the date stated in the Payment Terms above, (ii) if Maker defaults on any promise made in this Note or any other note, loan or agreement with the Holder, (iii) death of the Maker, (iv) if the Maker files a bankruptcy petition or anyone files a bankruptcy petition against the Maker, or (v) if the Maker becomes insolvent and/or cannot pay the Maker's debts as they come due. Maker waives any notice of default.

(B)     Acceleration – If at any time the Maker is in default as specified herein, Holder may require the Maker to immediately pay the full amount remaining due under the Note.

(C)     Payment of Note Holders Costs and Expenses - In the event of any default, the undersigned agrees to pay all reasonable attorney fees and costs of collection to the extent permitted by law.

# FINANCE AGREEMENT

Beginning on November 1, 2016, and until the balance of $1,000.00 ("Amount Financed") is paid in full, I, ███████████, authorize the following payments to Reed Hein & Associates, LLC:

## SELECT ONE:

☐ 5 equal payments of
$200 per month

November 1, 2016 –
March 1, 2017

OR

☒ 10 equal payments of
$100 per month

November 1, 2016 –
August 1, 2017

## SELECT ONE:

Payment will be made on my Credit Card or via ACH, as directed below.

☐ **ACH**

Name on Account _____

Bank _____

Routing Number _____

Account Number _____

☒ **CREDIT CARD**

Name on Credit Card ████████████████

Account Number ██████████████████████

Expiration Date ███████████

CCV ██████

Payments will be processed on the 1st of each month.  Your signature below indicates acceptance of the above terms and conditions.

Signature ████████████████

Date ██████████

16

**Notice**

Any notice that must be given to Maker under this Note will be given by delivering it or mailing it by certified mail addressed to Maker at the Maker's address above. If Maker provides a different address than the address listed above, Holder must give notice to Maker at the most recent address provided. Any notice that must be given to Holder under this Note will be given by delivering it or mailing it by certified mail addressed to Note Holder at the Holder's address above. If Note Holder provides a different address than the address listed above, Maker must give notice to Holder at the most recent address provided.

**Modification**

No modification or waiver of any of the terms of the Agreement shall be allowed unless by written agreement executed by both parties. No waiver of any breach or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

**Amendment of Promissory Note**

This Promissory Note may be modified or amended only by written agreement duly executed by the Holder and Maker.

Signature of Maker                    Date


Signature of Holder                   Date

17