1   Heather L. Rosing, Bar No. 183986
    Gregor A. Hensrude, Bar No. 226660
2   Robert M. Shaughnessy, Bar No.
    174312
3   KLINEDINST PC
    501 West Broadway, Suite 600
4   San Diego, California 92101
    (619) 239-8131/FAX (619) 238-8707
5   hrosing@klinedinstlaw.com
    ghensrude@klinedinstlaw.com
6   RShaughnessy@klinedinstlaw.com

7   Attorneys for Defendant
    SCHROETER GOLDMARK &
8   BENDER, P.S.

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12   WELK RESORT GROUP, INC., a        Case No.   3:17-cv-01499-L-AGS
     California corporation; and WELK
13   RESORTS PLATINUM OWNERS           **MEMORANDUM OF POINTS AND
     ASSOCIATION, a California non-    AUTHORITIES IN SUPPORT OF
14   profit corporation,               DEFENDANT SCHROETER
                                       GOLDMARK & BENDER, P.S.'S
15              Plaintiffs,            SPECIAL MOTION TO STRIKE
                                       PLAINTIFF'S FIRST AMENDED
16        v.                          COMPLAINT**

17   REED HEIN & ASSOCIATES,           **[CAL. CODE CIV. PROC. § 425.16]**
     LLC, dba TIMESHARE EXIT
18   TEAM, a Washington limited
     liability company; SCHROETER      Date:          October 30, 2017
19   GOLDMARK & BENDER, P.S., a        Time:          11:00 a.m.
     Washington professional           Courtroom:     5B
20   corporation; and KEN B. PRIVETT,  Judge:         M. James Lorenz
     PLC, an Oklahoma limited liability Magistrate Judge: Andrew G. Schopler
21   company,                          Complaint Filed: July 25, 2017
                                       Trial Date:    None set
22              Defendants.
                                       **NO ORAL ARGUMENT UNLESS
23                                     REQUESTED BY THE COURT**

24

25   / / /

26   / / /

27   / / /

28   / / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND .................................................................1

    A.    Welk's timeshare sales tactics are a public issue, and the subject of public interest...................................................................1

        1.    Consumers complain about Welk's business practices.............2

        2.    Welk is sued repeatedly over its timeshare sales practices ........3

        3.    The timeshare industry publicly admits the existence of fraudulent sales practices, and also warns owners to be cautious of third party timeshare resale companies...................4

    B.    Consumers seeking resolution of their dispute via legal representation from SGB .......................................................5

        1.    SGB's representation letter to timeshare companies.................5

        2.    SGB's representation of Welk timeshare owners......................7

    C.    Welk sued SGB after the law firm initiated lawsuits against Welk in California on behalf of timeshare owners..............................9

III.   LEGAL STANDARD FOR RULING ON AN ANTI-SLAPP MOTION ............................................................................................10

IV.   LEGAL ARGUMENT ..........................................................................11

    A.    Step One: All of Welk's claims against SGB arise from protected activity...........................................................................11

        1.    Pre-litigation communications and demand letters fall within the protection of § 425.16(e)(2) .....................................12

        2.    Private communications with Welk on a matter of public interest are protected under Cal. Civ. Code § 425.16(e)(4) .....14

    B.    Step Two: Welk cannot demonstrate a probability of prevailing on any claim against SGB .................................................................15

        1.    California's litigation privilege bars Welk's state law claims.......................................................................................16

        2.    Welk's claims against SGB cannot proceed because SGB cannot mount a defense without breaching duties of confidentiality owed to its clients.............................................19

        3.    The agent's immunity rule bars Welk's intentional interference with contract claim ...........................................21

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

4.     Welk cannot recover its alleged reputation and out-of-pocket damages under California's UCL ..................................22

V.     CONCLUSION .............................................................................24

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adams v. Sup. Ct.*
  2 Cal.App.4th 521 (1992) ........................................................................ 16

5

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
  7 Cal.4th 503 (1994) .............................................................................. 21

6

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*
  421 F.3d 981 (9th Cir. 2005) ................................................................. 22

7

8

*Averill v. Sup. Ct.*
  42 Cal.App.4th 1170 (1996) ................................................................... 14

9

*Bailey v. Brewer*
  197 Cal.App.4th 781 (2011) ................................................................... 13

10

11

*Bank of the West v. Sup. Ct.*
  2 Cal.4th 1254 (1992) ............................................................................ 23

12

*Baugh v. CBS, Inc.*
  828 F.Supp. 745 (N.D. Cal. 1993) ......................................................... 23

13

14

*Bergstein v. Stroock & Stroock & Lavan LLP*
  236 Cal.App.4th 793 (2015) ................................................................... 16

15

*Bleavins v. Demarest*
  196 Cal.App.4th 1533 (2011) ................................................................. 11

16

17

*Cacique, Inc. v. Robert Resier & Co.*
  169 F.3d 619 (9th Cir. 1999) ................................................................. 23

18

*City of Cotati v. Cashman*
  29 Cal.4th 69 (2002) .............................................................................. 12

19

20

*Equilion Enterprises v. Consumer Cause, Inc.*
  29 Cal.4th 53 (2002) .............................................................................. 11

21

*Equilon Enterprises v. Consumer Cause, Inc.*
  29 Cal.4th 53 (2002) .............................................................................. 15

22

23

*Erie R.R. Co. v. Tompkins*
  304 U.S. 64 (1938) ................................................................................. 10

24

*Fiol v. Doellstedt*
  50 Cal.App.4th 1318 (1996) ................................................................... 21

25

26

*Fox v. Pollack*
  181 Cal.App.3d 954 (1986) ..................................................................... 22

27

28

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEF. SCHROETER GOLDMARK & BENDER,
P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Gerbosi v. Gaims, Weil, West & Epstein, LLP*
  193 Cal.App.4th 435 (2011) .................................................................... 11

*Gotterba v. Travolta*
  228 Cal.App.4th 35 (2014) ...................................................................... 10

*Graffit Protective Coatings, Inc. v. City of Pico Rivera*
  181 Cal.App.4th 1207 (2010) .................................................................. 10

*Greco v. Greco*
  2 Cal.App.5th 810 (2016) ........................................................................ 16

*Hagberg v. Cal. Fed. Bank*
  32 Cal.4th 350 (2004) .............................................................................. 17

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*
  865 F.Supp.2d 1002 (C.D. Cal. 2011) ..................................................... 23

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*
  70 F.Supp. 3d 1105 (N.D. Cal. 2014) ...................................................... 21

*Jarrow Formulas, Inc. v. LaMarche*
  31 Cal.4th 728 (2003) .............................................................................. 12

*Kracht v. Perrin, Gartland & Doyle*
  219 Cal.App.3d 1019 (1990) .................................................................... 19

*Kwikset Corp. v. Sup. Ct.*
  51 Cal.4th 317 (2011) .............................................................................. 23

*Lefebvre v. Lefebvre*
  199 Cal.App.4th 696 (2010) .................................................................... 11

*Mai Systems Corp. v. UIPS*
  856 F.Supp. 538 (N.D. Cal. 1994) ........................................................... 23

*McDermott, Will & Emery v. Sup. Ct.*
  83 Cal.App.4th 378 (2000) ...................................................................... 19

*Olsen v. Harbison*
  191 Cal.App.4th 325 (2010) .................................................................... 16

*Panzino v. City of Phoenix*
  196 Ariz. 442 (Ariz. 2000) ...................................................................... 21

*Reilly v. Greenwald & Hoffman, LLP*
  196 Cal.App.4th 891 (2011) .................................................................... 19

*Rogers v. Home Shopping Network, Inc.*
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ....................................................... 11

*Rubin v. Green*
  4 Cal.4th 1187 (1993) ........................................................................ 17, 18

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEF. SCHROETER GOLDMARK & BENDER,
P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

*Ruiz v. Harbor View Community Ass.*
    134 Cal.App.4th 1456 (2005) ...................................................... 14, 15

*Rusheen v. Cohen*
    37 Cal.4th 1048 (2006) .................................................................... 17

*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*
    107 Cal.App.4th 54 (2003)............................................................... 21

*Silberg v. Anderson,* (1990) 50 Cal.3d 205 (1990) ................................ 16

*Solin v. O'Melveny & Myers*
    89 Cal.App.4th 451 (2001) .............................................................. 19

*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*
    122 Cal.App.4th 1049 (2004) .......................................................... 17

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*
    190 F.3d 963 (9th Cir. 1999)............................................................ 10

*Vikco Insurance Services, Inc. v. Ohio Indemnity Co.*
    70 Cal.App.4th 55 (1999)................................................................. 23

*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*
    141 Cal.App.4th 15 (2006)............................................................... 11

*Wise v. Southern Pacific*
    223 Cal.App.2d 50 (1963) ............................................................... 21

**Statutes**

California Business & Professions Code § 11210, et seq. ........................3

California Business & Professions Code § 11211(a) ...............................3

California Business & Professions Code § 17200.............................9, 22

California Civil Code § 47(b) .......................................................... 16, 17

California Code of Civil Procedure § 425.16.............1, 10, 11, 12, 13, 14

California Code of Civil Procedure § 425.16(b) ................................... 10

California Code of Civil Procedure § 425.16(e)(1)............................... 12

California Code of Civil Procedure § 425.16(e)(2)..........................12, 14

California Code of Civil Procedure § 425.16(e)(4)..........................12, 14

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEF. SCHROETER GOLDMARK & BENDER,
P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

# I.   <u>INTRODUCTION</u>

The Welk Resort plaintiffs ("Welk") sued Defendant Schroeter Goldmark & Bender, P.S. ("SGB") in what can only be viewed as a lawsuit designed to chill and deter SGB and its clients from engaging in protected litigation activity, up to and including seeking redress in the courts. For the past year, SGB has represented consumers adverse to Welk. Just days before Welk filed this action SGB filed state law complaints against Welk seeking relief for its clients from the company's unfair timeshare agreements.

Welk's lawsuit seeks to silence and deter SGB from doing its job of giving voice to its consumer clients. Welk cannot do this. California's anti-SLAPP law bars retaliatory lawsuits like this one where: (1) a defendant like SGB can show that the gravamen of the plaintiffs' claims arise from protected activity, and (2) plaintiffs like Welk cannot show a probability of prevailing on the merits. (Cal. Code Civ. Proc. § 425.16.)  Here, SGB easily satisfies the first step.  The *only* conduct by SGB placed at issue in this case is the law firm's legal advice, and the legal actions the firm took in representing consumers in disputes adverse to Welk. As for the second step, Welk cannot show a probability of success because Welk's state law claims are uniformly prohibited under binding California law. The Court must grant SGB's motion. SGB needs an early and final dismissal of Welk's case to protect itself—and its consumer clients—from Welk's retaliatory tactics and meritless claims leveled for no other reason than to hinder valid consumer-rights claims brought by SGB.

# II.   <u>FACTUAL BACKGROUND</u>

## A.   <u>Welk's timeshare sales tactics are a public issue, and the subject of public interest</u>

Welk is a timeshare company.  (FAC, ¶ 14.)  Consumers buy the timeshares from Welk sales representatives.  (*Id*.)  Many consumers finance the purchase of the timeshare with Welk by executing a promissory note and security agreement.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

(*See e.g.* FAC at Ex. D.) Consumers then make payments over time to pay for the interest. (*Id.*)  Even after consumers have paid the interest in full, they retain an ongoing obligation to pay "assessments" or dues owed to Welk's Owners Association. (*Id.*)  These assessments inevitably increase over time. (*Id.*)

### 1.    Consumers complain about Welk's business practices

Welk's business practices are the subject of much public discourse. While some consumers may enjoy vacationing at timeshare resorts, numerous complaints have been lodged against Welk on the Consumer Affairs website from those lured into hard-sell timeshare presentations. (RJN, Ex. M.) One consumer complained:

> My husband and I were approached at a baseball game and decided what could be so bad about it.  We take the option of 3 days in Mexico if we sit through the "Timeshare" offer.  They say it isn't a timeshare but that is exactly what it is. It was only supposed to be 90 minute[s], [but] it was 4 hours of harassment and degrading comments….

(RJN, Ex. M, Consumer Affairs Report, p. 2.)  Another consumer described a similar experience:

> The 90 minute presentation lasted 4 hrs.  Every time we indicated we had to attend to our children, they would send someone else with another offer. Finally, the last lady we spoke to stopped trying to sell their vacation packages and switched to a point package along with the presentation Hawaii trip. We reluctantly accepted the 300,000 point package for $2650 @ 141 per month extended 24 months. Despite immediately returning the voucher for Hawaii, we never got our paperwork…

(*Id.* at p.2.)  Still another consumer described sales tactics that were "just morally wrong and misleading about what was said in the presentation versus what was true in reality." (*Id.* at p. 4.)

One recent newspaper article chronicled the same high pressure sales tactics, stating, "He sold harder than any car salesman I had encountered." (RJN, Ex. G, Desert Sun Article, p.2.) While a New York Times article declared in 2016, "The Timeshare Hard Sell Comes Roaring Back" (RJN, Ex. N, N.Y. Times Article, p. 1.)

/ / /

Welk itself attaches a USA Today article directed to all of those readers who have "timeshare regret" and advises "what to do about it." (FAC, Ex. D.)

Further, the California legislature has deemed the sale of timeshares to be of such concern that it enacted the Vacation Ownership and Time-share Act of 2004. (Cal. Bus. & Prof. Code § 11210, et seq.) The Act was intended "to provide full and fair disclosure to purchasers…" of timeshares. (Cal. Bus. & Prof. Code § 11211(a).)

## 2.    Welk is sued repeatedly over its timeshare sales practices

These same business practices are the source of lawsuits, including the three California actions filed by SGB. (RJN, Exs. A, C and E - Complaints.) For example, in her Complaint against Welk, Ms. Margarita Chavez alleged that Welk employees misrepresented to her that annual maintenance fees would remain the same each year, that a timeshare was a financial investment that would increase in value, that the offer to purchase being made was limited to the day of the presentation she attended, that Welk offered a program to owners to allow them to rent their unused timeshare points, and that the timeshare contract could not be canceled once it was signed. (RJN, Ex. A, *Chavez* Complaint, ¶ 14.) Not one of these statements was true. (*Id.* at ¶ 15.) And when she attended a member "update meeting" she found it was simply another high-pressure and misleading sales pitch advising her that if only she purchased more points, she could then rent out her timeshare and reduce the financial burden the ownership placed on her. This resulted in her agreeing to increase her timeshare membership, placing her further in debt to Welk. (*Id.* at ¶¶ 21-28.) Despite paying more money to Welk over the next 6 years, *and being upsold twice*, Ms. Chavez was never able to book vacations at her desired destinations and was unable to sell or use all of her points. (*Id.* at ¶ 29.)

The plaintiffs in the *Holtzclaw v. Welk* and *Lopez v. Welk* matters—the other two Complaints that SGB filed with local counsel—alleged similar experiences. (RJN, Ex. C, *Holtzclaw* Complaint; Ex. E, *Lopez* Complaint.) The facts alleged in *De Mary v. Welk Resorts,* a lawsuit filed by another law firm, further reveal Welk's

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

unfair sales tactics. (RJN, Ex. I, *De Mary* Complaint, ¶¶ 13-24.)  *Lewin v. Welk,* a lawsuit filed by a different consumer attorney firm, describes Welk's tactic of forcing *consumer* disputes with dis-satisfied owners into *commercial* arbitration proceedings, effectively making arbitration a financial barrier preventing consumers from exercising their rights. (RJN, Ex. J, *Lewin* Complaint, ¶¶ 2-6.) Welk's sales practices have also been detailed in public lawsuits brought against Welk by its own former employees. In SGB's pending 12(b)(6) motion, SGB cited the *Arritt v. Welk* action as one such case where a former Welk employee described Welk's sales practices in detail. (RJN, Ex. K, *Arritt* Complaint, ¶¶ 11-12; *see also*, Ex. H, identifying numerous other lawsuits against Welk.)

### 3. The timeshare industry publicly admits the existence of fraudulent sales practices, and also warns owners to be cautious of third party timeshare resale companies

Timeshare industry associations have also publicly acknowledged that one of the internal challenges they face is the existence of fraudulent sales practices. (Declaration of Thomas Breen ("Breen Decl.", ¶ 10.)  In March of 2017, at the annual convention for the timeshare industry run by the American Resort Development Association (ARDA), an event open to the public, ARDA presenters acknowledged that fraudulent practices existed and mentioned it was working to reduce the amount of fraud.  (*Id.*)  These practices lead to owners becoming dissatisfied and seeking an exit. (*Id.*)

Apparently recognizing the problem arising from owners seeking to exit from their timeshares, some of these same companies have launched web pages that publicly attempt to dissuade owners from seeking out timeshare exit companies. (NOL, Ex. Q, Diamond Resorts website excerpts; NOL, Ex. R, Westgate Resorts website excerpts.)  Publicly decrying the possibility of scams perpetrated by third-party resellers, these timeshare company public web pages present dire warnings to owners who may be looking to sell their timeshares. (*Id.*)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

B.  **Consumers seeking resolution of their dispute via legal representation from SGB**

SGB was founded in 1969 as a law firm committed to representing aggrieved individuals against large corporate and governmental entities. (Breen Decl., ¶ 2.) For nearly 50 years, the firm has represented plaintiffs in the areas of general tort, product liability, medical malpractice, consumer protection, wage and hour class action, employment discrimination, legal malpractice, sexual assault, pharmaceutical and other mass torts, social security disability, asbestos injury, and others.  (*Id.*)  SGB has extensive experience representing consumers.  (*Id.*) Further, SGB attorneys hold, or have held many legal leadership positions in Washington and beyond.  (*Id.* at ¶ 3.) The firm and its individual members have been recognized repeatedly not just for their excellent legal services provided to consumers, but for the good work done both within, and outside of, the legal community.  (*Id.* at ¶ 4.)

In 2016, SGB was approached by Mr. Coby Cohen, in-house counsel for Reed Hein. Reed Hein was looking for a highly reputable Seattle-based law firm that represented consumers, and Mr. Cohen knew of SGB's reputation in the legal community. (*Id.* at ¶ 8.)  Mr. Thomas Breen, a shareholder and trial attorney at SGB, had worked with Mr. Cohen when the two of them were deputy prosecuting attorneys for King County, Washington. (*Id.* at ¶¶ 1, 6.) Mr. Cohen was known to Mr. Breen as a stellar trial lawyer with sound judgment and impeccable ethics. (*Id.* at ¶ 6.) Because representing aggrieved consumers against large corporations fit with SGB's values, the firm began providing representation to timeshare consumers. (*Id.*)

1.  **SGB's representation letter to timeshare companies**

SGB's representation of timeshare clients commonly begins with a letter of representation to the timeshare company. (*See* FAC at Ex. B.) The letter advises

/ / /

1   the company that SGB represents the consumer with local counsel and that SGB is

2   available to discuss matters further and looks forward to seeking a resolution. (*Id.*)

3       One of SGB's goals in sending the letter is to ensure that all communications

4   about timeshare termination run through counsel. (The letter excludes routine

5   billings and indicates that the resort may send those directly to the client.) (Breen

6   Decl., ¶ 12.) This is important to SGB for a few reasons. First, by the time clients

7   come to SGB they are often tired of trying to deal with the timeshare company,

8   they are frustrated by the experience, and they have lost patience with the run-

9   around they receive.  (*Id.*)  Clients are skeptical of whatever new proposal is

10  forthcoming from the timeshare company.  This distrust is sometimes cemented

11  based on what the timeshare company told the clients they would receive at the

12  initial sales presentation compared to the product they actually receive. (*Id.*) The

13  company places a high value on the opportunity to upsell owners to bigger

14  commitments, and will ignore owners' requests to terminate their timeshare

15  memberships.  (*Id.*)  With rare exception, SGB's clients want nothing more to do

16  with the company.  (*Id.*)

17      SGB's next step is to attempt to engage the timeshare company in discussion

18  to see if a negotiated resolution is possible short of litigation. (*Id.* at ¶ 13.) This

19  attempt is often successful in avoiding litigation due in part to the fact that, in some

20  cases, a client's primary goal is simply to divorce from the timeshare company.

21  (*Id.*)  Such clients are willing to forgo the prospect of collecting money already

22  paid to the timeshare company if it means they can rid themselves of any future

23  dealings with the timeshare company. Negotiations with SGB are also effective for

24  timeshare clients because the quality of the legal representation SGB provides is

25  more extensive than usually seen by timeshare companies. (*Id.* at ¶ 14.) Welk's

26  own corporate counsel, Mr. Dominic Peterson, acknowledged that, unlike many

27  other attorneys he has seen, SGB takes its clients' interests to heart. (Breen Decl., ¶

28  16; NOL, Ex. S, 04/05/17 email.)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

1   SGB provides a long list of valuable legal services for its timeshare clients.

2   (Breen Decl., ¶ 15.) The work-product and attorney-client privileges severely limit

3   what SGB can say about its representation of its own clients to defend itself from

4   Welk's allegations. But SGB can state that services generally include some or all

5   of the following: review and analysis of the written timeshare purchase documents,

6   association of local counsel to advise on forum-specific law, detailed advice

7   concerning issues, like foreclosure, that might be relevant to that client's

8   timeshare, counsel concerning the right to trial and alternative dispute resolution,

9   use of special counsel to address credit reporting issues, leveraging institutional

10  knowledge to tailor fact gathering for clients, settlement negotiations, retention of

11  tax counsel when necessary, and filing claims for arbitration. (*Id.*)  Where litigation

12  is warranted, and upon consultation with local counsel, SGB can recommend that

13  litigation is the best route to obtain an exit, and then work to initiate and litigate

14  those actions with local counsel. (*Id.*)

### 2.   SGB's representation of Welk timeshare owners

16  SGB represents timeshare owners who have a dispute with Welk. SGB's

17  representation has principally involved communications with Welk's corporate

18  counsel, Mr. Peterson and initially SGB was able to quickly resolve a client's

19  dispute with Welk. (Breen Decl., ¶ 16.) Shortly thereafter, Mr. Peterson's

20  communications with SGB turned unusual. (*Id.*)  Mr. Peterson demanded to know

21  if SGB really represented the timeshare owners. (*Id.*)  SGB assured him that it did.

22  (*Id.*) Mr. Peterson then advised that he had seen other lawyers abandon their clients

23  the moment Welk moves a matter into arbitration. (*Id.*) SGB informed Mr.

24  Peterson that although SGB tries to first resolve matters via a negotiated resolution,

25  where matters cannot be resolved and need to be litigated, SGB will litigate. (*Id.*)

26  Mr. Peterson lauded SGB for taking its clients' interests to heart and on the

27  same day signed four demands to arbitrate four separate SGB client disputes.

28  (Breen Decl., ¶ 17.)  A fifth demand followed shortly after. (*Id.*)  Each demand

- 7 -
MEMORANDUM OF POINTS AND AUTHORITIES ISO DEF. SCHROETER GOLDMARK & BENDER,
P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

pursued an order accelerating the entirety of the "mortgage" payments owing on the timeshare, making the lump sum due, even though many SGB's clients struggle to make monthly payments and have never even visited a Welk resort.[1] (*Id.*)

SGB continued to work with Welk to attempt to resolve other matters. (Breen Decl., ¶ 18.)  A constant sticking point for Welk was its desire to speak directly to the timeshare owners. (*Id.*)  SGB knows resorts like Welk greatly desire the opportunity to upsell owners. Mindful of the lost trust clients have from past dealings with Welk, SGB repeatedly took the position that these negotiations must go through counsel. (*Id.*)  Despite this issue, SGB successfully resolved 30 different timeshare client disputes with Welk. (*Id.* at ¶ 20.) These were complicated negotiations involving many issues. (*Id.*)

Another problem that hampered negotiations was Welk's practice of intentionally harming its owners' credit. (Breen Decl., ¶ 28.)  SGB demands that Welk must refrain from any adverse credit actions against its clients. (*Id.*)  But after receiving an initial letter from SGB, Welk often resists the demand by immediately terminating the represented owner's automated payment account. (*Id.*)  Sometimes this happens without notice to the client. (*Id.*)  Welk will then refuse to accept payment by other means. Once a payment is "missed" in this way, Welk reports it to the credit agencies. (*Id.*)  Welk also reports "missed" payments after clients have executed settlements, while they await Welk's countersigned pages. (*Id.*)

/ / /

/ / /

/ / /

---

[1] "Mortgage" is the term the timeshare companies use. It lends the appearance that a purchaser receives something of value. In truth the transaction is more like a credit card purchase, with interest charges approaching 18% at times. What is purchased is usually valueless and cannot be sold on the open market for any amount. Banks will not refinance these debts.

**C.** **Welk sued SGB after the law firm initiated lawsuits against Welk in California on behalf of timeshare owners.**

Of the five separate disputes in which Welk sought to compel arbitration, SGB determined that in four of the cases Welk had no grounds to initiate arbitration because there was no enforceable agreement to arbitrate in the purchase agreement drafted by Welk. (Breen Decl., ¶ 21.) Two of the clauses fell short of properly advising the timeshare purchaser she was waiving her right to a jury trial and the two other clauses, did not even make mention of a jury trial. Likewise, in one putative "arbitration agreement" Welk did not even mention the word "arbitrate." When SGB advised Welk's selected arbitrator, JAMS, of its position on behalf of the timeshare owners, JAMS concluded it would not proceed without an agreement showing the parties intended to arbitrate with JAMS. (*Id.*)

When further negotiations failed, SGB declined Welk's invitation to arbitrate three of the matters and gave a courtesy notice to Welk that because negotiations had failed it intended to initiate litigation in California. (*Id.* at ¶ 23.) SGB, with California local counsel, filed three lawsuits against Welk in California Superior Court. (RJN, Exs. A-F, Complaints/Pro Hac Vice Applications.)

Two business days later Welk filed its complaint against Reed Hein, SGB, and Privett. Welk's FAC, alleges five causes of action against SGB including the: (1) first cause of action for intentional interference with contract (FAC, ¶¶ 31-39); (2) second cause of action for violation of the RICO Act under 18 U.S.C. § 1962(c) (FAC, ¶¶ 40-52); (3) third cause of action for violation of California's Unfair Competition Law ("UCL") at Cal. Bus. & Prof. Code § 17200 et seq. (FAC, ¶¶ 53-63; (4) sixth cause of action for violation of California's State Bar Act, Cal. Bus. & Prof. Code § 6151 et seq.(FAC, ¶¶ 79-82); and (5) seventh cause of action for violation of California's State Bar Act, Cal. Bus. & Prof. Code § 6155 et seq. (FAC, ¶¶ 83-86). The only conduct that relates to SGB is its litigation and pre-litigation work on behalf of its clients. Nothing else relates to SGB. But the FAC

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  improperly lumps allegations together, stating repeatedly that "Defendants"

2  engaged in certain wrongful conduct without identifying the particular defendants.

### III.   LEGAL STANDARD FOR RULING ON AN ANTI-SLAPP MOTION

4  Any cause of action arising from a person's act in furtherance of his or her

5  right of petition or free speech under the United States Constitution or the

6  California Constitution in connection with a public issue shall be subject to a

7  special motion to strike.  The matter should be dismissed and unless the court

8  determines the plaintiff has established a probability of prevailing on the claim, it

9  must be dismissed. (Cal. Code Civ. Proc. § 425.16(b).)  Section 425.16 provides

10  defendants a procedure for the early dismissal of strategic litigation against public

11  participation, or SLAPP suits.  A SLAPP suit is litigation of a harassing nature

12  brought to challenge the exercise of protected free speech or petition rights.

13  (*Gotterba v. Travolta,* 228 Cal.App.4th 35, 40 (2014).)  They are "[l]awsuits . . .

14  deployed as a weapon barring rivals from meaningful access to judicial redress . . .

15  [in which] parties prevailed by intimidating rivals instead of persuading judges and

16  juries."  (*Navellier v. Sletten,* 29 Cal. 4th 82, 96 (2002).)

17  The California legislature crafted Section 425.16 to remedy this specific

18  problem. This dismissal mechanism is important because SLAPP suits are

19  designed generally to exploit an economic advantage over the defendant as

20  opposed to vindicating a legally cognizable right. (*Graffit Protective Coatings, Inc.*

21  *v. City of Pico Rivera,* 181 Cal.App.4th 1207, 1215 (2010).) The anti-SLAPP law,

22  as it is known, "was enacted to protect legitimate litigants from procedurally

23  coercive tactics."  (*Navellier*, *supra*, 29 Cal. 4th at 96.)

24  Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), and its progeny, in the

25  absence of a direct conflict with federal procedural rules, subsections (b) and (c) of

26  California's anti-SLAPP law apply in federal court. (*U.S. ex rel. Newsham v.*

27  *Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999); and see

28  / / /

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 977-78 (C.D. Cal. 1999) (substantive protections of the statute apply but discovery stay superseded).)

The statute must "be broadly construed to encourage continued participation in free speech and petition activities." (Cal. Code Civ. Proc. § 425.16(a); *Bleavins v. Demarest*, 196 Cal.App.4th 1533, 1539 (2011); *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi,* 141 Cal.App.4th 15, 22 (2006).) The broad construction expressly called for in the anti-SLAPP law is desirable from the standpoint of judicial efficiency; narrow construction would serve citizens poorly. (*Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1121-22 (1999).)

Procedurally, the anti-SLAPP law establishes a two-step process for striking a claim. "In the first step, the court is tasked with determining whether the defendant has made the threshold showing that a challenged cause of action is one 'arising from protected activity….' If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a 'probability of prevailing' on his or her claim." (*Lefebvre v. Lefebvre*, 199 Cal.App.4th 696, 702 (2010), citing *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002); and *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal.App.4th 435, 443 (2011).)  The plaintiff bears the burden of demonstrating the probability of prevailing on its claims.

## IV.   LEGAL ARGUMENT

### A.   Step One: All of Welk's claims against SGB arise from protected activity

The allegations of the complaint and the factual circumstances make clear this suit is a textbook SLAPP suit designed to limit consumers' access to the courts.  Under the anti-SLAPP law, the moving defendant makes a threshold showing that the plaintiff's claim itself is based on an act in furtherance of the defendant's right of petition or free speech. In this first-step analysis, the court

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

decides only whether the claims *arise from* protected activity. (*People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal.App.4th 809, 822 (2012).) The court reviews the parties' pleadings, declarations, and supporting documents to determine what conduct is being challenged, not whether the conduct is actionable." (*Id.* citing *Coretronic Corp. v. Cozen O'Connor*, 192 Cal.App.4th 1381, 1388-89 (2011).) "The defendant need not prove that the challenged conduct is protected by the First Amendment as a matter of law; only a prima facie showing is required." (*Id.*)

A defendant meets this burden by demonstrating that an act underlying the plaintiff's claim fits one of the four categories spelled out in § 425.16(e)(1) through (e)(4). *City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002); see also, *Jarrow Formulas, Inc. v. LaMarche ,* 31 Cal.4th 728, 734 (2003)  ("arising from" includes any act "based on" speech or petitioning activity).

The categories of protected conduct in this case, which must be broadly construed to meet the purpose underlying the anti-SLAPP law, include:

> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; and
>
> (4) any other conduct in furtherance of the exercise of a constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(Cal. Code Civ. Proc. § 425.16(e)(2) and (e)(4).)

Step one of the anti-SLAPP law applies, therefore, once SGB demonstrates at least one of SGB's acts underlying Welk's claims against the law firm qualifies as protected conduct under § 425.16(e).  SGB plainly makes this showing.

### 1.   Pre-litigation communications and demand letters fall within the protection of § 425.16(e)(2)

Welk makes vague allegations of conduct by "Defendants" but alleges very little conduct specifically undertaken by SGB. Welk's only specific allegations against SGB relate to the law firm's role as legal counsel representing Welk

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 12 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   timeshare owners against Welk. Specifically, Welk takes issue with SGB sending it

2   letters of representation that identify the individual SGB clients who are

3   dissatisfied Welk timeshare owners seeking to exit their timeshare agreements.

4   (FAC, ¶ 29.) These SGB communications demand that Welk contact SGB's clients

5   through counsel, except for billing purposes, and express the desire to work with

6   Welk, together with local counsel, to resolve the matter.  (*Id.*)  The letters

7   identifying SGB's representation are expressly described by Welk as attorney

8   demand letters. (FAC, ¶ 35.) These demand letters dovetail with SGB's follow-up

9   letter advising Welk that alternative dispute resolution means have failed, causing

10  SGB to resolve the dispute via forthcoming lawsuits. (Breen Decl., ¶ 23; NOL Ex.

11  W, letter.)

12        "Communications preparatory to, or in anticipation of, bringing an action are

13  within the protection of the anti-SLAPP statute."  (*People ex rel. Fire Ins.*

14  *Exchange*, *supra,* 211 Cal.App.4th 824, citing *Bailey v. Brewer,* 197 Cal.App.4th

15  781, 789 (2011).)  If a pre-litigation statement concerns the subject of the dispute

16  and is made in anticipation of litigation contemplated in good faith and under

17  serious consideration, it falls within the scope of Code of Civil Procedure § 425.16.

18  (*Id.*)

19        Here, the facts speak plain. SGB is a highly regarded AV-rated firm of trial

20  attorneys. (Breen Decl., ¶¶ 1-3.)  Welk admits SGB sent "demand letters"

21  informing Welk it was counsel for Welk timeshare owners. A demand letter sent in

22  anticipation of litigation is a legitimate speech or petitioning activity protected

23  under § 425.16.  (*Briggs*, *supra*, 19 Cal.App.4th at 1115.)  Further, when Welk's

24  own corporate counsel questioned SGB's commitment to its clients if matters

25  moved into litigation, SGB candidly informed Welk that where matters required

26  litigation to be resolved, SGB would litigate. (Breen Decl., ¶ 16.)  SGB opposed

27  Welk's attempt to drag disputes into arbitration, and when negotiations failed, it,

28  along with local counsel, filed three separate complaints on behalf of Welk

1   timeshare clients who could not resolve their disputes short of litigation. (*Id.* at ¶¶

2   17-21.) Thus, Welk attempts to hang liability on SGB for nothing but petitioning

3   activity protected under § 425.16(e)(2).

### 2. Private communications with Welk on a matter of public interest are protected under Cal. Civ. Code § 425.16(e)(4)

6   In addition to falling within the definition of protected petitioning activity

7   under section 425.16(e)(2), SGB satisfies the step one analysis in another way

8   because its conduct also falls within the scope of protected petitioning and speech

9   activity described in section 425.16(e)(4). That subdivision defines an act in

10  furtherance of a person's right to petition or free speech to include any other

11  conduct in furtherance of the exercise of the constitutional right of petition or free

12  speech in connection with a public issue or an issue of public interest. (*Id.*)

13  In *Averill v. Sup. Ct.,* 42 Cal.App.4th 1170, 1175 (1996), the court

14  concluded that the anti-SLAPP statute protects private conversations regarding a

15  public issue. Following *Averill* the Legislature added subdivision (e)(4) to §

16  425.16. Following *Averill,* and viewing the language in subdivision (e)(4), the

17  court in *Ruiz v. Harbor View Community Ass.,* 134 Cal.App.4th 1456, 1468 (2005),

18  held section 425.16 governs even private communications between attorneys, so

19  long as they concern a public issue. In *Ruiz,* the court held that letters exchanged

20  between counsel concerning a homeowner association dispute were protected

21  communications under section 425.16(e)(4). They were protected even though the

22  communications were public in the sense that they concerned the homeowners that

23  were governed by the same association. (*Ruiz,supra,* 134 Cal.App.4th at 1468

24  (disputes were of interest to a definable portion of the public affected by the

25  outcome).)

26  Here, the demand letters that Welk points to were not just protected pre-

27  litigation demand letters. They were also protected speech in connection with an

28  ongoing public issue and a matter of public interest—i.e. Welk's disturbing

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

timeshare sales practices. Again, the timeshare industry's problems with fraudulent, unlawful and unfair business practices is an ongoing subject of public discussion, and Welk's practices in particular are the subject of ongoing public discussion and debate. (RJN, Exs. A, C, E and G-R; Breen Decl., ¶ 10.) SGB's communications to Welk's counsel regarding dissatisfied timeshare clients who want to exit their agreement are, therefore, protected speech. They are communications made in connection with pre-litigation activities *and* in connection with the public's interest in how the timeshare industry dupes consumers. Even more so, just as the communications between counsel about a homeowner association dispute in *Ruiz* were protected speech on a matter of common interest to the homeowners, communications here between counsel concerning a dispute arising within the regulated timeshare industry and concerning an identifiable group of people—i.e. dissatisfied timeshare owners seeking an exit, fall within the protections of the anti-SLAPP statute.

**B.** **Step Two: Welk cannot demonstrate a probability of prevailing on any claim against SGB**

Having met the step-one requirements, the burden shifts from SGB to Welk. As the plaintiff, Welk cannot merely allege, but must *show* a probability of prevailing on, each claim. (*Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 67 (2002).) It must demonstrate the complaint is both legally sufficient *and* supported by a prima facie showing of facts sufficient to sustain a favorable judgment. (*Navellier, supra*, 29 Cal.4th at 88–89.) As explained below, Welk cannot meet this burden. As discussed in section 1 and 2 below, all of Welk's legal theories are barred as a matter of law because they are premised on litigation activity, and because they seek to invade the attorney-client relationship. Section 3 explains that the agent's immunity rule legally bars Welk's contract interference claim. Section 4 clarifies why the UCL cannot provide Welk with a claim for damages.

- 15 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   Not only are Welk's claims barred as a matter of law, but it cannot present

2   evidence supporting its allegations. The facts show the truth about SGB to be the

3   exact opposite of what Welk pleaded about the firm's representation of Welk

4   timeshare owners. Welk's claims are meritless because they are both legally

5   barred, and because they are not based upon fact.  Of course, these traits are the

6   sine qua non of a SLAPP action, brought solely to hinder, intimidate, and annoy,

7   but without a real prospect of success.

8   **1.     California's litigation privilege bars Welk's state law claims**

9   Welk's claims against SGB are barred under California law. The entirety of

10   SGB's conduct occurred in connection with actual and anticipated litigation.

11   California's litigation privilege is an important immunity for lawyers and plainly

12   applies to SGB.

13   The litigation privilege is codified in California Civil Code section 47(b).

14   The privilege applies to communications: (1) made in judicial or quasi-judicial

15   proceedings; (2) by litigants or other participants authorized by law; (3) to achieve

16   the objects of the litigation; and (4) that have some connection or logical relation to

17   the action.  (*Silberg v. Anderson,* (1990) 50 Cal.3d 205, 212 (1990).)  California

18   case law construes this provision to protect against derivative suits. For example,

19   the statute precludes liability arising from a publication or broadcast made in a

20   "judicial proceeding or other official proceeding."  (*Bergstein v. Stroock & Stroock*

21   *& Lavan LLP,* 236 Cal.App.4th 793, 814 (2015).)

22   The privilege immunizes defendants from virtually any tort liability, with the

23   sole exception of causes of action for malicious prosecution.  *(Olsen v. Harbison,*

24   191 Cal.App.4th 325, 333 (2010).)  Any doubt on whether the privilege applies is

25   resolved in favor of applying it. (*Id.* citing *Adams v. Sup. Ct.,* 2 Cal.App.4th 521,

26   529 (1992) and *Greco v. Greco*, 2 Cal.App.5th 810, 826 (2016).)  For well over a

27   century, communications with "some relation" to judicial proceedings have been

28   / / /

"absolutely" immune from tort liability under section 47(b).  (*Rubin v. Green,* 4 Cal.4th 1187, 1193 (1993).)

This sweeping application of section 47(b)—regardless of malice—is necessary to effect the purposes of the immunity: (1) access to the courts without fear of later harassment by derivative tort actions; (2) encouraging open communication and zealous advocacy; (3) promoting complete and truthful testimony; (4) giving finality to judgments; and (5) avoiding endless litigation. (*Rusheen v. Cohen,* 37 Cal.4th 1048, 1063 (2006).)

Section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made before a lawsuit is filed, whether to prepare for anticipated litigation or to investigate the feasibility of filing a lawsuit. (*Hagberg v. Cal. Fed. Bank,* 32 Cal.4th 350, 361 (2004).)  To be privileged under section 47(b), a pre-litigation statement need only have "some relation" to contemplated litigation.  (*Id.* see also, *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.,* 122 Cal.App.4th 1049, 1058 (2004) (privilege protects pre-litigation communications involving the subject matter of the ultimate litigation); *see also, Hagberg*, *supra*, 32 Cal. 4th at 361; *Rubin, supra*, 4 Cal.4th at 1194–95 (privilege applies to communications made, prior to the filing of a complaint, by a person "meeting and discussing" the merits of future litigation with potential parties).)

Here, the declaration of attorney Thomas Breen demonstrates that— consistent with Welk's own pleading—all of the conduct undertaken by SGB was conduct protected by the litigation privilege. Welk alleges that the gravamen of SGB's wrongful conduct is that it sent Welk demand letters on behalf of its clients inquiring about terminating their Welk timeshare agreements. (FAC, ¶¶ 6, 29.) These letters were sent at the outset of litigation, and they contemplated filing litigation where necessary to resolve disputes with Welk. This is further supported by SGB's own communications with Welk, stating that SGB would litigate where

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 17 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    it could not negotiate a settlement, SGB's opposition to arbitration, SGB's letter

2    informing Welk of its intent to file suit, and by the filing and maintenance of the

3    three actions in California.

4            Welk's action also fails under the litigation privilege because of the chilling

5    effect on attorneys providing effective representation —or representation at all—

6    under the threat of a party suing its adversary's lawyers. There is a litany of

7    consequences arising from such actions, as discussed in *Rubin*, *supra*, 4 Cal.4th at

8    197-98.   *Rubin* emphasized that such cases would result in, "disturbing access to

9    counsel, the intimidating effect on attorneys of facing an almost certain retaliatory

10   proceeding, the distractions inherent in requiring counsel to deal with defending a

11   personal countersuit, as well as the predicate action, and in general the dampening

12   effect of the unobstructed representation of claims." (*Id.*)  *Rubin* holds that such

13   actions cannot be allowed to proceed.  (*Id.*)

14           The holding and underlying concerns raised in *Rubin* merit the same result

15   here. Welk's pleading raises no allegations about the merit, or lack of merit, of

16   Welk timeshare owners' pending California claims related to unfair business

17   practices. As in *Rubin*, Welk's lawsuit against SGB does not contend that SGB's

18   lawsuits against Welk constitute a malicious prosecution—the only exception to

19   the litigation immunity privilege.  Instead, Welk initiated this parallel litigation in

20   direct response to the three actions filed against Welk in the San Diego Superior

21   Court, on behalf of SGB's clients. SGB succeeded at fending off Welk's attempts

22   at arbitration, gave notice to Welk it was initiating litigation in three matters, filed

23   the lawsuits, and then Welk sued SGB.

24           As in *Rubin*, this parallel litigation seeks to impose liability on the attorneys

25   for the adverse parties based on circumstances, alleged on "information and

26   belief," surrounding the formation of SGB's attorney-client relationship with

27   Welk's timeshare owners, and SGB providing legal services and client counsel to

28   owners seeking relief from unfair Welk timeshare agreements. Welk's claims fail

because the communications giving rise to Welk's claims are privileged, and because California' Supreme Court holds that such claims cannot go forward because of the negative impact such cases have on the administration of justice.

### 2. Welk's claims against SGB cannot proceed because SGB cannot mount a defense without breaching duties of confidentiality owed to its clients

Welk's action against SGB is also barred because it seeks to invade the attorney-client privilege. (Because the privilege ethically precludes attorneys from addressing allegations leveled against them, the complaint must be dismissed. California has recognized this fundamental principal protecting the attorney client privilege. (*McDermott, Will & Emery v. Sup. Ct.,* 83 Cal.App.4th 378, 384 (2000) (holding that a shareholder suing an outside corporate counsel in a derivative action could not invade the attorney client privilege; such action placed the attorney defendant "in the untenable position of having to 'preserve the attorney client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent.'"; quoting *Kracht v. Perrin, Gartland & Doyle,* 219 Cal.App.3d 1019, 1024 (1990); see also, *Solin v. O'Melveny & Myers,* 89 Cal.App.4th 451, 458 (2001) (holding that "there can be no balancing of the attorney-client privilege against the right to prosecute a lawsuit to redress a legal wrong"); *Reilly v. Greenwald & Hoffman, LLP,* 196 Cal.App.4th 891 (2011) (dismissing action brought against a firm that would need to disclose confidential information to provide a meaningful defense).) Where an attorney's defense is so severely hampered by the duty of confidentiality, an absolute defense exists. (*McDermott, supra*, 83 Cal.App.4th at 384.)

Here, as in *McDermott,* there has been no waiver of the attorney-client privilege or the broad of duty of confidentiality owed by SGB to its clients—i.e. the Welk timeshare owners that SGB continues to represent in the three pending California actions. SGB is ethically precluded from disclosing any of its

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

communications with its clients. SGB cannot refute Welk's novel claim it suffered compensable injury because of SGB's alleged failures: to communicate with its own clients, to undertake a reasonable investigation of the facts in each individual client's case, and to provide competent legal advice and counsel to its clients. (FAC ¶¶ 26-30.)  Any connection between the quality of SGB's representation of its clients and Welk's allegations cannot be established without violating that privilege. Even so Welk's action places SGB in the untenable position of being unable to respond to these allegations without breaching its duty of confidentiality and the attorney-client privilege that still stands.[2]

SGB cannot present evidence of its communications with clients about the Welk contracts, its recommendations on negotiations with Welk, its advice regarding Welk's attempt to arbitrate certain matters, or its commentary about initiating legal action against Welk. Constrained by the attorney-client privilege in this circumstance, SGB can provide no such testimony or background against a third party accusation.  SGB is constrained to respond to accusations leveled by a party that is adverse to SGB's own clients in the pending California litigation. Further, there is simply no basis for allowing an amendment where the evidence shows that Welk's own corporate counsel admitted SGB has its clients' best interests at heart. (Breen Decl., ¶ 16.) Allowing this matter to proceed against SGB would contradict California law and implicate troubling public policy concerns.

/ / /

/ / /

---

[2] As part of its lawsuit, and without showing why it has standing to do so, Welk alleges that SGB's representation harms its clients. In fact, it is Welk that acts to harm these timeshare owners daring to seek an exit with the assistance of counsel. In response to SGB's initial letter, it is Welk that has retaliated by trying to force owners into costly arbitration, and by cutting off owners' automated payment accounts, often without notice, and refusing to accept payments by alternative means. . (Breen Decl., ¶ 28.) Welk then reports the inevitable "missed" payment, harming the owner's credit.  (*Id.*)

3. **The agent's immunity rule bars Welk's intentional interference with contract claim**

A claim for intentional interference with contractual relations requires the alleging party to set-forth facts showing: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  (*Ingrid & Isabel, LLC v. Baby Be Mine, LLC,* 70 F.Supp. 3d 1105 (N.D. Cal. 2014) (applying California law).)

An agent, attorney or otherwise, cannot be held liable for conspiring to interfere with a contract when the attorney's only role is to give advice about the contract. California courts have consistently held that an agent cannot be liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal.  (*Fiol v. Doellstedt,* 50 Cal.App.4th 1318, 1326 (1996); *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 512 (1994).) The agent's immunity rule springs from the principle that an agent cannot be liable for inducing a breach of a corporation's contract since being in a confidential relationship to the corporation the agent's actions in this respect are privileged. (*Wise v. Southern Pacific,* 223 Cal.App.2d 50, 72 (1963) (overturned on other grounds); *Applied Equipment Corp., supra,* 7 Cal.4th at 512, fn. 4 (reaffirming agent's immunity rule).) Attorneys acting on behalf of clients are accorded the same protection, because the relationship is also one of agent and principal. (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,* 107 Cal.App.4th 54, 69 (2003); *Panzino v. City of Phoenix,* 196 Ariz. 442, 447 (Ariz. 2000).)

Welk's first cause of action for intentional interference with contract alleges that "Defendants" advised Welk timeshare owners they could easily terminate or void their contracts with Welk and walk away from their obligations without

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

consequence.  (FAC ¶¶ 33-34) The contractual payments from SGB's clients have no bearing here.  But even so, as a preliminary matter, Welk has no idea what attorney-client privileged advice was given by SGB. Nor does Welk so much as allege "based on information and belief" or otherwise, whether SGB's clients were behind on their payments or, if they were, for how long.  Again, the only factual allegations of wrongful conduct alleged against SGB state that the law firm sent the previously-described demand letters to Welk.  (FAC, Ex. B.) The demand letters by SGB communicated the owners' desire to terminate their existing agreements.

SGB's only role was as an attorney and agent for its timeshare clients, advising clients of their rights under those contracts. Those communications (which are also privileged) cannot support a contractual interference claim because the law does not recognize a right of action against an agent attorney who advises a client confidentially about his or her contract rights. SGB cannot be held liable for intentional interference with contract because it was acting as the agent of the very same Welk timeshare owners that contracted with Welk. The "agent's immunity rule" bars such an action.  (*Fox v. Pollack,* 181 Cal.App.3d 954, 961 (1986).)  The first cause of action against SGB must be stricken.

### 4.      Welk cannot recover its alleged reputation and out-of-pocket damages under California's UCL

California's Unfair Competition Law ("UCL") prohibits unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising, and any act prohibited by California's false advertising statute.  (*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.,* 421 F.3d 981, 985 (9th Cir. 2005) (quoting Cal. Bus. & Prof. Code § 17200).)

Claims under California's unfair competition law, to the extent that they are based on fraud, as in the present case, are subject to the heightened pleading requirements under the federal rules.  (*In re WellPoint, Inc. Out-of-Network UCR*

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Rates Litigation,* 865 F.Supp.2d 1002, 1047 (C.D. Cal. 2011).)  Here, Welk's allegations fall far short of the specificity required of Rule 9(b). Again, the allegations fail to make clear what statements were made by SGB, who made them, to whom they were made, and certainly there are no facts showing how Welk was deceived or misled in any way by any such statements. Welk only points to the demand letters from SGB, which could not form the basis of a UCL action. Welk's pleading deficiencies alone render Welk's UCL claim subject to a motion to strike. But the claim also fails as a matter of law because Welk is barred from recovering damages under the UCL.

In *Bank of the West v. Sup. Ct.,* 2 Cal.4th 1254, 1266 (1992), the California Supreme Court unequivocally pronounced that damages are not recoverable under a UCL claim. Similarly, federal courts applying California law have consistently disallowed damages under a UCL claim.  (*See e.g. Cacique, Inc. v. Robert Resier & Co.,* 169 F.3d 619, 624 (9th Cir. 1999).)  Attempts to disguise damage claims as claims seeking restitution have been soundly and rightly rejected by both state and federal courts.  (*Vikco Insurance Services, Inc. v. Ohio Indemnity Co.,* 70 Cal.App.4th 55, 67 (1999) (UCL provides no right to recover unrealized commissions and general compensatory damages); in accord, *Baugh v. CBS, Inc.,* 828 F.Supp. 745, 757-58 (N.D. Cal. 1993).)

In *Mai Systems Corp. v. UIPS,* 856 F.Supp. 538 (N.D. Cal. 1994), the court disallowed a UCL claim seeking "restitution" of lost business opportunities. The court specifically noted compensation for lost business opportunities is a measure of damages and not restitution to the alleged victims; it cannot support a UCL claim. (*Id.* at 542.) Monetary recovery for harm or loss of reputation is similarly unavailable in a claim under the UCL.  (*Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 317, 326-27 (2011).)  Here, in its UCL claim, Welk's only alleged harm are a loss of business opportunity and a loss of reputation. Both are measures of monetary damage that cannot be recovered under the UCL. (FAC ¶ 17.) As such, Welk's

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

UCL claim fails as a matter of law along with the rest of the claims asserted against SGB.

## V.   **CONCLUSION**

Welk will have its day in court to defend its time-share business, to conduct discovery and engage in motions practice, to stand up to the consumers SGB represents. This lawsuit is something else entirely. It is a derivative, retaliatory action that improperly attacks those very consumers by suing the attorneys who dare to represent them. California law does not permit a party to use the courts to censor, silence and intimidate.  For these reasons, SGB respectfully requests that the Court grant its motion to strike in its entirety.

KLINEDINST PC


DATED: September 29, 2017       By:  /s/Robert M. Shaughnessy
                                       Heather L. Rosing
                                       Gregor A. Hensrude
                                       Robert M. Shaughnessy
                                       Attorneys for Defendant
                                       SCHROETER GOLDMARK &
                                       BENDER, P.S.

17086152v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101