Heather L. Rosing, Bar No. 183986
Gregor A. Hensrude, Bar No. 226660
Robert M. Shaughnessy, Bar No. 174312
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
ghensrude@klinedinstlaw.com
rshaughnessy@klinedinstlaw.com

Attorneys for Defendant
SCHROETER GOLDMARK & BENDER, P.S.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP, INC., a California corporation; and WELK RESORTS PLATINUM OWNERS ASSOCIATION, a California non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT TEAM, a Washington limited liability company; SCHROETER GOLDMARK & BENDER, P.S., a Washington professional corporation; and KEN B. PRIVETT, PLC, an Oklahoma limited liability company,<br><br>Defendants. | Case No.   3:17-cv-01499-L-AGS<br><br>**DECLARATION OF THOMAS BREEN IN SUPPORT OF DEFENDANT SCHROETER GOLDMARK & BENDER, P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT [CAL. CODE CIV. PROC. § 425.16]**<br><br>Date:  October 30, 2017<br>Time:  11:00 a.m.<br>Courtroom:  5B<br>Judge:  M. James Lorenz<br>Magistrate Judge:  Andrew G. Schopler<br>Complaint Filed:  July 25, 2017<br>Trial Date:  None set<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

I, Thomas Breen, do declare:

1.   I am a shareholder and trial attorney with the law firm Schroeter, Goldmark, and Bender, P.S. ("SGB"). I submit this declaration testimony based on my personal knowledge in support of SGB's special motion to strike the First

- 1 -

Amended Complaint ("FAC") filed by Welk Resort Group, Inc. and Welk Resorts Platinum Owners Association (collectively, "Welk") in the above-captioned matter. If called as a witness I could competently testify to these facts that are personally known to me.

A. **SGB: Who we are**

2. SGB was founded in 1969 as a law firm committed to representing aggrieved individuals against corporate or governmental entities. Our practice includes representing plaintiffs in general tort, product liability, medical malpractice, consumer protection, wage and hour class action, employment discrimination, legal malpractice, sexual assault, social security disability, asbestos, pharmaceutical, product defect, mass tort, and other practice areas. We have extensive experience representing consumers, particularly in class actions. The firm holds an AV Preeminent Martindale-Hubbell rating. The following are examples of some of our work on behalf of consumers:

- We represented a class of consumers against collection agencies for excessive and unfair fees.
- We represented a class of consumers against hospitals for overcharging uninsured patients and failing to implement legally mandated charity care policies.
- We represented consumers against mortgage lenders over unlawful fees.

3. *Leadership in the legal community:* SGB's attorneys hold, or have held, many leadership positions in the Washington legal community including: Trustee of the Federal Bar Association for the Western District of Washington and the Washington State Bar Foundation; Founding Board Member of the Northwest Consumer Law Center; Chair of the Washington State Bar Association (WSBA) Character and Fitness Board; Chair of the WSBA Professionalism Committee;

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Chair of the WSBA Lawyers Fund for Client Protection Board; President of the Washington State Association for Justice; President of the Loren Miller Bar Association; President of the Washington Association of Criminal Defense Lawyers; Members of the William L. Dwyer American Inn of Court; Board of Directors for the Washington Access Fund, Washington Employment Lawyers Association, and Seattle Community Law Center; Faculty Positions at the University of Washington School of Law and the National Criminal Defense College; lawyer representative to the 9th Circuit Judicial Conference; mayoral appointee as auditor of the Seattle Police Department intelligence files; President of the Washington Chapter of the American Professional Society on the Abuse of Children; President of the National Crime Victim Bar Association; and membership in the American Board of Trial Advocates and the American College of Trial Lawyers. SGB members have held leadership positions outside the legal community too including: Board of Directors for Harborview Trauma Center, Board of Directors for Teach for America (Washington branch), and an invited member of the Governor's Domestic Violence Action Group. Many of our firm's members previously worked as prosecuting attorneys or public defenders. Our law firm founded and continues to run a free legal clinic at El Centro de La Raza, which provides free legal services for the Spanish speaking community.

4. *Recognition for our work:* SGB's work and its contributions have been widely recognized. El Centro de La Raza bestowed on SGB a pro bono award. Columbia Legal Services, a state wide civil legal aid organization, honored SGB for its pro bono work for advancing civil rights for low-income people. Governor Christine Gregoire asked SGB to represent the State of Washington in the Affordable Care Act case that was decided by the United State Supreme Court. Our brief was cited by Justice Ginsburg and in 2013 the four SGB attorneys who authored the brief on behalf of the citizens of Washington were awarded the Award

- 3 -
DECLARATION OF THOMAS BREEN IN SUPPORT OF DEF. SCHROETER GOLDMARK & BENDER, P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

of Merit by the Washington State Bar Association. In 2015 the Washington State Bar Association awarded SGB the Pro Bono Award, which is presented to the law firm for outstanding cumulative efforts in providing pro bono services.  Two of our attorneys received an award for their representation of individuals imprisoned in Guantanamo Bay, Cuba.

5.    SGB's former partners maintain ties with SGB and have moved on to leadership positions. For example, Jenny Durkan is a former SGB partner. She became the United States Attorney for the Western District of Washington and is a finalist to become the next mayor of Seattle. Jeffery Robinson is now of-counsel to the firm having taken a position as the Deputy Legal Director and Director of the Trone Center for Justice and Equality with the American Civil Liberties Union.

**B.    SGB's legal work for dissatisfied timeshare owners**

6.    I am a former King County Deputy Prosecuting Attorney.  During the time I worked as a prosecutor, I worked with Mr. Coby Cohen. Mr. Cohen joined the prosecutor's office from the law firm of Perkins Coie.  He was a very talented prosecutor and highly regarded as an exceptional trial lawyer, with sound judgment and impeccable ethics. We became professional colleagues and friends. We both left the prosecutor's office for the private sector, but maintained our professional connection.

7.    In 2016 I learned that Mr. Cohen took a job as in-house counsel for Reed Hein, known as the Timeshare Exit Team. I learned from him it was a business designed to help folks disgruntled with their timeshare purchase attempt to terminate that relationship.

8.    After Mr. Cohen started at Reed Hein, he told me about the company's need to find a highly reputable Seattle-area law firm that represented consumers. Mr. Cohen asked if SGB would consider providing representation to consumers who had a need for legal services. Representing consumers against

- 4 -

large corporate entities fit nicely with SGB's values, so we agreed to provide representation.

C. **Insights gleaned from the timeshare industry**

9. Because of the attorney client and work product privileges with specific clients, I can only discuss my experience with timeshare victims generally as it relates to their legal needs. Some can barely make ends meet. Others are sophisticated and know better but succumb to the presentation and related pressures. Others simply believe and trust what they were told. The industry commonly uses high pressure sales tactics and an array of psychological tools all designed to get the person to sign a hefty contract on the spot, without counsel, without an agent, and without a financial consult. Nobody is immune from these tactics.

10. In March of 2017, I attended the annual convention for the timeshare industry, run by the American Resort Development Association (ARDA). This was held in New Orleans, Louisiana. The conference was open to the public, and I thought I could learn about the industry to help improve SGB's representation of clients. The convention was eye-opening. I learned about several challenges the timeshare industry perceives, including:

- Industry members recognized their industry contains fraudulent practices, and mentioned that they were working to reduce the amount of fraud (the standard of eliminating fraud was not mentioned in the presentations I attended).
- The industry identified the value it saw in having an opportunity to upsell people who have already purchased a timeshare. These were identified as some of the best selling opportunities. Resorts will often invite dissatisfied owners to an "update meeting" which is proffered as a way to learn about how to better use one's time

DECLARATION OF THOMAS BREEN IN SUPPORT OF DEF. SCHROETER GOLDMARK & BENDER, P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

share and how to get the key dates or key locations for timeshare usage, but is in actuality frequently designed to persuade consumers to upgrade to a more expensive timeshare;

- I learned at the conference that timeshare exits are an industry problem. While the industry touts the number of satisfied time share owners, numerous speakers recognized that the industry needed to address the pool of consumers who are dissatisfied with their timeshares. This includes those who are not able to use their timeshare, not able to get the dates or weeks they want, not interested in vacationing at the same location, dealing with health issues that prevent their ability to travel, or unable to afford the timeshare. The speakers addressed that the heirs of a timeshare owner do not always want to inherit a timeshare. Some of the speakers emphasized that the industry needs to address these problems and address these concerns rather than (what is commonly done) vilify their customers who choose to terminate their timeshare membership. They also mentioned that the industry has failed to address this need.

- Some in the industry see any professional who assists a disgruntled timeshare owner as the enemy. At one presentation I attended, I learned that some resorts and their lawyers are intent upon suing all those associated with exits, including lawyers representing timeshare owners and exit companies that help these same consumers.

11. It was my impression that one of the larger concerns raised at the conference focused on consumers and potential consumers having superior information about the harms they can suffer from doing business with a timeshare

company. Suing the lawyers who provide advice, counsel, and advocacy for these consumers is an obvious method to decrease consumers' options.

12. SGB's representation of these consumers commonly begins with us sending a letter of representation to the timeshare company, such as the letter attached to Welk's FAC as Exhibit B. This advises the company that we represent the consumer with local counsel and that we will follow-up later. Our main goal is to ensure that except for billings, which we clarify the company can send directly to the consumer, all communications about the timeshare termination run through counsel. This is important for a few reasons. First, frequently by the time a client reaches us they are tired of trying to deal with the timeshare company, they are frustrated by the experience, and they have lost patience with the run-around they receive. Based on what they were told at the initial sales presentation compared to what they received, they are skeptical of whatever new proposal is forthcoming from the company. Often the company will try to upsell them to more or bigger timeshare commitments while ignoring requests for an exit. With rare exception the clients want nothing more to do with the company. The letter includes the offer to discuss matters further and to work with the timeshare company and our local counsel to resolve the client's dispute.

13. Often our next step is to attempt to engage the timeshare company in some discussion. We seek to convey the clients' concerns and inquire whether we can reach a negotiated resolution to clients' particular disputes. This route is often successful in avoiding litigation because, in many cases, a client's primary goal is simply to divorce herself, or himself, from the timeshare company. In certain cases, even for those I believe to have strong claims, the clients are willing to pay more money to the timeshare companies just so they can be done with the timeshare forever.

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

14. When SGB initially began representing timeshare owners, we occasionally received word from those representing thetimeshare companies commenting that our level of representation was not one they commonly saw. Welk's own legal counsel, Mr. Dominic Peterson, echoed this sentiment when he distinguished SGB's representation from other lawyers, by commenting that SGB has its clients' best interests at heart. A true and correct copy of Mr. Peterson's email to me with this comment is attached to the accompanying Notice of Lodgment in support of SGB's motion ("NOL") as Exhibit S. Recently, Mr. Peterson has even gone so far as to claim that he believes SGB has too many lawyers providing representation for its timeshare owners in an arbitration we are conducting. (NOL, Ex. X, 9/25/17 Peterson email.)  To me the allegations set forth in the FAC filed against SGB by Welk in this action are completely antithetical to these admissions by Mr. Peterson.

15. SGB provides value for our timeshare clients. But SGB's work-product privilege, its ongoing duty of confidentiality, and its obligation to assert and maintain attorney-client privilege, prevents me from explaining in detail my firm's representation.  In addition, disclosing too much detail about our representation could well provide an unfair advantage to Welk in future negotiations, and future and pending litigation. However, I will list in very general terms the type of value-added services that SGB provides for its timeshare clients:

- Reviewing written timeshare purchase agreements, including but not limited to forum-selection, choice-of-law, arbitration, and other clauses that the average consumer may not fully understand, and advising clients about their legal impact;
- Forming a network of quality consumer attorneys in the state and forum SGB believes to be appropriate for litigation and alternative dispute resolution, who are available to act as local counsel and

advise clients on particular legal aspects of timeshares in these varied locations;

- Providing legal advice to clients concerning foreclosure, and similar proceedings;
- Advising clients about mandatory mediation and other alternative dispute resolution procedures;
- Enlisting the assistance of counsel specializing in credit reporting matters when needed;
- Leveraging SGB's institutional knowledge and intellectual capital about how specific resorts operate, to tailor fact-gathering for clients;
- Negotiating offers, making counter-offers, reviewing, modifying, and finalizing settlement terms, and conveying the significance of these terms to the client;
- Assessing the facts of each case, and the timeshare documents. It is not uncommon to see factual misrepresentations and problems with the validity of the contract;
- Hiring a tax attorney to provide information about the tax consequences of certain timeshare-related tax events, so we can advise clients about the consequences of certain negotiated settlements;
- Filing or agreeing to accept claims for arbitration when necessary; and
- Where litigation is warranted, and upon consultation with local counsel, SGB can recommend that litigation is the best route to obtain an exit, and then work to initiate and litigate those actions with local counsel.

- 9 -

DECLARATION OF THOMAS BREEN IN SUPPORT OF DEF. SCHROETER GOLDMARK & BENDER, P.S.'S SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT [C.C.P. § 425.16]
3:17-cv-01499-L-AGS

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**D.     SGB's extensive interaction with Welk on behalf of timeshare clients**

16.     SGB's representation of clients wishing to be relieved of their timeshare relationship with Welk involved communications with the company's corporate counsel, Mr. Dominic Peterson. Initially, SGB quickly resolved a client's dispute with Welk, but shortly thereafter Mr. Peterson's communications with SGB turned unusual. Mr. Peterson asked if SGB really represents its clients. We assured him it does. Mr. Peterson advised that he has seen other lawyers abandon their clients' representation the moment Welk moves a matter into arbitration. We told him that SGB tries to resolve the matters that can be resolved but, the matters that cannot be resolved and need to be litigated, we can litigate too. During this exchange, Mr. Peterson made no suggestion he was considering moving the matters of our clients into arbitration. Instead he focused on evaluating the caliber of the legal representation SGB provided. For example, Mr. Peterson said Welk had come across entities "who do not appear to take their clients' interests to heart" but, based on his experience with our firm, he advised "[n]o doubt your firm does." (See NOL Ex. S, 04/05/17 email)

17.     The same day he lauded SGB for taking our clients' interest to heart, Mr. Peterson signed demands for arbitration against four of our clients. These demands were served on SGB the next day. Shortly thereafter we were served with Welk's fifth arbitration demand. Each demand sought to accelerate the mortgage payments owing on the timeshare, so the entire lump sum would be due. Welk sought this even though most of the respondents were struggling to meet their monthly payment obligations, the majority of whom had never even visited a Welk resort.

18.     During the pendency of those matters, Mr. Peterson and I resolved to continue to negotiate other matters between SGB's clients and Welk. A constant sticking point has been that Welk wants the ability to discuss the matter of the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

client's exit directly with the client. SGB takes the position that whatever Welk needs to communicate to the client it can say through SGB. The firm is mindful of the lost trust clients have from past dealings with Welk, and how the industry views disgruntled timeshare owners as upsell opportunities. Welk repeatedly raises this direct-client-access issue. SGB repeatedly takes the position that exit discussions must go through counsel. Attached to the NOL as Exhibit T is a true and correct copy of an email dated May 24, 2017, from me to counsel for Welk, restating the firm's position on this matter.

19. SGB proceeded with arbitration against Welk in one matter. The two-day arbitration hearing is scheduled to begin on November 13. The parties continue to work on discovery and related matters in the arbitration case, while negotiating on other matters and litigating on still others.

20. Welk has alleged that SGB does nothing for its clients beyond sending the initial letter. This is demonstrably false. SGB has settled 30 of its timeshare client disputes with Welk. These matters required negotiations undertaken by SGB attorneys on behalf of their timeshare clients, covering many different issues. The attorney-client and work-product privileges, as well as the confidentiality provisions within the settlement documents, prevent me from disclosing facts and details about those negotiations.

E.  **SGB's three active litigation matters against Welk in California**

21. For four of the matters Welk placed into arbitration, SGB determined there was no enforceable agreement to arbitrate. None of the clauses advised the clients they were waiving their right to a jury trial: two fell far short of what is required and two others made no mention of a jury trial. One putative "arbitration" agreement did not even mention the word "arbitrate." SGB advised Welk's selected neutral—JAMS—of its position on behalf of the timeshare owners. True and correct copies of SGB's letters dated 04/24/17 and 04/25/17 are attached to the

- 11 -

NOL as Exhibit U. JAMS concluded that it would not proceed with administration of the matters absent the parties having intended to arbitrate with JAMS. True and correct copies of the letter responses from JAMS dated 05/10/17 and 05/12/17 are attached to the NOL as Exhibit V.

22. Based on Mr. Peterson's reaction to the JAMS letter referenced above, I believe Welk followed JAMS's determination by adjusting its negotiation tactic. Mr. Peterson informed me we did not need to litigate matters and that we could work things out. I reminded him that Welk had initiated certain litigation but that SGB was always willing to entertain settlement offers on behalf of our clients. The parties resumed negotiations on the four remaining matters, but failed to reach agreement. Throughout this process I and other lawyers at SGB learned in greater detail just how predatory many of Welk's sales transactions were, and the profound impact and fear of financial devastation the Welk contract, and Welk's arbitration, demand produced. For example, many SGB timeshare clients have never used (or been able to use) a Welk timeshare, yet Welk's arbitration sought to accelerate the entire amount of the "mortgages" allegedly owed. Allegations related to Welk's predatory practices in obtaining timeshare agreements and also then upselling owners are set forth in the three complaints filed in California for SGB's clients as discussed below. True and correct copies of these complaints are attached to the Request for Judicial Notice at Exhibits A, C, and E.

23. When negotiations failed, Welk inquired if SGB and its clients would agree to arbitrate with JAMS or with another arbitration service. SGB advised Welk that its clients did not agree, and had not agreed, to arbitrate. SGB provided Welk with courtesy notice of our intent to commence lawsuits on behalf of our clients. A true and correct copy of SGB's letter to Welk dated 06/30/17 is attached to the NOL as Exhibit W.

/ / /

- 12 -

24. On July 21, 2017 local California counsel for SGB's Welk timeshare clients filed suit against Welk in three matters. (See RJN, Ex. A, C, and E) SGB's pro hac vice petitions are pending. (See RJN Ex. B, D, and F) Welk filed three motions to compel arbitration, one for each action. It has also served three motions for sanctions on local counsel, under Cal. Code Civ. Proc. § 128.7, seeking sanctions for filing the three actions in state court. Those motions are set for hearing in January of 2018.

**F.  Welk's lawsuit against SGB and others**

25. On July 26, 2017, SGB was served with the lawsuit Welk filed against SGB, Reed Hein, and Ken B. Privett, PLC. I have now had an opportunity to review the allegations in the FAC. Many allegations are addressed to the conduct of "Defendants" without identifying which party engaged in any particular conduct. Instead, the defendants are collectively accused of various misrepresentations made to the individuals that are SGB's timeshare clients. Specifically, the "General Averments" section of the FAC, at page 8, paragraph 25 identifies a "scheme" by "Defendants" that includes various alleged misrepresentations made by "Defendants" to Welk timeshare owners. SGB only communicates with Welk timeshare owners who are its clients; SGB does not communicate with Welk timeshare owners who are not its client. The communications SGB has with its clients arise in the context of an attorney-client and agency relationship. They are privileged and confidential. Indeed, contrary to the vague allegations in the complaint, SGB has done nothing as it relates to Welk timeshare owners other than litigation legal-based services for its timeshare-owner clients, including review of client information for potential claims, negotiating those claims, and then litigating them if necessary, including all attendant pre-filing and post-filing acts litigators usually take in such circumstances.

///

- 13 -

26.     Welk's FAC further alleges, at paragraph 29, that SGB contacts Welk to negotiate, but provides no factual information about the dispute, and instead demands that Welk no longer communicate directly with the owner.  As stated above, however, Welk's allegations are demonstrably incorrect:  SGB does engage in negotiations with Welk's counsel, has already negotiated 30 settlements short of litigation, is arbitrating one case with Welk, and to date has filed three lawsuits against Welk in California.

27.     In the same paragraph, Welk further alleges, based on unexplained "information and belief" that is wholly at odds with my experience with Welk, that timeshare owners are never contacted by their attorneys, they are unaware of what their attorneys may be doing on their behalf, and they have no direct relationship or contact with counsel.  As noted above, this accusation is unsupported, and it is untrue.  This is not a case of Welk having guessed incorrectly "based on information and belief."  Rather, Welk knows its allegation is untrue: for example during negotiations with Welk, Welk knows that we have come back with offers, counter-offers, and custom made requests based on the wishes and circumstances of our clients.  For example, we've pushed hard on Welk to agree to not harm our client's credit; we've expressed to Welk clients' unease with the non-disparagement clause —for some, giving up their ability to warn family and friends about Welk is a significant concession.

28.     Welk's lawsuit alleges that SGB's demand letters harm its clients. This is contrary to everything I know about representing clients against Welk and is the polar opposite of the positions taken in our negotiations.  SGB advocates that Welk eliminate and refrain from any adverse credit actions against our clients. At times, Welk has resisted SGB's demands. After receiving SGB's notices of representation, Welk immediately terminated some of our clients' automated payment accounts – sometimes without notifying clients – and initially refused to

- 14 -

1 accept payment by other means. In one example after doing this Welk then
2 reported the client's "missed" payments to credit agencies. Welk also continues to
3 report "missed" payments even after clients execute settlement documents, while
4 these clients await Welk's countersignature to finalize settlement. In short, in my
5 experience, Welk's actions – not SGB's – harm the clients. To me, these actions by
6 Welk are done in bad faith and further demonstrate why these clients need our
7 legal representation.

29. Based on my own personal experience with SGB's representation of Welk timeshare owners in disputes with Welk and with knowledge of SGB's successful resolution in 30 cases, pending arbitration in another, and the pending California litigation involving three other disputes, I do not understand how Welk could even make—much less support with evidence—the allegations in this case.

30. I have represented clients who have been seriously injured by others. I have represented victims of defective automobiles, rape victims, victims of needless exposure to asbestos, those who have suffered the consequences of medical malpractice, those who have suffered catastrophic injury from a defective product, those who were swiftly fired for having reported a pregnancy to their employer, and those who have had their earned wages willfully withheld, among others. To my surprise many times the representation of timeshare owners has proven to be as gratifying as any other representation I have conducted, sometimes even more gratifying. One can hear the immense stress the clients are under, the profound regret they have for having ever attended a timeshare presentation, and the anger they have for the entire experience. They feel as if they have been taken, the timeshare resort's interactions with them are in bad-faith, and they have nowhere to turn. My experience representing owners of timeshares is that frequently they wish they had a sophisticated actor to assist them at the entry point of their timeshare experience; they understandably request one as they exit. I

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

believe I have seen a pattern of Welk's efforts to intimidate consumers. They first tried this when they swiftly filed arbitration demands shortly after receiving a simple inquiry from counsel. Now that they have filed suit against Welk, these Welk timeshare owners are being punished simply because they obtained representation. I believe that Welk's lawsuit is an attempt to further intimidate these consumers, and to prevent them from obtaining and using the effective legal representation that they are entitled to have, and that they sorely need.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Seattle, Washington on September 29, 2017.

_____
THOMAS J. BREEN

17084567v1