1  Heather L. Rosing, Bar No. 183986
   Gregor A. Hensrude, Bar No. 226660
2  Robert M. Shaughnessy, Bar No. 174312
   KLINEDINST PC
3  501 West Broadway, Suite 600
   San Diego, California  92101
4  (619) 239-8131/FAX (619) 238-8707
   hrosing@klinedinstlaw.com
5  ghensrude@klinedinstlaw.com
   RShaughnessy@klinedinstlaw.com
6
7  Attorneys for Defendant
   SCHROETER GOLDMARK &
   BENDER, P.S.

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  WELK RESORT GROUP, INC., a California corporation; and WELK
12  RESORTS PLATINUM OWNERS ASSOCIATION, a California non-
13  profit corporation,

14              Plaintiffs,

15       v.

16  REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT
17  TEAM, a Washington limited liability company; SCHROETER
18  GOLDMARK & BENDER, P.S., a Washington professional
19  corporation; and KEN B. PRIVETT, PLC, an Oklahoma limited liability
20  company,

21              Defendants.

Case No.   3:17-cv-01499-L-AGS

**COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT AND 12(b)(6) MOTION TO DISMISS**

**SPECIAL BRIEFING SCHEDULE ORDERED [See Document 63]**

Courtroom:        5B
Judge:            M. James Lorenz
Magistrate Judge: Andrew G. Schopler
Complaint Filed:  July 25, 2017
Trial Date:       None set

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  FACTUAL BACKGROUND ......................................................................2

    A.   Welk's timeshare sales tactics are the subject of public interest ..........2

        1.   Consumers complain about Welk's business practices .............3

        2.   Welk is sued repeatedly over its timeshare sales practices ........4

        3.   The timeshare industry admits fraudulent sales practices exist, and cautions owners about timeshare resale companies ....................................................................................5

    B.   Consumers seek SGB's representation to resolve their dispute ...........5

        1.   SGB sends representation letters to timeshare companies ........6

        2.   SGB's history of representing Welk owners against Welk........7

        3.   The first SGB arbitration against Welk results in a finding of "egregious" conduct by Welk...................................9

        4.   SGB represents timeshare owners including Welk owners......10

    C.   Welk sued SGB after SGB filed lawsuits for clients against Welk. ...............................................................................................12

III. LEGAL STANDARD for ruling on motions..................................................13

    A.   Standard for ruling on a special motion to strike................................13

    B.   Standard for ruling on Rule 12(b)(6) motion to dismiss....................14

IV.  LEGAL ARGUMENT ...............................................................................15

    A.   Step One: Welk's claims against SGB arise from protected activity...................................................................................................15

        1.   Pre-litigation communications and letters fall within the protection of Section 425.16(e)(2) ...........................................15

        2.   The anti-SLAPP law protects private communications between counsel on matters of public interest.........................17

        3.   SGB Represents Welk timeshare owners who are also customers of Reed Hein.............................................................18

    B.   Step Two: Welk cannot demonstrate a probability of prevailing, and has not stated any claim on which relief can be granted..............19

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO
STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT
3:17-cv-01499-L-AGS

1.    California's litigation privilege bars Welk's state law claims ...................................................................................19

2.    Welk's claims cannot proceed because SGB's duties to its clients hinder the presentation of a meaningful defense .....22

3.    Welk's individual claims fail for additional reasons ...............23

    a.    The agent's immunity rule bars Welk's intentional interference with contract claim as a matter of law .......23

    b.    Welk cannot state a claim for civil conspiracy ..............24

    c.    Welk cannot recover its alleged reputation and out-of-pocket damages under California's UCL .................24

        i.    Welk cannot allege a violation of the UCL .........24

        ii.    Welk cannot recover "damages" under the UCL............................................................................24

V.    CONCLUSION ...........................................................................................25

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO
STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT
3:17-cv-01499-L-AGS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................ 10, 14

*Bailey v. Brewer*
197 Cal.App.4th 781 (2011) .................................................................. 16

*Bank of the West v. Sup. Ct.*
2 Cal.4th 1254 (1992) ............................................................................ 24

*Baugh v. CBS, Inc.*
828 F.Supp. 745 (N.D. CA 1993) ........................................................ 24

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................... 14

*Bergstein v. Stroock & Stroock & Lavan LLP*
236 Cal.App.4th 793 (2015) .................................................................. 20

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal.App.4th 1106 (1999) .................................................................. 16

*Cacique, Inc. v. Robert Resier & Co.*
169 F.3d 619 (9th Cir. 1999) ................................................................. 24

*Carney v. Rotkin, Schmerin & McIntyre*
206 Cal.App.3d 1513 (1988) ................................................................. 18

*City of Cotati v. Cashman*
29 Cal.4th 69 (2002) .............................................................................. 15

*Coretronic Corp. v. Cozen O'Connor*
192 Cal.App.4th 1381 (2011) ................................................................ 15

*Equilon Enterprises v. Consumer Cause, Inc.*
29 Cal.4th 53 (2002) .............................................................................. 19

*Erie R.R. Co. v. Tompkins*
304 U.S. 64 (1938) ................................................................................. 13

*Gotterba v. Travolta*
228 Cal.App.4th 35 (2014) .................................................................... 13

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*
181 Cal.App.4th 1207 (2010) ................................................................ 13

*Hagberg v. Cal. Fed. Bank*
32 Cal.4th 350 (2004) ............................................................................ 20

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Hilton v. Hallmark Cards*
  599 F.3d 894 (9th Cir. 2010)..........................................................................18, 19

*Jarrow Formulas, Inc. v. LaMarche*
  31 Cal.4th 728 (2003) ........................................................................................15

*Kashian v. Harriman*
  98 Cal.App.4th 892 (2002)................................................................................18

*Kracht v. Perrin, Gartland & Doyle*
  219 Cal.App.3d 1019 (1990)............................................................................22

*Kwikset Corp. v. Sup. Ct.*
  51 Cal.4th 317 (2011)........................................................................................25

*Lefebvre v. Lefebvre*
  199 Cal.App.4th 696 (2010) .............................................................................14

*Mai Systems Corp. v. UIPS*
  856 F.Supp. 538 (N.D. CA 1994) .....................................................................24

*McDermott, Will & Emery v. Sup. Ct.*
  83 Cal.App.4th 378 (2000)................................................................................22

*Moss v. United States Secret Service*
  572 F.3d 962 (9th Cir. 2009).............................................................................14

*Navellier v. Sletten*
  29 Cal. 4th 82 (2002) ...............................................................................13, 19

*Olsen v. Harbison*
  191 Cal.App.4th 325 (2010) .............................................................................20

*People ex rel. Fire Ins. Exch. v. Anapol*
  211 Cal.App.4th 809 (2012) .......................................................................15, 16

*Reilly v. Greenwald & Hoffman, LLP*
  196 Cal.App.4th 891 (2011) .............................................................................22

*Rogers v. Home Shopping Network, Inc.*
  57 F. Supp. 2d 973 (C.D. Cal. 1999) ...............................................................14

*Rubin v. Green*
  4 Cal.4th 1187 (1993) ..........................................................................10, 20, 21

*Ruiz v. Harbor View Community Ass.*
  134 Cal.App.4th 1456 (2005) ...........................................................................17

*Rusheen v. Cohen*
  37 Cal.4th 1048 (2006) .....................................................................................20

*Silberg v. Anderson*
  (1990) 50 Cal.3d 205 (1990).............................................................................19

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- iv -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Snyder v. HSBC Bank, USA, N.A.*
   913 F. Supp. 2d 755 (D.C. Ariz. 2012) ..................................................12

*Solin v. O'Melveny & Myers*
   89 Cal.App.4th 451 (2001)..................................................................22

*Steckman v. Hart Brewing*
   143 F.3d 1293 (9th Cir. 1998).............................................................12

*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*
   122 Cal.App.4th 1049 (2004) .............................................................20

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*
   190 F.3d 963 (9th Cir. 1999)...............................................................14

*Vikco Insurance Services, Inc. v. Ohio Indemnity Co.*
   70 Cal.App.4th 55, 67 (1999) .............................................................24

**Statutes**

Cal. Bus. & Prof. Code § 11211(a) ...........................................................4

Cal. Code Civ. Proc. § 425.16 (e)(2) ...................................................15, 16

Cal. Code Civ. Proc. § 425.16(e)(4) ....................................................15, 17

California Business & Professions Code § 11210, *et seq.* ........................4

California Business & Professions Code § 17203...................................25

California Civil Code §§ 425.16 (e)(1) through (e)(4).............................15

California Code of Civil Procedure § 425.16(a) ....................................14

California Code of Civil Procedure § 425.16(b) ....................................13

Federal Rules of Civil Procedure Rule 12(b)(6).................0, 1, 2, 14, 19

# I.   <u>INTRODUCTION</u>

The revised allegations in the Second Amended Complaint ("SAC") do nothing to cure the fatal deficiencies in plaintiff's claims against Schroeter Goldmark & Bender, P.S. ("SGB"). The claims by the Welk Resort plaintiffs ("Welk") are still barred by California's anti-SLAPP law, by the litigation privilege embodied in California Civil Code § 47(b), and by the strong public policies that prevent interference with the attorney-client relationship between SGB and its clients. The SAC also fails to plead sufficient plausible facts to state a claim against SGB, and, therefore, fails under Fed. R. Civ. P. 12(b)(6) as well.

This lawsuit represents a transparent and patently prohibited attempt by Welk to deter SGB from representing its clients in protected litigation and associated pre-litigation activity against Welk. For the past year, SGB has represented consumers who are Welk timeshare owners unhappy with their timeshare agreements and adverse to Welk. As Welk knows, this representation has included successful negotiation of dozens of settlements, resistance to Welk's attempts to force arbitration in several instances, and filing of three state court complaints against Welk seeking relief for SGB's clients from unfair timeshare agreements. This track record belies Welk's allegations that SGB does not provide true litigation representation to its clients. Indeed, the very demand letter Welk attached as exhibit B to its SAC, purporting to portray SGB as a firm that only writes demand letters, includes a client for whom SGB recently prevailed against Welk in arbitration. There the JAMS arbitrator entered an interim award granting the clients complete rescission, a refund of all monies paid to Welk and attorneys' fees for what the arbitrator called Welk's "egregious" conduct.   (NOL Exhibit Y, Award, p. 7.) This arbitral award, and SGB's pending state court actions against Welk, demonstrate why this lawsuit must be dismissed. Welk argues that this lawsuit is necessary to protect timeshare owners from SGB; in reality, these consumers need SGB to protect them from Welk, free of the chilling effects of this lawsuit on such representation.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

California law prohibits Welk's lawsuit because it seeks to deter SGB from advocating for its consumer clients. California's anti-SLAPP law bars lawsuits like this one where: (1) a defendant like SGB can show that the gravamen of the plaintiffs' claims rise from protected activity, and (2) plaintiffs like Welk cannot show a probability of prevailing. Cal. Code Civ. Proc. § 425.16. Here, SGB satisfies the first step. Despite three pleading attempts, the *only* conduct by SGB placed at issue in this case is the law firm's actions taken while representing timeshare owners, who are also Reed Hein customers, in consumer disputes adverse to Welk. As for the second step, Welk has not and cannot meet its burden of showing a probability of prevailing.

In addition to the standards and protections of California's anti-SLAPP statute, Welk's SAC fails to state a claim on which relief can be granted. Rather than pleading sufficient plausible facts to satisfy Fed. R. Civ. P. 12(b)(6), Welk relies on speculation and conclusory allegations against SGB. For these reasons, SGB's anti-SLAPP and 12(b)(6) motions should be granted with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Welk's timeshare sales tactics are the subject of public interest

Welk sells timeshares to consumers.  (Document 25, Second Amended Complaint ("Doc. 25"), ¶¶ 1, 28.) Many consumers finance the purchase of a timeshare with Welk by executing a promissory note and security agreement. (*See e.g.* Doc. 25, ¶¶ 52-53, and at Ex. E.) Consumers then make payments over time to pay off the note. *Id.* Even after consumers have paid the note in full, they retain an ongoing obligation to pay assessments—dues owed to Welk's Owners Association. *Id.* These assessments inevitably increase over time. *Id.*

Welk, like many companies in the timeshare industry, relies on various tactics that take advantage of vulnerable consumers: high pressure sales pitches; repeated upselling; and raising obstacles to legitimate requests to rescind timeshare agreements. These tactics have generated widespread public discourse on-line, in the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

news media, in the courts, and in the industry's own meetings and public commentary. They have also generated responses intended to even the playing field for consumers: creation of companies like Reed Hein that assist consumers seeking relief from unwanted timeshares; and engagement of consumer-oriented firms like SGB to represent consumers in a full range of litigation and prelitigation efforts to get out of abusive timeshare deals. This context reveals the true nature of Welk's present lawsuit as a continuation of its high pressure tactics, based on false premises and serial misrepresentations, intended to deter SGB and others from engaging in protected litigation, free speech, and petitioning activities that promise to undermine Welk's continued predation on disadvantaged consumers.

### 1.    Consumers complain about Welk's business practices

The sales and business practices of the timeshare industry in general, and Welk in particular, have been the subject of significant public controversy and discourse that have played out on-line, in the news media, in the courts, and in the industry's own public conventions and websites. For example, numerous complaints have been lodged against Welk on the Consumer Affairs website from those lured into "hard-sell" timeshare presentations. (Request for Judicial Notice ("RJN"), Ex. M.) Consumers have reported misrepresentations, harassment and degrading comments, and subjection to hours-long sales pitches that end only when the consumer agrees to sign a timeshare contract. *Id.*

The news media has chronicled the same high pressure sales tactics and consumer concerns. One recent article described a timeshare sales representative, "He sold harder than any car salesman I had encountered." (RJN, Ex. G, Desert Sun Article, p. 2.) A New York Times article similarly declared in 2016, "The Timeshare Hard Sell Comes Roaring Back" (RJN, Ex. N, N.Y. Times Article, p. 1.) Welk itself has submitted a USA Today article directed to readers who have "timeshare regret" that advises "what to do about it."  (Doc. 25, Ex. D.)

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

To address consumer concerns, the California legislature enacted the Vacation Ownership and Time-share Act of 2004. Cal. Bus. & Prof. Code § 11210, *et seq.* The Legislature intended the Act "to provide full and fair disclosure to purchasers" of timeshares. Cal. Bus. & Prof. Code § 11211(a). SGB relied on this Act in its recent successful arbitration against Welk, where the arbitrator found Welk failed to comply with provisions that required it to inform a purchaser of the procedures necessary to make a timely request to cancel a purchase. (NOL Ex. Y, Award, p. 7.)

### 2.   Welk is sued repeatedly over its timeshare sales practices

The public controversy over Welk's business practices includes many lawsuits. SGB has filed three California state court actions for its clients, who are also Reed Hein customers. (RJN, Exs. A, C, and E; Breen Dec., ¶¶ 33-34.) For example, in her Complaint against Welk, Ms. Margarita Chavez alleged that Welk employees misrepresented to her that annual maintenance fees would remain the same each year, that a timeshare was a financial investment that would increase in value, that the offer to purchase being made was limited to the day of the presentation she attended, that Welk offered a program to owners to allow them to rent their unused timeshare points, and that the timeshare contract could not be canceled once it was signed. (RJN, Ex. A, ¶ 14.) According to SGB's lawsuit, not one of these statements was true. (*Id.* at ¶ 15.) Ms. Chavez then attended a member "update meeting" and found it was just another misleading high-pressure sales pitch advising her that if only she purchased more points, she could then rent out her timeshare and reduce her financial burden. In reliance, she agreed to increase her membership, placing her further in debt to Welk. (*Id.* at ¶¶ 21-29.) Despite paying more money to Welk over the next 6 years, *and being upsold twice*, she could never book wanted vacations, or sell, or use all her points. *Id.*

The plaintiffs in the *Holtzclaw v. Welk* and *Lopez v. Welk* matters—the other two Complaints that SGB filed for its clients with local counsel—alleged similar experiences. (See RJN, Ex. C and E.) The facts alleged in *De Mary v. Welk Resorts,*

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

a lawsuit filed by another law firm, further reveal Welk owners' issues with the company's sales tactics. (RJN, Ex. I, ¶¶ 13-24.)  And *Lewin v. Welk,* a lawsuit filed by a different consumer attorney firm, alleges that Welk forces *consumer* disputes with dis-satisfied owners into *commercial* arbitration, making arbitration a financial barrier that prevents consumers from exercising their rights. (RJN, Ex. J, ¶¶ 2-6.) Numerous other civil complaints have been filed against Welk. (See RJN, Ex. H.)

### 3. The timeshare industry admits fraudulent sales practices exist, and cautions owners about timeshare resale companies

The timeshare industry itself has recognized the problem of fraudulent sales practices. (Thomas Breen Declaration ("Breen Decl."), ¶ 10.) At the 2017 annual convention run by the American Resort Development Association ("ARDA"), ARDA presenters publicly acknowledged that fraudulent practices existed and mentioned it was working to reduce the fraud. *Id.*

At the same time, however, timeshare companies have actively sought to deter dissatisfied consumers from seeking ways out of unwanted timeshares. Some companies, like Diamond Resorts and Westgate Resorts, have launched web pages which publicly try to dissuade owners from seeking out companies, like Reed Hein. (NOL, Ex. Q and R.) Under the guise of decrying the possibility of third-party reseller scams, these timeshare companies present dire warnings to owners who may be looking to sell their timeshares. *Id.*

### B. Consumers seek SGB's representation to resolve their dispute

SGB was founded in 1969 as a law firm committed to representing aggrieved individuals against large corporate and governmental entities. (Breen Decl., ¶ 2.) For nearly 50 years, the firm has represented plaintiffs in the areas of general tort, product liability, medical malpractice, consumer protection, employment harassment and discrimination, legal malpractice, sexual assault, mass torts, and others. *Id.* SGB has extensive experience representing consumers. *Id.* Further, SGB attorneys hold, or have held many legal leadership positions in Washington and beyond. (*Id.* at ¶ 3.)

The firm and its individual members have been recognized repeatedly for their excellent legal service to consumers, and for the good work done both within, and outside of, the legal community. (*Id.* at ¶¶ 4-5.)

In 2016, Reed Hein was seeking a highly reputable Seattle-based law firm that represented consumers and who would provide legal services for the Reed Hein customers who needed legal representation. (*Id.* at ¶ 8.) Because representing aggrieved consumers against large corporations fit SGB's values, the firm began to represent timeshare owner-consumers. *Id.*

### 1.   SGB sends representation letters to timeshare companies

SGB's representation of timeshare clients commonly begins with a letter of representation to the timeshare company. (*See* Doc. 25, Ex. B.) The letter advises the company that SGB represents the consumer with local counsel and that SGB is available to discuss matters further and looks forward to seeking a resolution. *Id.*

One of SGB's goals in sending the letter is to ensure that all communications about timeshare termination run through counsel. (The letter excludes routine billings and indicates that the resort may continue to mail those directly to the client.) (Breen Decl., ¶ 12.) This is important to SGB for a few reasons. First, by the time clients come to SGB they are often tired of trying to deal with the timeshare company and frustrated by the experience. *Id.* Clients are skeptical of whatever new proposals may come. *Id.* The company places a high value on the opportunity to upsell owners to bigger commitments, and will ignore owners' requests. *Id.* With rare exception, SGB's clients want nothing more to do with the company. *Id.*

SGB next attempts to engage the timeshare company in discussion to see if a negotiated resolution is possible short of litigation. (*Id.* at ¶ 13.) This attempt is often successful in avoiding litigation because many times the client's primary goal is simply to get a divorce from the timeshare company. *Id.* Such clients are willing to forgo the prospect of claims for affirmative relief against the timeshare company if it means they can rid themselves of future dealings. Negotiations by SGB are also

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

effective for timeshare clients because the quality of the legal representation SGB provides is more extensive than usually seen by timeshare companies. (*Id.* at ¶ 14.) Welk's own corporate counsel, Mr. Dominic Peterson, acknowledged that, unlike many other attorneys he has seen, SGB takes its clients' interests to heart. (Breen Decl., ¶ 16; NOL, Ex. S, 04/05/17 email.)

Throughout this process, SGB provides valuable legal services for its timeshare clients. (Breen Decl., ¶ 15.) The work-product and attorney-client privileges severely limit what SGB can say about its representation of its own clients to defend itself from Welk's allegations. But SGB can state that its services can generally include: review and analysis of the timeshare purchase documents; association of local counsel to advise on forum-specific law; detailed advice concerning issues, like foreclosure, that might be relevant to a client's timeshare; counsel about the right to trial and ADR; use of special counsel to address credit reporting issues; leveraging firm knowledge to tailor fact gathering; settlement negotiations; retention of tax counsel when necessary; and filing claims for arbitration. *Id.* Where litigation is warranted, and upon consultation with local counsel, SGB recommends litigation, and works with local counsel to initiate and litigate those actions. *Id.*

### 2.   SGB's history of representing Welk owners against Welk

SGB's representation of timeshare owners with a dispute against Welk has principally involved communications with Welk's corporate counsel, Mr. Peterson. Initially SGB was able to quickly resolve a client's dispute with Welk. (Breen Decl., ¶ 16.) But shortly afterward, Mr. Peterson's communications with SGB turned unusual. *Id.*  Mr. Peterson demanded to know if SGB really represented the timeshare owners. *Id.*  SGB assured him that it did.  *Id.*  Mr. Peterson then advised that he had seen other lawyers abandon their clients the moment Welk moves a matter into arbitration. *Id.* SGB informed Mr. Peterson that although SGB tries to

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1    first resolve matters via a negotiated resolution, where matters cannot be resolved
2    and need to be litigated, SGB will litigate. *Id.*

3        Mr. Peterson lauded SGB for taking its clients' interests to heart, and on the
4    same day signed demands to arbitrate four separate SGB client disputes. (Breen
5    Decl., ¶ 17.) A fifth demand quickly followed. *Id.* Each demand sought to accelerate
6    the full "mortgage" amounts owed, although many of SGB's clients struggled to
7    make monthly payments, and had never visited a Welk resort.[1] *Id.*

8        SGB continued to work with Welk to attempt to resolve other matters. (Breen
9    Decl., ¶ 18.)  A constant sticking point for Welk was its desire to speak directly to
10   the timeshare owners. *Id.*  SGB knows resorts like Welk greatly desire the
11   opportunity to upsell owners. Mindful of this tendency, and the lost trust clients have
12   from past dealings with Welk, SGB repeatedly took the position that these
13   negotiations must go through counsel. *Id.*  Despite this obstacle, SGB successfully
14   resolved 30 different, complicated, timeshare client disputes with Welk. (*Id.* at ¶ 20.)

15       Another problem SGB encountered was Welk taking unilateral action which
16   harmed its owners' credit without notice to the owner. After receiving SGB's notice
17   of representation, Welk terminated some owners' automatic payment without notice
18   to the owners that it was so doing.  (Breen Decl., ¶ 28.) Welk compounded the
19   problem by then refusing to accept payment by other means and then reporting the
20   "missed" payment to credit reporting agencies. *Id.* SGB intervened on behalf of its
21   clients to force Welk to offer an alternative method of payment and retraction of any
22   negative credit reports. *Id.* It is not clear if Welk has stopped such actions. Welk also
23   has reported "missed" payments after clients executed settlements and a payment
24   was "missed" while Welk delayed countersigning the settlements. *Id.*
25   / / /

26

27

28

---

[1] Timeshare companies use the term "mortgage" to lend the appearance that a purchaser receives something of value. In truth the transaction is more like a credit card purchase, with interest charges approaching 18% at times. What is purchased is usually valueless and unmarketable. Banks will not refinance the debt.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

### 3.     The first SGB arbitration against Welk results in a finding of "egregious" conduct by Welk

Of the five separate disputes in which Welk sought to compel arbitration, SGB determined that in four of the cases there was no enforceable agreement to arbitrate in the purchase agreement drafted by Welk.  (Breen Decl., ¶ 21.) When SGB advised Welk's selected arbitrator, JAMS, of its position, JAMS concluded it would not proceed without an agreement showing the parties intended to arbitrate with JAMS. *Id.* When further negotiations failed, SGB declined Welk's invitation to arbitrate three of the matters and gave a courtesy notice to Welk that it intended to litigatein California. (*Id.* at ¶ 23; Notice of Lodgment ("NOL") Ex. W.) SGB, with California local counsel, then filed the three lawsuits against Welk in the San Diego County Superior Court. (RJN, Exs. A-F.) Those cases are still pending.

With respect to the fifth dispute, SGB did agree to Welk's demand for arbitration, which was recently concluded in favor of SGB's clients, two timeshare owners who were also Reed Hein customers. (Breen Decl., ¶ 19.)  After a two-day hearing the Hon. J. Richard Haden (Ret.) issued his arbitrator's award in favor of SGB's clients, finding that they were entitled to a full refund of all money paid to Welk, rescission of their contract, and reasonable attorneys' fees and costs.

In his analysis Judge Haden found Welk failed to assist or properly advise SGB's clients although they twice called to rescind during the rescission period, then failed to advise during a third call that cancelation might still be possible under the contract's liquidated damages provision. (NOL Ex. Y, p. 6-7.) Moreover, these customers were only "qualified" for the purchase based on the Welk salesperson's assurance that *the new credit card Welk issued on the spot*, somehow boosted estimated income to $50,000 from under $20,000. *Id.* In sum: "Welk sold these women something Welk knew they clearly could not afford."  *Id.* Over the four-hour time period, both clients repeatedly told the Welk salesperson they were not interested and could not afford the timeshare and just wanted to return to join their

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  family at the zoo, but the salesperson repeatedly replied there was no risk because

2  they could simply call Welk and cancel and "You can get out of here now if you'll

3  just sign." *Id.* Judge Haden concluded, "Based on these egregious facts, Welk simply

4  cannot prevail on this contract." (*Id.* at p. 7.)

5       The findings of fact set forth in the award evidence Welk's mistreatment of

6  the very consumers it now claims to be protecting from SGB by bringing this

7  lawsuit.  (NOL Ex. Y, Award pp. 3-6.)  Significantly, Welk tried to obstruct SGB's

8  ability to conduct discovery on behalf of its clients during the arbitration *on the basis*

9  *of this lawsuit*, arguing that SGB should not be allowed to take depositions because

10  of the pendency of this case. Fortunately, the arbitrator denied Welk's request, and

11  SGB was able to obtain an unqualified win. Unfortunately, Welk's conduct

12  continues. In a letter to the JAMS arbitrator, again referencing this litigation, Welk

13  contended, that an award of fees and costs to SGB's clients would amount to the

14  arbitrator's participation in a fraudulent scheme. The argument, opposed by SGB in

15  the arbitration, highlights the very problems that the California Supreme Court cited

16  in *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993), discussed below, as a reason for

17  barring litigation like Welk's present action. (Breen Decl., ¶ 20, NOL Ex. Z.)

18      **4.**    **SGB represents timeshare owners including Welk owners**

19       Welk's SAC includes the unsupported legal conclusion that SGB does not

20  provide legal representation to Welk owners who are also Reed Hein customers.

21  (Doc. 25, ¶ 17.) This conclusion need not be accepted as true.  *Ashcroft v. Iqbal,* 556

22  U.S. 662, 678 (2009) (court need not accept speculation or legal conclusions.)

23  Indeed Welk's own pleadings contradict this legal conclusion, and SGB's evidence

24  supporting its anti-SLAPP motion shows the absurdity of Welk's assertion.

25       To begin, Welk's First Amended Complaint ("FAC") contradicts the SAC's

26  conclusion that SGB does not represent Welk owners, by asserting that SGB

27  violated the attorney-referral and running-and-capping prohibitions set forth in the

28  State Bar Act by accepting timeshare owner referrals as clients. (Doc. 5, ¶¶ 79-86.)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1   Welk's SAC tries to allege a UCL claim based on these same alleged violations. The

2   assertion also contradicts the conclusion. (Doc. 25, ¶ 127.)

3       The implausibility of this conclusion is also demonstrated by the consistent

4   course of communications, and of conduct, between SGB and Welk. For example,

5   the demand letter from SGB to Welk, (Doc. 25, Ex. B), expressly identifies Welk

6   timeshare owners as SGB's clients. (See also, NOL, Exs. S-X.). SGB has negotiated

7   settlements with Welk on behalf of some 30 consumers. The firm has initiated three

8   separate lawsuits against Welk on behalf of timeshare owners.  (RJN, Exs. A, C, and

9   E.) And just a few days ago, SGB won a substantial arbitration award against Welk,

10  setting aside a timeshare agreement based on Welk's egregious conduct, and

11  obtaining a full refund of all money paid to Welk by the timeshare owners, together

12  with an award of fees and costs. (NOL, Ex. Y.) These actions were all taken on

13  behalf of Welk timeshare owners, who are clients of SGB and are also Reed Hein

14  customers. (Breen Decl., ¶¶ 33-34.)  It is absurd for Welk to assert that somehow

15  SGB does not actually represent these timeshare owners.

16      The only "support" for Welk's new conclusion that SGB does not really

17  represent Welk owners is an alleged "Master Fee Agreement" ("Agreement")

18  between Reed Hein *and unrelated co-defendant Ken B. Privett*. (Doc. 25, SAC at

19  Ex. C.) However, SGB is not a party to that Agreement, and SGB has no such

20  Agreement with Reed Hein. Thus, this Agreement is irrelevant and cannot prop up

21  Welk's baseless conclusions about SGB's relationship with its Welk timeshare-

22  owner clients.

23      Although the Privett Agreement is irrelevant, it is also worth noting that

24  Welk's SAC grossly misstates the effective language of that Agreement. The

25  Agreement includes a "Memorandum of Understanding & Amendment of

26  Agreement" ("Amendment") dated March 17, 2016, that is attached to the

27  Agreement and incorporated into the SAC. (Doc. 25, ¶ 17.) Paragraph 2 of the

28  Amendment expressly states that the timeshare owner is the law firm's client: "KBP

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  will serve as the attorney for the timeshare owner (timeshare owner is KBP's

2  client)…." (Doc. 25, Ex. C, p. 11, ¶ 2 (emphasis added)). To the extent the SAC

3  alleges anything contrary to the Agreement, as amended, such allegations must be

4  disregarded.  *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 767 (D.C.

5  Ariz. 2012); *Steckman v. Hart Brewing,* 143 F.3d 1293, 1295 (9th Cir. 1998)

6  (conclusory allegations disregarded where contradicted by referenced documents).

7      **C.**    **Welk sued SGB after SGB filed lawsuits for clients against Welk.**

8          Welk filed its complaint in this case two business days after SGB's owner-

9  clients filed their lawsuits in the San Diego Superior Court. Welk's complaint filed

10  on July 25, 2017, and every amended complaint filed in the action to date, omits any

11  mention of these three pending state court lawsuits against Welk. The SAC

12  continues this pattern. The SAC claims that SGB does not represent Welk owners

13  who are also Reed Hein customers, but fails to mention the fact that SGB is

14  currently representing multiple Welk owners, who are also Reed Hein customers, in

15  pending California litigation against the plaintiffs. (Breen Decl., ¶¶ 33-34.) Such

16  facts would have publicly revealed the SLAPP nature of Welk's action.

17          The SAC tries to allege three California state law claims against SGB,

18  including the: (1) first claim for intentional interference with contract (Doc. 25, ¶¶

19  80-94); (2) third claim for civil conspiracy (Doc. 25, ¶¶ 111-122); and (3) fourth

20  claim for violation of California's Unfair Competition Law ("UCL") at Cal. Bus. &

21  Prof. Code § 17200 *et seq.* (Doc. 25, ¶¶ 123-138).  Like its predecessors, the SAC

22  alleges liability premised solely upon the manner in which SGB's attorney-client

23  relationship with Welk timeshare owners arises, and the manner in which SGB

24  provides legal services to these clients. The facts again fail to state a claim, and give

25  rise to the protections accorded to defendants under California's anti-SLAPP law.

26  / / /

27  / / /

28  / / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

## III.   LEGAL STANDARD FOR RULING ON MOTIONS

### A.   Standard for ruling on a special motion to strike

Any cause of action arising from a person's act in furtherance of his or her right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike. Cal. Code Civ. Proc. § 425.16(b). Unless the court determines the plaintiff has established a probability of prevailing on such a claim it must be dismissed. *Id.* Section 425.16 provides a procedure for the early dismissal of strategic litigation against public participation, or SLAPP suits, which are brought to challenge the exercise of protected free speech or petition rights. *Gotterba v. Travolta,* 228 Cal.App.4th 35, 40 (2014). SLAPP actions are "[l]awsuits... deployed as a weapon barring rivals from meaningful access to judicial redress... [in which] parties prevailed by intimidating rivals instead of persuading judges and juries." *Navellier v. Sletten,* 29 Cal. 4th 82, 96 (2002).[2]

The California legislature crafted section 425.16 to remedy this specific problem. This dismissal mechanism is important because SLAPP suits are designed generally to exploit an economic advantage over the defendant as opposed to vindicating a legally cognizable right. *Graffiti Protective Coatings, Inc. v. City of Pico Rivera,* 181 Cal.App.4th 1207, 1215 (2010). The anti-SLAPP law, as it is known, "was enacted to protect legitimate litigants from procedurally coercive tactics." *Navellier*, *supra*, 29 Cal. 4th at 96.

Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), and its progeny, in the absence of a direct conflict with federal procedural rules, subsections (b) and (c) of California's anti-SLAPP law apply in federal court. *U.S. ex rel. Newsham v.*

---

[2] This is already occurring. For example, on October 10, 2017, counsel for Welk argued, in the arbitration proceeding described above, that in light of issues at play in this case, SGB should be barred from taking depositions. (Breen Decl., ¶ 30.) The interference continued after an award issued in favor of SGB's clients, when Welk argued that, in light of the issues in this case, an award of fees and costs to SGB's clients would be improper. (*Id.* at p. 21; NOL, Ex. Z.)

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

*Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999); and see *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 977-78 (C.D. Cal. 1999) (substantive protections of the statute apply but discovery stay superseded). The statute must "be broadly construed to encourage continued participation in free speech and petition activities." Cal. Code Civ. Proc. § 425.16(a).

Procedurally, the anti-SLAPP law establishes a two-step process for striking a claim. "In the first step, the court is tasked with determining whether the defendant has made the threshold showing that a challenged cause of action is one 'arising from protected activity….' If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a 'probability of prevailing' on his or her claim." *Lefebvre v. Lefebvre*, 199 Cal.App.4th 696, 702 (2010). Here, SGB must make only the step-one showing. Welk must then meet the step-two burden of demonstrating a probability of prevailing.

## B.   Standard for ruling on Rule 12(b)(6) motion to dismiss

In order to satisfy Rule 12(b)(6), a complaint cannot rest on speculation or conclusion, or the mere recitation of elements. *Ashcroft, supra,* 556 U.S. at 678. Welk's SAC must provide the "grounds" of its "entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This requires more than labels and conclusions. *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that factual content, must plausibly suggest a legally cognizable claim for relief. *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009). Here, dismissal is warranted because, despite three pleading attempts, Welk's allegations are neither legally cognizable, nor supported by factual allegations sufficient to state a plausible claim against SGB. The pleading fails separate and apart from Welk's inability to substantiate any claim with admissible evidence as required under section 425.16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# IV.   LEGAL ARGUMENT

## A.   Step One: Welk's claims against SGB arise from protected activity

The allegations of the SAC and the facts SGB presents with this motion make clear this suit is a textbook SLAPP suit designed to limit consumers' access to the courts. Under the anti-SLAPP law, the moving defendant need only make a threshold showing that the plaintiff's claim itself is based on an act in furtherance of the defendant's right of petition or free speech. In this first-step analysis, the court decides only whether the plaintiffs' claims *arise from* protected activity. *People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal.App.4th 809, 822 (2012). The court reviews the parties' pleadings, declarations, and supporting documents to determine *what* conduct is being challenged, not whether the conduct is actionable." *Coretronic Corp. v. Cozen O'Connor*, 192 Cal.App.4th 1381, 1388-89 (2011).

A defendant meets this burden by demonstrating that an act underlying the plaintiff's claim fits one of the four categories identified in sections 425.16 (e)(1) through (e)(4). *City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002); see also, *Jarrow Formulas, Inc. v. LaMarche ,* 31 Cal.4th 728, 734 (2003) ("arising from" includes any act "based on" speech or petitioning activity).  The categories of protected conduct in this case, which must be broadly construed, include: (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; and (4) any other conduct in furtherance of the exercise of a constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. Cal. Code Civ. Proc. § 425.16 (e)(2) and (e)(4). SGB meets this step.

## 1.   Pre-litigation communications and letters fall within the protection of Section 425.16(e)(2)

Despite this being Welk's third pleading attempt, the SAC still makes very few express allegations of wrongful conduct by SGB. Welk's only specific

allegations against SGB relate only to the law firm's role as legal counsel. Specifically, Welk takes issue with SGB sending letters of representation identifying SGB's timeshare owner clients and demanding that Welk contact them only through counsel *except* for routine billing purposes. (Doc. 25, ¶ 73, and Ex. B.) These pre-litigation communications, expressly described by Welk in its First Amended Complaint ("FAC") as "demand letters" (Doc. 5, ¶ 35), dovetail with SGB's follow-up letter advising Welk that alternative dispute resolution means have failed, causing SGB to resolve the dispute by litigation. (Breen Decl., ¶ 23; NOL Ex. W, letter.)

"Communications preparatory to, or in anticipation of, bringing an action are within the protection of the anti-SLAPP statute." *People ex rel. Fire Ins. Exchange*, *supra,* 211 Cal.App.4th 824, citing *Bailey v. Brewer,* 197 Cal.App.4th 781, 789 (2011). If a pre-litigation statement concerns the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration, it falls within the scope of section 425.16. *Id.*

Here, the facts speak plain. SGB is a highly regarded AV-rated firm of trial attorneys. (Breen Decl., ¶¶ 1-4.) Welk admits SGB sent pre-litigation demand letters informing Welk it was counsel for timeshare owners, and was working with local counsel. A demand letter sent in anticipation of litigation is a legitimate speech or petitioning activity protected under section 425.16. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.App.4th 1106, 1115 (1999). Further, when Welk's own corporate counsel questioned SGB's commitment to its clients if matters moved into litigation, SGB candidly informed Welk that where matters required litigation to be resolved, SGB would litigate. (Breen Decl., ¶ 16.) SGB opposed Welk's attempt to drag disputes into arbitration, and when negotiations failed, SGB caused the filing of three separate complaints on behalf of timeshare clients who could not resolve their disputes short of litigation. (*Id.* at ¶¶ 17-21.) Thus, Welk tries to pin liability on SGB for nothing but protected petitioning activity under section 425.16(e)(2).

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

## 2. The anti-SLAPP law protects private communications between counsel on matters of public interest

SGB's conduct also falls within the scope of protected petitioning and speech activity described in section 425.16(e)(4). That subdivision defines an act in furtherance of a person's right to petition or free speech to include any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public interest. *Id.*

The court in *Ruiz v. Harbor View Community Ass.,* 134 Cal.App.4th 1456, 1468 (2005), held section 425.16 governs even private communications between attorneys, so long as they concern a public issue. In *Ruiz,* the court held that letters exchanged between counsel concerning a homeowner association dispute were protected communications under section 425.16(e)(4). They were protected even though the communications were public only in the sense that they concerned the homeowners that were governed by the same association. *Ruiz, supra*, 134 Cal.App.4th at 1468 (disputes were of interest to a definable portion of the public).

Here, the letters Welk relies on were protected speech in connection with a matter of public interest—i.e. Welk's timeshare sales practices. Again, the timeshare industry's fraudulent, unlawful and unfair business practices are an ongoing subject of public discussion, on-line, in the media, in trade conferences, and in the courts, and Welk's practices in particular are the subject of ongoing public discussion and debate. (RJN, Exs. A, C, E and G-R, and Y; Breen Decl., ¶ 10.) And SGB's communications to Welk's counsel regarding dissatisfied timeshare clients seeking a resolution to their dispute with Welk are protected speech. They are communications made in connection with pre-litigation activities *and* in connection with the public's interest in how the timeshare industry deceives consumers. Just as private communications between counsel about a homeowner association dispute in *Ruiz* were protected speech on a matter of common interest to the homeowners, private communications here between counsel concerning a dispute arising within the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  regulated timeshare industry and concerning an identifiable group of dissatisfied

2  timeshare owners, fall within the protections of the anti-SLAPP law.

3  **3.    SGB Represents Welk timeshare owners who are also**

4  **customers of Reed Hein**

5  Welk may try to reassert the argument that SGB's evidence of representing

6  Welk timeshare owners is irrelevant because the clients described in SGB's

7  moving papers are not Reed Hein customers.  That argument simply is not true.

8  (Breen Decl., ¶ 33.) All of the Welk timeshare owner clients of SGB discussed

9  above, and discussed in the supporting papers, declarations, and exhibits were also

10  customers of Reed Hein. (Breen Decl., ¶ 34.) In each of these cases, without

11  exception, SGB represented, and in some cases still represents, the owners. *Id.*

12  In addition, the speculative, conclusory, and contradicted allegation that SGB

13  does not really represent its clients is not relevant to the first step of the anti-SLAPP

14  motion analysis. Instead, once SGB has made its prima facie showing that its

15  petitioning activity is an essential part of Welk's claims against SGB, the burden of

16  showing that SGB does not truly represent any of these timeshare owners falls to

17  Welk.  *Hilton v. Hallmark Cards,* 599 F.3d 894, 903 (9th Cir. 2010).

18  If, as Welk contends, clever pleading alone could remove a complaint

19  arising from constitutionally protected activity from the protections of the anti-

20  SLAPP law, the statute would be of little effect in preventing meritless cases from

21  proceeding beyond the early stages of litigation. Analogously, communications

22  made in connection with litigation do not fall outside of the litigation privilege

23  simply because they are *alleged* to be fraudulent, perjurious, unethical, or even

24  illegal, where they are otherwise logically related to litigation. *Kashian v.*

25  *Harriman,* 98 Cal.App.4th 892, 920-21 (2002), acknowledging disapproval of

26  *Carney v. Rotkin, Schmerin & McIntyre,* 206 Cal.App.3d 1513, 1522-23 (1988).

27  SGB's actions clearly constitute protected activity, even if Welk objects to their

28  merits or motivations.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

**B.    Step Two: Welk cannot demonstrate a probability of prevailing, and has not stated any claim on which relief can be granted.**

Because the conduct at issue was protected activity, Welk must show a probability of prevailing on each claim against SGB.  *Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal.4th 53, 67 (2002).  California law and the Ninth Circuit are clear that Welk must demonstrate that its complaint is *both* legally sufficient *and* supported by a prima facie showing of facts sufficient to sustain a favorable judgment against SGB if the evidence submitted by the plaintiff is credited. *Navellier, supra*, 29 Cal.4th at 88–89; *Hilton, supra,* 599 F.3d at 903. Welk cannot demonstrate either:  (1) All of Welk's alleged claims are barred as a matter of law because they are premised on privileged litigation activity and seek to invade the attorney-client relationship; (2) the agent's immunity rule bars Welk's contract interference claim; (3) the pleading fails to allege a civil conspiracy claim as a matter of law, or show tortious conduct committed by SGB; and (4) Welk's UCL claim is not properly pleaded and, in any event, cannot provide Welk with the damages it seeks to recover. Thus, the SAC is properly stricken under section 425.16. For the same reasons, it is subject to dismissal under Rule 12(b)(6) because none of the asserted causes of action provide a legally viable claim for relief.

**1.    California's litigation privilege bars Welk's state law claims**

Welk's claims against SGB are barred under California law. The entirety of SGB's conduct arose in connection with actual and anticipated litigation. California's litigation privilege is an important immunity for lawyers like SGB and their clients. The litigation privilege is codified in California Civil Code section 47(b), and applies to communications: (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *Silberg v. Anderson,* (1990) 50 Cal.3d 205, 212 (1990). California case law construes this provision to protect against derivative suits like the present case,

1    arising from pending litigation. *Bergstein v. Stroock & Stroock & Lavan LLP,* 236

2    Cal.App.4th 793, 814 (2015); *Rubin, supra,* 4 Cal.4th at 1193.

3        The privilege immunizes defendants from virtually any tort liability. *Olsen v.*

4    *Harbison,* 191 Cal.App.4th 325, 333 (2010).  Any doubt about whether the privilege

5    applies is resolved in favor of applying it.  *Id.* For well over a century,

6    communications with even "some relation" to judicial proceedings have been

7    "absolutely" immune from liability.  *Rubin*, *supra*, 4 Cal.4th at 1187.  This sweeping

8    application of section 47(b)—regardless of the presence or absence of malice—is

9    necessary to effect the purposes upholding immunity: (1) access to the courts

10   without fear of later harassment by derivative tort actions; (2) encouraging open

11   communication and zealous advocacy; (3) promoting complete and truthful

12   testimony; (4) giving finality to judgments; and (5) avoiding endless litigation.

13   *Rusheen v. Cohen,* 37 Cal.4th 1048, 1063 (2006).

14       Section 47(b) encompasses not only testimony in court and statements made

15   in pleadings, but also statements made before a lawsuit is filed, whether to prepare

16   for anticipated litigation or to investigate the feasibility of filing a lawsuit.  *Hagberg*

17   *v. Cal. Fed. Bank,* 32 Cal.4th 350, 361 (2004).  To be privileged under section 47(b),

18   a pre-litigation statement need only have "some relation" to contemplated litigation.

19   *Id.*; see also, *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.,* 122

20   Cal.App.4th 1049, 1058 (2004) (privilege protects pre-litigation communications

21   involving the subject matter of the ultimate litigation); *see also, Hagberg*, *supra*, 32

22   Cal.4th at 361; *Rubin, supra,* 4 Cal.4th at 1194–1195 (privilege applies to

23   communications made, prior to the filing of a complaint, by a person "meeting and

24   discussing" the merits of future litigation with potential parties).

25       Here, as reflected in Welk's own pleading, all of the conduct undertaken by

26   SGB was conduct protected by the litigation privilege. The gravamen of SGB's

27   alleged wrong is that it sent Welk demand letters on behalf of clients seeking to

28   terminate their timeshares. (Doc. 25, ¶¶ 72-73.) These letters, sent to Welk at the

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

- 20 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

outset of representation, were sent in contemplation of future litigation. SGB's subsequent conduct demonstrates this, including its Communications with Welk—in which SGB stated it would litigate where it could not negotiate a settlement—its retention of local counsel, its opposition to Welk's arbitration demands, its intent-to-sue letter to Welk, and its initiation of the three state cases against Welk. (Breen Decl., ¶¶ 16-24; NOL Exs. S-W.)

Welk's claims also fail under the litigation privilege because of the chilling effect on attorneys providing effective representation—or representation at all—created by the threat of a suit from the adverse party.  A litany of consequences arises from such actions, as discussed in *Rubin*, *supra*, 4 Cal.4th at 197-198.  *Rubin* emphasized that such cases result in, "disturbing access to counsel, the intimidating effect on attorneys of facing an almost certain retaliatory proceeding, the distractions inherent in requiring counsel to deal with defending a personal countersuit, as well as the predicate action, and in general the dampening effect of the unobstructed representation of claims." *Id.* For good reason, such actions cannot proceed. *Id.*

The holding and underlying concerns raised in *Rubin* merit the same result here. As in *Rubin*, Welk's lawsuit against SGB does not contend that SGB's lawsuits against Welk constitute malicious prosecution—the *only* exception to the litigation privilege. Indeed, Welk's third pleading attempt raises no allegations about the merits of SGB's lawsuits at all. Instead, Welk initiated this parallel litigation, solely to hinder SGB's prosecution of the three California actions, just as Welk used the litigation to hinder SGB's successful arbitration against Welk.

As in *Rubin*, Welk seeks to impose liability on the attorneys for the adverse parties based on circumstances, alleged on "information and belief," surrounding the formation of SGB's attorney-client relationship with Welk's timeshare owners, and SGB providing legal services and client counsel to owners seeking a resolution of their dispute with Welk. Welk's claims fail because the communications from which they arise are privileged, and because California's Supreme Court holds that such

1   claims cannot go forward as a matter of law because of the negative impact such

2   cases have on the administration of justice.

       2.      **Welk's claims cannot proceed because SGB's duties to its**

4         **clients hinder the presentation of a meaningful defense**

5         Welk's entire action against SGB is also barred because it seeks to invade the

6   attorney-client privilege. Because the privilege ethically precludes attorneys from

7   addressing allegations leveled against them, the complaint must be dismissed.

8   California has recognized this fundamental principal protecting the attorney client

9   privilege. *McDermott, Will & Emery v. Sup. Ct.,* 83 Cal.App.4th 378, 384 (2000)

10  (holding that a shareholder suing an outside corporate counsel in a derivative action

11  could not invade the attorney client privilege; such action placed the attorney

12  defendant "in the untenable position of having to 'preserve the attorney client

13  privilege (the client having done nothing to waive the privilege) while trying to

14  show that his representation of the client was not negligent.'"); quoting *Kracht v.*

15  *Perrin, Gartland & Doyle,* 219 Cal.App.3d 1019, 1024 (1990); see also, *Solin v.*

16  *O'Melveny & Myers,* 89 Cal.App.4th 451, 458 (2001) (holding that "there can be no

17  balancing of the attorney-client privilege against the right to prosecute a lawsuit to

18  redress a legal wrong"); *Reilly v. Greenwald & Hoffman, LLP,* 196 Cal.App.4th 891

19  (2011) (dismissing action brought against a firm that would need to disclose

20  confidential information to provide a meaningful defense).  Where an attorney's

21  defense is so severely hampered by the duty of confidentiality, an absolute defense

22  exists. *McDermott, supra*, 83 Cal.App.4th at 384.

23        Here, as in *McDermott,* there has been no waiver of the attorney-client

24  privilege or the broad duty of confidentiality owed by SGB to its clients, including

25  the Welk timeshare owners that SGB continues to represent, who are named

26  plaintiffs in the three California actions. SGB is ethically precluded from disclosing

27  any of its communications with any of its clients. Thus, SGB cannot refute Welk's

28  novel claim it suffered compensable injury because of SGB's alleged failures to

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

communicate with its own clients, to undertake a reasonable investigation of the facts in each individual client's case, and to provide competent legal advice and counsel to its clients. (Doc. 25, ¶¶ 72-73.) Indeed, Welk cannot even establish its allegations without invading the attorney-client privilege. And Welk's action places SGB in the untenable position of being unable to respond to these allegations without breaching its duty of confidentiality and the attorney-client privilege.[3]

SGB cannot present evidence of its communications with clients about the Welk contracts, its recommendations on negotiations with Welk, its advice regarding Welk's attempt to arbitrate certain matters, or its counsel about initiating legal action against Welk. SGB cannot respond to accusations leveled by Welk in any way that are adverse to SGB's own clients in the pending California litigation or their right to attorney-client privilege. These constraints seriously hinder SGB's ability to mount an effective defense on the merits. Further, there is simply no basis for accepting Welk's speculations or allowing further amendment where the evidence shows that Welk's own corporate counsel admitted SGB has its clients' best interests at heart. (Breen Decl., ¶ 16.) Allowing this matter to proceed against SGB would contradict California law and implicate troubling public policy concerns.

### 3. Welk's individual claims fail for additional reasons

#### a. The agent's immunity rule bars Welk's intentional interference with contract claim as a matter of law

In accordance with the Court's Standing Order in Civil Cases, SGB

---

[3]Welk's SAC alleges that SGB's representation harms its clients. In fact, it is Welk that acts to harm these timeshare owners daring to seek relief with SGB's help. In response to SGB's initial representation letter, Welk retaliates by trying to force owners into costly arbitration, and by cutting off owners' automated payment accounts without notice, creating "missed" payments that it reports to harm owners' credit. (Breen Decl., ¶ 28.) Welk also asserted this lawsuit as a basis for preventing SGB from taking discovery for owners in the separate arbitration proceeding, and as a basis for denying successful SGB clients their fees and costs. (*Id.* at ¶ 20; NOL, Exs. Y-Z.) There is no reason to believe Welk's pattern won't continue in SGB's state court actions.

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

incorporates by reference and joins in the arguments for application of the agent immunity rule included in the motion to dismiss filed by Defendant Reed Hein.

**b.**      Welk cannot state a claim for civil conspiracy

In accordance with the Court's Standing Order in Civil Cases, SGB incorporates by reference and joins the arguments favoring dismissal of Welk's conspiracy claim included in the motion to dismiss filed by Defendant Reed Hein.

**c.**      Welk cannot recover its alleged reputation and out-of-pocket damages under California's UCL

*i.*      *Welk cannot allege a violation of the UCL*

In accordance with the Court's Standing Order in Civil Cases, SGB incorporates by reference and joins the arguments favoring dismissal of Welk's UCL claim included in the motion to dismiss filed by Defendant Reed Hein.

*ii.*      *Welk cannot recover "damages" under the UCL*

In *Bank of the West v. Sup. Ct.,* 2 Cal.4th 1254, 1266 (1992), the California Supreme Court unequivocally pronounced that damages were not recoverable under a UCL claim. Similarly, federal courts applying California law have consistently disallowed damages under a UCL claim. See *e.g. Cacique, Inc. v. Robert Resier & Co.,* 169 F.3d 619, 624 (9th Cir. 1999). Attempts to disguise damage claims as claims seeking restitution have been soundly and rightly rejected by both state and federal courts. *Vikco Insurance Services, Inc. v. Ohio Indemnity Co.,* 70 Cal.App.4th 55, 67 (1999) (UCL provides no right to recover unrealized commissions and general compensatory damages); in accord, *Baugh v. CBS, Inc.,* 828 F.Supp. 745, 757-58 (N.D. CA 1993).

In *Mai Systems Corp. v. UIPS,* 856 F.Supp. 538 (N.D. CA 1994), the Northern District disallowed a UCL claim seeking "restitution" of lost business opportunities. There, the court specifically noted compensation for lost business opportunities is a measure of damages and not restitution to the alleged victims; it cannot support a UCL claim. (*Id.* at 542.)  Monetary recovery for harm or loss of reputation is

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA  92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

1  similarly unavailable in a claim under the UCL. *Kwikset Corp. v. Sup. Ct.,* 51

2  Cal.4th 317, 326-27 (2011).

3        Here, the only injuries alleged in Welk's UCL claim are "damage" caused by

4  owners who allegedly stopped paying fees to Welk, and Welk's payments to its own

5  staff hired to manage the volume of demand letters, which "damage" will allegedly

6  continue. (Doc. 25, ¶¶ 135-37.) Welk cannot ground its UCL claim on damages and

7  be allowed to proceed with a claim simply because it mischaracterizes damages as

8  restitution and injunctive relief. Indeed, the allegations are insufficient to establish

9  Welk's standing to sue under the UCL.  Cal. Bus. & Prof. Code § 17203.

10 **V.   CONCLUSION**

11        Welk will have its day in court to defend its timeshare business, to conduct

12 discovery and engage in motions practice, and to argue against the claims of SGB's

13 clients. The time and place for that, however, is in the three pending California

14 cases. This lawsuit is something else entirely. It is an attempt to *prevent* a public

15 airing of Welk's practices by suing the attorneys who dare to represent the

16 consumers who have and will sue Welk. California law does not permit a party to

17 use the courts to censor, silence and intimidate.  For these reasons, SGB respectfully

18 requests that the Court grant its two motions in their entirety, and that it do so with

19 prejudice, and without leave to amend. SGB further requests an order finding that

20 SGB is the prevailing party entitled to recover the fees and costs incurred in moving

21 to strike Welk's pleading under the anti-SLAPP law.

22                                            KLINEDINST PC

23

24 DATED: December 4, 2017          By:  /s/Robert M. Shaughnessy
                                         Heather L. Rosing
25                                       Gregor A. Hensrude
                                         Robert M. Shaughnessy
26                                       Attorneys for Defendant
                                         SCHROETER GOLDMARK &
27                                       BENDER. P.S.

    17136031v1
28