UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP INC., et al., | Case No.: 3:17-cv-01499-L-AGS |
| Plaintiffs, | **ORDER** |
| v. | **(1) GRANTING DEFENDANT SCHROETER GOLDMARK & BENDER'S SPECIAL MOTION TO STRIKE;** |
| REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT TEAM; et al., | **(2) DENYING AS MOOT DEFENDANT SCHROETER GOLDMARK & BENDER'S MOTION TO DISMISS;** |
| Defendants. | **(3) GRANTING IN PART DEFENDANT KEN B. PRIVETT PLC'S MOTION TO DISMISS; AND** |
| | **(4) GRANTING IN PART DEFENDANT REED HEIN & ASSOCIATES, LLC'S MOTION TO DISMISS** |

Pending before the Court in this action for interference with timeshare contracts is a special motion to strike (the "Anti-SLAPP Motion"), filed by Defendant Schroeter Goldmark & Bender, P.S. ("Schroeter") (doc. no. 64), and motions to dismiss the Second Amended Complaint (doc. no. 25 ("SAC")) filed by each of the Defendants (docs. no. 31, 65 and 66). The Court decides the motions on the briefs without oral argument. *See* Civ.

1

L. R. 7.1(d.1).  For the reasons stated below, Schroeter's Anti-SLAPP Motion is granted, and its motion to dismiss is denied as moot.  Motions to dismiss filed by Defendants Ken B. Privett, PLC ("Privett") and Reed Hein & Associates, LLC ("Reed Hein") are granted in part and denied in part.  Plaintiffs' request for leave to amend is granted in part.

## I.  BACKGROUND

According to the operative complaint, Plaintiffs Welk Resort Group, Inc. and Welk Resorts Platinum Owners Association (collectively "Welk" or "Plaintiffs") develop and operate multiple resorts.  Ownership interests in these resorts are available through Welk's timeshare program.  A person acquires a timeshare by signing a written purchase and sale agreement, becoming a member of the association, and agreeing to pay maintenance fees.

Reed Hein operates under the name of Timeshare Exit Team ("TET"), and advertises itself as a "Consumer Protection Firm" that is "ready to help [timeshare owners] dissolve [their] timeshare contracts."  (SAC Ex. A.)  TET representatives show potential clients a chart (*id.* Ex. F) of the cost of paying Welk's fees over 15 years (tens of thousands of dollars) compared to a much lower one-time fee for TET to end the timeshare contract.  TET allegedly falsely represents to its customers that it works with experienced attorneys who "guarantee" they will get people out of their contracts, that it "does business with Welk," and that discontinuing the contract payments to Welk "won't negatively affect" the customer's credit.  (*Id.* ¶25.)

According to the allegations, when a customer signs up with TET, he or she is instructed to stop making payments to Welk.  Reed Hein then contacts one of its regularly retained law firms, including Schroeter or Privett.  The attorneys receive a flat fee from Reed Hein, and send a boilerplate demand letter to Welk, stating, for example, that "we want to terminate the above referenced owners' obligations with your timeshare company."  (SAC ¶ 72 & Ex. B (Privett's letter).)  The letter also informs Welk that it may no longer contact its timeshare owners because they are now represented by counsel. (*Id.* ¶73 (discussing Schroeter's letter), Ex. B (Schroeter's letter).)

Welk alleges that many TET customers who are Welk timeshare owners are never contacted by their alleged counsel. The combination of TET's instruction to the timeshare owners to stop making payments, and the demand letters instructing Welk to communicate only through counsel prevents it from sending correspondence and collection/foreclosure notices to the timeshare owners directly. Therefore, while many TET customers terminate their timeshare agreements with Welk, Welk claims it happens through foreclosure, which negatively affects their credit. (SAC ¶ 19.)

Welk asserts claims for intentional interference with contractual relations, civil conspiracy and violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* against all Defendants. In addition, it alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.,* the Vacation Ownership and Time-Share Act, Cal. Bus. & Prof. Code §§ 11245, *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) against Reed Hein only. Welk alleges that Defendants caused it to lose $5.68 million worth of loan balances that it would have otherwise received through the timeshare contracts, $256,000.00 worth of maintenance fees, and $9.8 million in future lost maintenance fees. (SAC ¶ 79.) In addition, Welk incurred expenses for additional staffing to manage the increased volume of requests for timeshare termination and suffered reputational damage. (*Id.* ¶92.) Welk seeks damages, injunctive relief, restitution and disgorgement of profits, among other relief. (*Id.* at 41-43.)

The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

/ / / / /

## II.     SCHROETER'S ANTI-SLAPP MOTION AND MOTION TO DISMISS

California legislature enacted section 425.16 ("Anti-SLAPP Law")[1] to stem "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a). "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims." *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

Based on policy considerations, section 425.16 is construed broadly. *Id*. Under the statute,

> [a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). Accordingly, ruling on an anti-SLAPP motion entails a two-step process:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech . . .. If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

*Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (internal quotation marks, citations and brackets omitted).

---

[1]     SLAPP is an acronym for "strategic lawsuits against public participation." *Navellier v. Sletten*, 29 Cal.4th 82, 85 & n.1 (2002).

## A.    Threshold Showing

As to the threshold showing, the Anti-SLAPP Law protects specified acts in furtherance of a person's right of petition or free speech.  *See* Cal. Civ. Proc. Code § 425.16(e).  At this stage, "the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages," "the court decides only whether the claims arise from protected activity."  *Coretronic Corp. v. Cozen O'Connor,* 192 Cal. App. 4th 1381, 1390, 1389 (2011).  "[T]he court looks to the gravamen of the claims to determine if the case is a SLAPP."  *Id.* at 1388.  "Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action."  *Id.* at 1389; *see also City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002) (the court must "focus . . . on the substance of [the] lawsuit").  "The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable."  *Coretronic Corp.,* 192 Cal. App. 4th at 1389. [2]

Schroeter maintains that Welk's complaint is based on the demand letters Schroeter sent on behalf of Reed Hein customers who wanted to terminate their timeshare contracts with Welk.  It argues that its conduct falls under § 425.16(e)(2), which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," and § 425.16(e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

/////

---

[2]    The parties submitted evidence in support of their respective positions.  Welk objected to Schroeter's evidence.  (*See* docs. no. 69-4 through 69-6, 72.)  To the extent the Court relies on Schroeter's evidence in this Order, the objections are overruled.

Welk does not dispute that Schroeter's demand letters, to the extent they were sent on behalf of clients Schroeter actually represented, are protected for purposes of the Anti-SLAPP Law. (*See* Anti-SLAPP Opp'n (doc. no. 69) at 1-13.) Prelitigation demand letters may constitute protected activity under § 425.16(e)(2). *See, e.g., Malin v. Singer,* 217 Cal. App. 4th 1283, 1293 (2013). Alternatively, attorney correspondence regarding matters of public interest is protected under § 425.16(e)(4). *Ruiz v. Harbor View Cmty. Ass'n,* 134 Cal. App. 4th 1456, 1467-70 (2005). Schroeter represented individuals who wanted to terminate their timeshare contracts. Welk alleges that the timeshare industry has a large impact on the national and California economy and encompasses 100,000s of timeshare units nationally, of which Welk represents a substantial share. (SAC ¶¶ 3-8.) According to Schroeter, it represented individuals who wanted to terminate their timeshare contracts based on high-pressure or deceptive sales techniques. (Breen Decl. (doc. no. 64-3) ¶¶ 10, 12; Schroeter Exs. A-F (doc no. 64-5), Y (doc no. 64-8).) Protecting consumers from alleged deceptive business practices is considered a public issue or an issue of public interest for purposes of § 425.16(e)(4). *Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 262 (9th Cir. 2013).

Although Welk does not dispute that Schroeter's demand letters, to the extent they were sent on behalf of clients Schroeter actually represented, are protected under § 425.16(e)(2) or (4), it counters that Schroeter misconstrues the substance of Welk's claims. It maintains "the gravamen of [its] claims against SGB[3] do [*sic*] not arise from any protected activity that SGB may have been involved with, but rather SGB's false representations that they represented Welk timeshare owners, when they did not." (Anti-SLAPP Opp'n at 3 (footnote added); *see also id.* at 1 & n.1; 2 n.5.)

Welk points to a Master Fee Agreement with Reed Hein as prohibiting Schroeter from representing Reed Hein customers who wish to terminate their timeshare contracts.

---

[3]  Welk refers to Schroeter as SGB.

(SAC Ex. C (Master Fee Agreement ¶ 2).) The agreement was amended effective March 17, 2016, to expressly permit Reed Hein to retain counsel on behalf of its customers. (*Id.* Ex. C (Memorandum of Understanding and Amendment of Agreement ¶ 2).) According to Welk's in-house counsel Dominic Peterson, who had "personally reviewed each letter that ha[d] been sent by SGB claiming to represent a Welk Timeshare Owner," he began receiving Schroeter's demand letters on or about January 10, 2017 (Peterson Decl. (doc. no. 69-2) ¶ 2), after the Master Fee Agreement had been amended. The Master Fee Agreement therefore does not support Welk's contention that the Master Fee Agreement prohibited Schroeter from representing Reed Hein customers.

According to Schroeter's shareholder and litigation attorney Thomas Breen, Schroeter represented specific Welk timeshare owners against Welk in settlement negotiations, arbitrations and in court, all of whom were Reed Hein customers. (Breen Decl. ¶¶ 15-24, 34; Schroeter Exs. A-F, S (doc. no. 64-8), T (doc. no. 64-8), Y; *see also* Breen Decl. ¶¶ 6-8.) Consistently, Schroeter's demand letter, signed by Breen and attached to Welk's operative complaint, references specific clients and contracts, and states that Schroeter represents them. (SAC Ex. B; *see also* Breen Reply Decl. & Schroeter Ex. AA (doc. no. 70-1).) After sending the demand letter, Schroeter represented two of the clients referenced in the letter in arbitration, and two other clients in a state court action against Welk. (Breen Reply Decl. & Schroeter Exs. AA, C, D, Y; *cf.* SAC Ex. B.) In addition, Schroeter is representing three other clients in two other superior court lawsuits against Welk. (Schroeter Exs. A, B, E, F.)

Welk counters that even if the Court credits the above, Schroeter still "admittedly" sent demand letters on behalf of some Reed Hein customers who were not Schroeter's clients. It offers that it had received demand letters from Schroeter on behalf of 142 different Welk timeshare owners (*see* Peterson Decl. ¶ 5), points to Schroeter's evidence that it had successfully resolved 30 cases against Welk, had one in arbitration, as well as three lawsuits pending in state court (Anti-SLAPP Opp'n at 9 (citing Breen Decl. ¶ 29)), and tenders the following conclusion, "Even if this Court takes SGB's unsubstantiated

claims as fact, this still leave [*sic*] a group of approximately 108 individuals that SGB sent letters on behalf of that they admittedly do not represent." (Anti-SLAPP Opp'n at 9.) To accept Welk's conclusion, the Court would have to assume that as of the date of Breen's declaration, all of the disputes referenced in its demand letters had been concluded. Welk offers no evidence in support of such an assumption, and the assumption is negated by Schroeter's evidence, including correspondence exchanged with Peterson regarding pending disputes. (*See* Breen Decl. ¶¶ 16-26; Schroeter Exs. S, T, W (doc. no. 64-8).) Welk's contention that Schroeter is falsely stating it represents some 108 Welk timeshare owners is therefore rejected.

The declaration of Welk timeshare owner Cheyenne Wells also does not support Welk's position. Wells entered into a timeshare exit agreement with Reed Hein on May 20, 2017, but she stopped payment to Reed Hein the same day and cancelled the agreement. (Wells Decl. ¶¶ 7-10 & Exs. F, I (doc. no. 69-1).) Welk relies on Wells' statement that no one from Reed Hein put her in contact with an attorney, and no attorney reached out to her during her contractual relationship with Reed Hein. (*Id.* ¶11.) In light of Wells' immediate cancellation, this is not surprising.

Welk also cites the agreement and disclosure Wells signed with Reed Hein to suggest that the documents precluded direct attorney-client communication. (*See* Anti-SLAPP Opp'n at 5; Wells Decl. ¶11 & Exs. F, I.) The contract provides that "Reed Hein is authorized to hire an attorney on your behalf . . .. Reed Hein will facilitate communication and will interface between you and an attorney." (Wells Decl. Ex. F at 3.) The disclosure further states that an attorney will be hired on behalf of Wells, and that a Reed Hein account coordinator will be "the liaison between you and the attorney. If you have any questions or concerns that you would like addressed, please contact your Account Coordinator." (*Id.* Ex. I.) Although the documents show that Reed Hein clients were initially encouraged to contact their account coordinator, nothing suggests that counsel, once retained, was precluded from reaching out to Reed Hein customers directly, / / / / /

1    or that Reed Hein customers could not respond directly to their counsel. Accordingly, the

2    documents Wells signed with Reed Hein do not support Welk's position.

3         Finally, Welk contends that if its opposition to Schroeter's protected activity

4    showing is unsuccessful, it is entitled to discovery to be better able to oppose. (Anti-

5    SLAPP Opp'n at 2 & n.6.) Although Welk may be entitled to discovery under

6    appropriate circumstances, *see Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

7    *Progress,* 890 F.3d 828, 834 (9th Cir. 2018); *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d

8    832, 845-47 (9th Cir. 2001), such circumstances are not present here. The demand

9    letters, which form the basis of Welk's claims against Schroeter, were sent to Welk and

10   reviewed by Peterson. (SAC Ex. B; Peterson Decl. ¶ 2 ("I have personally reviewed each

11   letter that has been sent by SGB claiming to represent a Welk Timeshare Owner.").) The

12   arbitration documents and lawsuits Schroeter filed on behalf of timeshare owners against

13   Welk were served on Welk. To the extent formal proceedings were not filed, Schroeter

14   engaged in settlement negotiations with Peterson on behalf of timeshare owners

15   referenced in the demand letters. (Breen Decl. ¶¶ 16-20; Schroeter Ex. T (email from

16   Peterson to Schroeter regarding settlement negotiations of specific timeshare owners'

17   claims).) Because Welk is in possession of the documents and information on the issue

18   whether Schroeter represented Welk timeshare owners referenced in demand letters, its

19   request for discovery on this issue is denied.

20        Welk does not dispute that, generally, demand letters pertaining to a consumer

21   protection matter are protected activity under § 415.16(e)(2) or (4). Furthermore,

22   Schroeter has made a sufficient showing that Welk's claims arise from protected activity

23   to pass the threshold requirement of the Anti-SLAPP Law.

24        **B.    Probability of Welk Prevailing on Its Claims**

25        "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – *i.e.*,

26   that arises from protected speech or petitioning *and* lacks even the minimal merit – is a

27   SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal.4th 82,

28   89 (2002) (emphases in original).

Once it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a reasonable probability of prevailing in its claims for those claims to survive dismissal. To do this, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff. Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.

*Metabolife Int'l,* 264 F.3d at 840 (internal quotation marks and citations omitted); *see also Planned Parenthood,* 890 F.3d at 833 (quoting *Metabolife Int'l,* 264 F.3d at 840)). "The district court, in making its decision, considers the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Planned Parenthood,* 890 F.3d at 833 (citing Cal. Civ. Proc. Code § 425.16(b)(2)).

Schroeter argues that all of Welk's claims are barred by the litigation privilege under California Civil Code § 47(b), which creates

a *limitation on liability*, precluding use of the protected communications and statements as the basis for a tort action other than for malicious prosecution. Thus, section 47(b) creates what in many other contexts is termed an "immunity" from suit.

*Moore v. Conliffe,* 7 Cal.4th 634, 638 n.1 (1994) (internal citations omitted, emphasis in original); *see also Dickinson v. Cosby,* 17 Cal. App. 5th 655, 681 (2017) (affirmative defense). Under the litigation privilege,

a publication or broadcast made as part of a judicial proceeding is privileged. This privilege is absolute in nature, applying to *all* publications, irrespective of their maliciousness. The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.

*Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241 (2007)

(internal quotation marks, brackets and citations omitted, emphasis in original).

> In its application to communications made in a "judicial proceeding,"
> section 47(b) is not limited to statements made in a courtroom. Many cases
> have explained that section 47(b) encompasses not only testimony in court
> and statements made in pleadings, but also statements made prior to the
> filing of a lawsuit, whether in preparation for anticipated litigation or to
> investigate the feasibility of filing a lawsuit.

*Hagberg v. Cal. Fed. Bank,* 32 Cal.4th 350, 361 (2004) (citing *Rubin v. Green,* 4 Cal.4th
1187, 1194-95 (1993)).

In this regard, the applicability of the privilege and the scope of its reach are based
on the gravamen of the action. *See Action Apartment,* 41 Cal.4th at 1248; *Rubin,* 4
Cal.4th at 1196. For purposes of litigation privilege, Welk describes the nature of its
claims against Schroeter as follows:

> SGB conspired to wage a multi-front war, along with TET as the principal
> actor, to induce the breach of the Welk owners, through various, combined,
> bogus efforts to create a false impression that the conspirators could
> somehow get any Welk owner "out" of binding, legitimate timeshare
> agreements with Welk -- *i.e.,* the [demand] letters in question being only one
> portion of the offending conduct.

(Anti-SLAPP Opp'n at 17.) The Court agrees that the gravamen of this action reaches

beyond the demand letter attached to Welk's complaint, and encompasses Schroeter's role

in the alleged scheme to assist Welk timeshare owners to terminate their contracts. In

this regard, Schroeter received client referrals from Reed Hein, aka TET. Schroeter sent

demand letters to Welk, which informed Welk of the timeshare owners' intention to

terminate their contracts, and instructed Welk to communicate only with Schroeter

(except for routine billings). (SAC ¶¶ 2, 10-11, 17-22, 45-48, 64-65, 71, 73, 78, Ex. B;

Breen Decl. ¶¶ 12, 13, 16-24.) Schroeter then either negotiated settlements, arbitrated, or

litigated the claims against Welk, all of which is ongoing. (Schroeter Exs. A-F, S-Z (doc.

no. 64-8).)

Welk argues that the privilege does not apply because Schroeter's demand letter, attached to the complaint, does not expressly threaten a lawsuit. (*See* SAC Ex. B.) Although Welk's description of the letter is accurate, the Court disagrees with Welk's conclusion.

"[A] demand letter written by an attorney can fall within the litigation privilege," *Dickinson,* 17 Cal. App. 5th at 682, but "is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration," *Action Apartment,* 41 Cal.4th at 1251; *see also Dickinson,* 17 Cal. App. 5th at 682 ("The classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled." (quoting *Edwards v. Centex Real Estate Corp.,* 53 Cal. App. 4th 15, 35 n.10 (1997))).

When viewed not in isolation, but in the context of Reed Hein's scheme and the arbitrations and court actions which followed the demand letter, it is apparent that the letter was sent in contemplation of litigation. "While not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter." *Dickinson,* 17 Cal. App. 5th at 683 (citations omitted). Following the demand letter, Schroeter filed an arbitration and three lawsuits. (Schroeter Exs. A-F, Y.) The arbitration and one of the lawsuits were on behalf of three of the very clients referenced in the demand letter attached to Welk's complaint (*cf.* SAC Ex. B; Breen Reply Decl.; Schroeter Exs. AA, C, D & Y). Moreover, Welk commenced four arbitrations against Welk timeshare owners represented by Schroeter. (*See* Breen Decl. ¶ 17; Schroeter Ex. U.) It is therefore apparent that both sides understood the demand letter to be an overture to litigation.

Welk has not submitted any evidence to controvert Schroeter's evidence in support of the litigation privilege, but contends that "the underlying legitimacy of the intention to pursue actual litigation . . . is a question of fact that cannot simply be resolved on the pleadings alone." (Anti-SLAPP Opp'n at 16.) Welk's reliance for this proposition on *Bisno v. Douglas Emmett Realty Fund 1988,* 174 Cal. App. 4th 1534, 1551 (2009), is

unavailing. *Bisno* noted that although a prelitigation letter may raise an issue of fact whether it is sufficiently connected to a subsequent lawsuit, this is not necessarily the case. *Id.* at 1551. The record in *Bisno* showed that the prelitigation letter was "quickly followed" by a lawsuit and the party opposing litigation privilege did not contend that the letter was a "hollow threat." *Id.* at 1552. This was sufficient for the court to reject Bisno's argument that that the record left open "a factual question for the trier of fact." *Id.* The court found the record sufficient to conclude that "no reasonable jury could conclude" that the letter was "not sufficiently connected to" the subsequent lawsuit. *Id.* at 1552-53. The court found that the litigation privilege applied. "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law." *Kashian v. Harriman,* 98 Cal. App. 4th 892, 913 (2002).

The same is true here. Welk does not contend that the demand letter was a hollow threat. It would seem unlikely that it would, because the letter, dated March 1, 2017, was quickly followed by an avalanche of litigation. An arbitration was initiated by Schroeter on April 5, 2017, and Welk commenced four other arbitrations on April 17, 2017. (Schroeter Exs. Y, U.) Schroeter was able to terminate at least three of Welk's arbitrations, and on July 21, 2017, filed lawsuits instead. (*Id.* Exs. A-F; *cf.* Ex. U.) The record, which Welk does not dispute, is sufficient to find that the litigation privilege applies to the claims asserted against Schroeter.

Furthermore, Welk filed this action on July 25, 2017, four days after Schroeter filed three lawsuits against Welk. (Schroeter Exs. A, C, E.) Application of the litigation privilege is therefore also supported by the policies the privilege is intended to advance:

> It is not difficult to imagine the consequences likely to follow in the wake of a rule permitting the defendant in a civil action to institute parallel litigation seeking to impose liability on the attorney for the adverse party based on the circumstances surrounding the formation of the attorney-client relationship that led to the filing of the original suit. Apart from provoking yet another round of litigation, all of the evils identified in our prior cases as accompanying retaliatory suits based on litigation-related communications would be promoted by such a tactic. The impairment of colorable claims by

> disrupting access to counsel, the intimidating effect on attorneys of facing an almost certain retaliatory proceeding, the distractions inherent in requiring counsel to deal with defending a personal countersuit as well as the predicate action and, in general, the dampening effect on the unobstructed presentation of claims which we have identified as the central value supporting limitations on other derivative tort actions, apply with equal force to this suit.

*Rubin,* 4 Cal.4th at 1197-98 (citations omitted). Similar to the present case, *Rubin* presented the issue "whether a defendant in an impending civil action may sue the attorneys for the opposing party on the ground that they wrongfully 'solicited' the litigation against him." *Id.* at 1190. The court held that the derivative proceeding against the attorneys for interference with contract and unfair business practices "not only undermines the established policy of allowing access to the courts, but that, given the availability of other remedies for the redress of attorney solicitation, [a] retaliatory suit is not maintainable." *Id.* at 1190-91.

Finally, Welk argues that because Schroeter "fraudulently claim[ed] that it represented Welk owners, when in fact it appears to have been contractually prohibited by TET from doing so," "the privilege will not attach" because Schroeter's communications to Welk in this regard were "grounds for discipline." (Anti-SLAPP Opp'n at 17, 16 (emphasis omitted).) *Carney v. Rotkin, Schmerin & McIntyre,* 206 Cal. App. 3d 1513, 1522-23 (1988), on which Welk relies for this proposition, does not support the argument for several reasons.

First, Schroeter presented evidence contradicting Welk's allegation that Schroeter did not actually represent the timeshare owners referenced in the demand letter. Welk has not controverted this evidence. (*See* discussion *supra* in section II.A. (Threshold Showing).) Welk's contention that Schroeter falsely stated that it represented Welk timeshare owners is therefore unsupported.

Second, *Carney* is distinguishable on its facts. In *Carney,* the defendant law firm was hired to collect a money judgment against Carney. Carney failed to appear at a

court-ordered judgment-creditor examination. When she called the defendant law firm to explain, they falsely told her that a bench warrant had been issued for her arrest, and would not be recalled unless she paid $1,000 toward her debt. Since she was unable to pay, Carney stayed in her apartment for several days expecting to be arrested. 206 Cal. App. 3d at 1518-19. When she discovered there was no warrant, she filed a tort action against the law firm. *Id.* at 1519. The law firm sought dismissal based on the litigation privilege. *Id.* The appellate court found the privilege did not apply because the law firm's statements to Carney had not been made "to serve the purpose of litigation," which was to collect on a judgment. *Id.* at 1522-23. Unlike in *Carney,* Schroeter's demand letter was sent "to achieve the objects of the litigation." *Action Apartment*, 41 Cal.4th at 1241. The letter was an overture to the litigation which followed.

Third, the law on the issue raised by Welk has changed since *Carney.* In part, *Carney's* holding is based on the assertion that "the attorney's blatantly false statements were not only unethical, they also appear to be a criminal violation." 206 Cal. App. 3d at 1522 (citing Cal. Bus. & Prof. Code § 6128). More recent case law holds that the fact that the underlying attorney conduct is alleged to be unethical or unlawful does not stand in the way of the litigation privilege. *See Kashian,* 98 Cal. App. 4th at 918 ("[T]he Supreme Court's subsequent decision in *Silberg v. Anderson,* [50 Cal.3d 205 (1990),] has raised a question about the continuing validity of *Carney.*"); *see also id.* at 917-20; *see also Rubin,* 4 Cal.4th 1187 (all claims based on allegedly unlawful attorney solicitation dismissed based on litigation privilege); *GeneThera, Inc. v. Troy & Gould Prof. Corp.,* 171 Cal. App. 4th 901, 909 (2009) (litigation privilege applied when communications were claimed to be "at variance with the Rules of Professional Conduct"). Welk's argument that the litigation privilege does not apply because Schroeter's statement in the demand letter was false is therefore rejected.

For the foregoing reasons, Schroeter has shown that the litigation privilege applies. Because all claims alleged against Schroeter -- intentional interference with contractual

/ / / / /

relations, civil conspiracy and violation of the Unfair Competition Law -- arise from the same communications and conduct, the privilege applies to all of them.

"A plaintiff cannot establish a probability of prevailing, if the litigation privilege precludes the defendant's liability on the claim." *Bergstein v. Stroock & Stroock & Lavan LLP,* 236 Cal. App. 4th 793, 814 (2015) (internal quotation marks and citation omitted). Schroeter's Anti-SLAPP motion is therefore granted. All claims asserted against Schroeter are dismissed. Schroeter's related motion to dismiss is denied as moot.

The Court next considers Welk's request for leave to amend. An amended complaint is subject to anti-SLAPP remedies. *Gardner v. Martino,* 563 F.3d 981, 991 (9th Cir. 2009). Rule 15 advises leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks and citation omitted). Dismissal without leave to amend is not appropriate unless it is clear the complaint cannot be saved by amendment. *Id.*

Welk has already amended its complaint twice. (*See* docs. no. 1, 5, 25.) Welk's second amended complaint was filed after Schroeter had filed an anti-SLAPP motion.[4] (*See* docs. no 24, 25.) In filing its operative complaint Welk therefore had an opportunity to consider most of Schroeter's arguments presented in this motion. Moreover, the

---

[4]    In light of the amended complaint, Schroeter's initial anti-SLAPP motion was denied as moot. (*See* doc. no. 39.)

litigation privilege stems from the gravamen of Welk's operative complaint. Leave to amend would therefore be futile. Welk's request for leave to amend is denied.

## III.   REED HEIN'S AND PRIVETT'S MOTIONS TO DISMISS

Reed Hein and Privett, another law firm Reed Hein hired in furtherance of the alleged scheme, filed motions to dismiss Welk's complaint under Federal Rule of Civil Procedure 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998).

As with Schroeter, Welk alleges three state law claims against Privett and Reed Hein -- for intentional interference with contractual relations, civil conspiracy and violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"). In addition, Welk alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.*, the Vacation Ownership and Time-Share Act, Cal. Bus. & Prof. Code §§ 11245, *et seq.* ("Timeshare Act"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125 against Reed Hein only. Both Defendants argue that

/ / / / /

Welk failed to sufficiently allege each of these claims.  Privett also maintains that it is protected by the litigation privilege.

### A.    Litigation Privilege

Privett contends it is immune from liability under the litigation privilege because Welk's "allegations . . . are premised on alleged communication by Privett in its capacity as counsel."  (Privett Mot. (doc. no. 31-1) at 6.)  The applicability of the privilege and its scope are determined from the gravamen of the action.  *See Action Apartment,* 41 Cal.4th at 1248; *Rubin,* 4 Cal.4th at 1196.

Although Welk's allegations against Privett are similar as against Schroeter, the applicability of the litigation privilege is not a foregone conclusion.  Privett raises the issue in the context of a Rule 12(b)(6) motion rather than an anti-SLAPP motion.  As a general rule, the Court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting it to a motion for summary judgment.  *United States v. Corinthian Colleges,* 655 F.3d 984, 998 (9th Cir. 2011); *see also* Fed. R. Civ. Proc. 12(d).  However, the Court may consider materials that are attached to, or referenced in, the complaint and matters of public record, to the extent the Court can take judicial notice under Federal Rule of Evidence 201.  *Corinthian Colleges,* 655 F.3d at 999.  As Privett has not submitted any judicially noticeable evidence, the Court considers the allegations in the operative complaint with exhibits.

Furthermore, litigation privilege is an affirmative defense.  A complaint may be dismissed under Rule 12(b)(6) based on an affirmative defense "only if the defense is clearly indicated and appears on the face of the pleading."  *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2014), *rev'd on other grounds in Amgen, Inc. v. Harris*, 136 S. Ct. 758 (2016) (internal quotation marks, brackets and citations omitted); *see also Jones v. Bock*, 549 U.S. 199, 211-12 & 215 (2007); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (dismissal appropriate "[w]hen an affirmative defense is obvious on the face of a complaint").

/ / / / /

As alleged, the gravamen of the claims against Privett encompasses its role in the alleged fraudulent scheme to assist Welk timeshare owners to terminate their contracts. Privett received client referrals from Reed Hein to negotiate terminations, and sent demand letters to Welk to inform it of the timeshare owners' intention to terminate. (SAC ¶¶ 2, 10-11, 17, 18, 20-22, 41-44, 64-65, 71-72, 78, Ex. B.) Privett's demand letter reads in its entirety:

> Please be advised that we want to terminate the above referenced owners' obligation with your timeshare company, including the mortgage and promissory note, if applicable. We would entertain a small transfer fee.
>
> Please grant us this request.

(*Id.* Ex. B.) Considered in the context of the gravamen of Welk's complaint, this is insufficient to trigger the litigation privilege. "[T]he privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed in good faith for the purpose of resolving the dispute . . .." *Dickinson,* 17 Cal. App. 5th at 682 (quoting *Edwards,* 53 Cal. App. 4th at 35 n.10).

> The reason for the rule is that a successful invocation of the privilege results in the bar of a potentially meritorious claim. "No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation."

*Dickinson,* 17 Cal. App. 5th at 682 (quoting *Action Apartment,* 41 Cal.4th at 1251).

Privett points to Schroeter's request for judicial notice of the lawsuits Schroeter had filed against Welk (Schroeter Exs. A-F) to argue that Schroeter's lawsuits "underscore[] the likelihood that unresolved disputes over Welk timeshare agreements would proceed to litigation." (Privett Reply (doc. no. 48) at 2 n.1.) For two reasons the Court declines Privett's invitation to consider Schroeter's lawsuits to bootstrap Privett's motion. First, the request was made for the first time in the reply. It is inappropriate to raise new issues in the reply, because it deprives the opposing party of an opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not

consider arguments raised for the first time in a reply brief.")  Second, Schroeter's lawsuits, filed in the wake of its demand letters, are no indication whether *Privett* would do the same on behalf of a different timeshare owner.

For the foregoing reasons, Privett's litigation privilege argument is rejected.

**B.    Intentional Interference with Contractual Relations**

Defendants argue that the claim for intentional interference with contractual relations should be dismissed for failure to sufficiently allege all of its elements and, alternatively, because they are immune from liability.

### 1.    Elements of the Claim

To state a claim for intentional interference with contract, a plaintiff must allege

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990) (internal citations omitted).  Reed Hein argues that Welk did not allege an intentional act, the requisite knowledge, or causation.

The required specificity of factual allegations is defined by the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2).   It "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks, ellipsis and citation omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* (internal quotation marks, ellipsis and citation omitted). Therefore, the court generally does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Welk's operative complaint alleges that in exchange for a fee, Reed Hein assists timeshare owners in terminating their contracts with Welk. It solicits business by promising that it can effectuate contract termination without adverse consequences. According to Welk, when customers sign up for Reed Hein's services, Reed Hein advises them to stop making payments to Welk. Reed Hein also refers the customers' files to attorneys, like Privett, who send allegedly boilerplate demand letters to Welk. Welk alleges that it suffers damages because its timeshare owners stop making payments, it has to hire additional staff to deal with the increased level of termination letters, and because its reputation has been tarnished. (SAC ¶¶ 81-93.)

Reed Hein argues that its Timeshare Owner Exit Agreement, attached to the operative complaint, contradicts Welk's allegation that Reed Hein instructs timeshare owners to stop making payments (SAC ¶ 86) because it informs the owners that they remain obligated to make payments to Welk until their timeshare contract is terminated. (*Id.* Ex. F ("you remain responsible for all financial obligations associated with your Timeshare until the exit is completed").) The Court need not accept as true allegations that are contradicted by an exhibit attached to the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended at* 275 F.3d 1187 (9th Cir.

2001).  However, the provision in Reed Hein's Timeshare Owner Exit Agreement with its customers does not necessarily contradict the allegations on the complaint.  Welk alleged that "TET representatives instruct Welk owners to stop making their required payments." (SAC ¶ 16.)  More specifically, Welk alleged that a Reed Hein representative at the San Diego County Fair instructed a Welk employee, posing as a potential customer, that he or she "could stop paying on the timeshare in order to afford TET's services" and that "TET instructs owners to stop paying on their ownerships."  (*Id.* ¶ 25 (internal quotation marks omitted).)  Construing the complaint as a whole, including attached exhibits, and drawing all reasonable inferences most favorably to the nonmoving party, *see Huynh,* 465 F.3d at 997, 999 n.3, Reed Hein's agreement does not necessarily contradict Welk's allegations.  It is plausible to infer that notwithstanding the language in the agreement, Reed Hein's representatives tell their customers that they can stop making payments to Welk.  Reed Hein's contention that the complaint should be construed solely in light of the provision in the agreement is rejected.

Welk alleged sufficient intentional acts designed to induce interference with Welk timeshare contracts.  It alleged that Reed Hein solicited timeshare owners for the sole purpose to assist them in terminating their contracts, it instructed them, even if only orally, to stop making payments to Welk, and it instructed attorneys to send letters to inform Welk of the intended contract terminations.  (SAC ¶¶83-86.)

Next, Reed Hein argues that Welk has not alleged that Reed Hein knew of the timeshare contracts between Welk and the customers it solicited.  This argument is based in part on the contention that the complaint does not reference any specific contracts which were terminated.  This argument is rejected for several reasons.  First, under Rule 8 notice pleading, Welk is not required to list the contracts.  Second, specific contracts are listed in the attorney demand letters attached to the complaint, albeit the particulars are redacted.  (*See* SAC Ex. B.)  Last, Welk expressly alleged knowledge.  (*Id.* ¶82.) Federal pleading rules do not require more.  *See* Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")  The sole

purpose of Reed Hein's business was to attract individuals who had timeshare contracts. (*See, e.g., id.* Ex. A (Reed Hein's website, timeshareexitteam.com, stating "Our Consumer Protection Firm is ready to help you dissolve your timeshare contract.").) Even if knowledge were not expressly alleged, it could be inferred from the nature of Reed Hein's business.

Finally, Reed Hein maintains that Welk failed to allege causation, *i.e.,* that its contracts were breached or disrupted. This argument is unsupported, as Welk alleged that timeshare owners have terminated their contracts. (SAC ¶ 89.) The Court rejects Reed Hein's contention that Welk's allegations are insufficient.

## 2. Defenses

First, relying on *Schick v. Lerner,* 193 Cal. App. 3d 1321 (1987), Privett claims it is shielded from liability for interference with contract by its role as attorney for the Welk timeshare owners. *Schick* is unavailing.

In *Schick,* a therapist consulted an attorney to determine whether he could sign a declaration to be filed in a divorce proceeding between two of his clients despite a confidentiality agreement. On advice of counsel, he signed the declaration, which was subsequently filed in court. The client sued the therapist's counsel for, among other things, intentional interference with the confidentiality agreement. Dismissal of the claim was affirmed based on the public policy

> that attorneys must remain free to counsel their clients without fear of subjecting themselves to liability as a result of the proper discharge of their professional obligations[, and that c]lients as well must feel free to seek out an attorney's advice on *any* issue at *any* time.

*Id.* at 1329 (emphases in original). Under *Schick,* the attorney's immunity is premised on responding to a client's request for legal advice.

Welk argues that Privett did not in fact represent any owners, because this was prohibited by Privett's agreement with Reed Hein. (SAC ¶¶ 17, 65, 71, 72, citing Ex. C.) As with Schroeter, the agreement attached to the complaint contradicts Welk's

contention. The agreement was amended on March 17, 2016, to provide that "KBP[5] will serve as the attorney for the timeshare owner (timeshare owner is KPB's client) . . .." (*Id.* Ex. C (Memorandum of Understanding & Amendment of Agreement ¶ 2) (footnote added).) Privett's demand letter attached to the complaint is dated January 12, 2017, after the agreement with Reed Hein was amended to provide for client representation. (*Id.* Ex. B.)

Nevertheless, neither the letter on its own nor in the context of the alleged scheme, evinces any client contact, much less the seeking or giving of legal advice. It merely states that the timeshare owner wants to terminate its contract. Unlike Schroeter's letter, Privett's letter does not state that Privett represents the referenced timeshare owner. According to the allegations, rather than timeshare owners seeking legal advice, they respond to Reed Hein's advertising that they can safely terminate Welk's timeshare contracts. Reed Hein then forwards its client information to Privett to send a generic letter to Welk stating that a specific client wants to terminate his or her timeshare contract. (SAC ¶¶ 16-18.)

Because advice of counsel is a defense, it must be apparent on the face of the complaint to succeed on a Rule 12(b)(6) motion to dismiss. *Harris.*, 788 F.3d at 943; *Jones*, 549 U.S. at 215. The defense is not apparent on the face of Welk's complaint, including exhibits. Accordingly, at this stage of the case, *Schick* does not help Privett.

Second, both Defendants rely on the agent immunity defense, which is based on the principle that "there can be no action for inducement of breach of contract against the other party to the contract." *Shoemaker v. Myers,* 52 Cal.3d 1, 24 (1990). "[C]orporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract" because they "stand in the place of the employer." *Id.* Accordingly, "[t]he tort duty not to interfere with the contract falls only

---

[5] The agreement refers to Privett as KBP.

on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 514 (1994). However, agent immunity does not apply when the agent acts for his "individual advantage." *Id.* at 512 n.4 (internal quotation marks and citation omitted).

The complaint is premised on the contention that Defendants acted to further their own interests. Reed Hein collects a hefty fee from timeshare owners in exchange for its services, which fee must be refunded if Reed Hein is not successful in securing contract termination. (SAC Ex. F (Timeshare Owner Exit Agreement) at 1 (Fee Amount), 3 (Guarantee).) Privett receives a $1,200 fee from Reed Hein with every referral. (*Id.* Ex. C at 2.) Non-contracting parties with an economic interest in the contract may be held liable for interfering with it. *See United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.,* 766 F.3d 1002, 1007-08 (9th Cir. 2014); *Popescu v. Apple Inc.,* 1 Cal. App. 5th 39, 52-56 (2016); *Asahi Kasei Pharma Corp. v. Actelion Ltd.,* 222 Cal. App. 4th 945, 958-65 (2013).

*Mintz v. Blue Cross of California,* 172 Cal. App. 4th 1594 (2009), on which both Defendants rely, is distinguishable. The contract alleged to be interfered with in *Mintz* expressly stated that the defendant would act on behalf of one the contracting parties as its agent to administer the contract. *Id.* at 1603-04. This is not so in the instant case. Defendants only became involved after they had solicited timeshare owners for the sole purpose of interfering with the timeshare contracts. Unlike in the instant case, the complaint in *Mintz* did not allege that the defendant had a scheme of its own to induce its employer to breach the contract.

Based on the foregoing, it is not apparent from the face of the complaint that the agent immunity defense applies to Privett or Reed Hein. Their respective motions to dismiss the claim for intentional interference with contractual relations are therefore denied.

/ / / / /

## C.    Conspiracy to Interfere with Contractual Relations

Defendants contend that Welk cannot state a claim for conspiracy to interfere with Welk's timeshare contracts because it cannot state the underlying claim for interference with contractual relations.  "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort . . .."  *Applied Equip.,* 7 Cal.4th at 511.  "It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law."  *Id.* at 514.  Because Defendants were not successful in dismissing the claim for interference with contract, their argument is rejected.

Alternatively, Reed Hein argues that the claim should be dismissed because Welk does not allege all of its elements.  To state a claim for civil conspiracy, a plaintiff must allege "(1) the formation and operation of the conspiracy; (2) the wrongful acts or acts done pursuant thereto; and (3) the damage resulting."  *Mosier v. S. Cal. Physicians Ins. Exchange,* 63 Cal. App. 4th 1022, 1048 (1998) (internal quotation marks and citations omitted); *see also* Judicial Council of California Civil Jury Instructions ("CACI") 3600, Conspiracy – Essential Factual Elements.  Reed Hein contends Welk has not sufficiently alleged the formation and operation element.  The Court disagrees.  Welk alleged that Reed Hein entered into a contract with Privett to represent Reed Hein customers for the purpose of terminating their timeshare contracts with Welk.  Welk elaborates on how the alleged scheme operated from the beginning, *i.e.,* Reed Hein's solicitation of timeshare owners, to the end, *i.e.,* retention of counsel and demand letters to Welk to terminate contracts.  (SAC ¶¶ 56-79, 81-92, 111-16.)

Defendants' motions to dismiss the claim for civil conspiracy are denied insofar as the claim is based on interference with contractual relations.

## D.    California False Advertising Law

Welk alleges that Reed Hein's advertising of timeshare exit services contained false and misleading statements in violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*  Welk's theory of liability is that Reed Hein's advertising misled

consumers into using its services against Welk, which caused Welk to lose money. (SAC ¶¶ 154-60.) Reed Hein challenges Welk's statutory standing to allege this claim.

A private action alleging false advertising under California law may be brought "by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter." Cal. Bus. & Prof. Code § 17535. The relevant portion of the statute is the requirement that money and property be lost *as a result of* false advertising. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp. v. Super. Ct. (Benson),* 51 Cal.4th 310, 326 (2011) (internal quotation marks and citation omitted). The plaintiff must therefore "demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Id.* at 326-27 (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 306 (2009)) (footnote omitted). "'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth and accuracy." *Kwikset,* 51 Cal.4th at 327 n.10. Accordingly, the plaintiff must be "motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely the fact it was made." *Id.*

Welk's claim is not premised on its reliance on the truthfulness of Reed Hein's representations, but on the fact that the customers, who were allegedly defrauded by Reed Hein, caused Welk to lose money when they terminated their timeshare contracts. Welk lacks standing to allege a false advertising claim under California law. Reed Hein's motion to dismiss this claim is granted. Because there appears to be no set of facts which Welk could allege to render the claim actionable, its request for leave to amend is denied. *See Foman*, 371 U.S. at 182.

### E.    False Advertising in Violation of the Lanham Act

Reed Hein also moves to dismiss Welk's claim for false advertising in violation of 15 U.S.C. § 1125(a)(1), which provides in pertinent part:

Any person who, . . . in connection with any . . . services . . . , uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—

[¶]

(B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities . . . of his or her or another person's . . . services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

As with its false advertising claim under California law, Welk alleges that Reed Hein's false advertising to consumers caused Welk to suffer damages.  (SAC ¶¶ 163-71.)  In addition, Welk alleges that Reed Hein is its competitor because it competes for timeshare owners' resources – timeshare owners will either pay Welk under their timeshare contracts, or Reed Hein's fee to extricate them from the timeshare contacts.  (*Id.* ¶ 165.) Reed Hein challenges Welk's statutory standing.

Reed Hein's motion is premised on the assumption that Welk asserted a false advertising claim, as expressly stated in the operative complaint (*id.* at 39 (heading)), under 15 U.S.C. § 1125(a)(1)(B).  To allege standing for this claim, a plaintiff must allege it is a competitor.  *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005).

Although Welk alleges that it "competes" with Reed Hein for timeshare owners' resources, this is not the kind of competition necessary to establish standing.  The intent of the Lanham Act, as relevant here, is "to protect persons engaged in . . . commerce against unfair competition."  15 U.S.C. § 1127; *see also Halicki v. United Artists Commc'ns, Inc.,* 812 F.2d 1213, 1214 (9th Cir. 1987) (statutory intent expressed in § 1127 "extraordinarily helpful" in interpreting standing requirements); *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir. 1992), *cert. den.,* 506 U.S. 1080 (1993).  For a false advertising claim, therefore, a plaintiff must allege a "discernibly competitive injury,"

Waits, 978 F.2d at 1110, *i.e.,* that "the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant," *Jack Russell,* 407 F.3d at 1037. This requires that the competitors provide the same product or service. *See Brosnan v. Tradeline Sols., Inc.,* 681 F. Supp. 2d 1094, 1101 (N.D. Cal. 2010); *see also Black's Law Dictionary* (10th ed. 2014) ("competition"). Welk does not dispute that this is the applicable definition of competition for purposes of false advertising under the Lanham Act. (*See* 12(b)(6) Opp'n (doc. no. 68) at 22-23.) Because Welk and Reed Hein do not offer the same products or services, they are not in competition. Welk lacks standing to assert a false advertising claim under the Lanham Act.

Instead, Welk opposes Reed Hein's motion by changing tack. It points to the allegation in the California false advertising claim that Reed Hein falsely represented that it "does business with Welk." (SAC ¶ 154.) For the first time in its opposition brief Welk reveals that what it termed in the complaint as "False Advertising in Violation of the Lanham Act" (*id.* at 39) is really a false association claim under the Lanham Act (12(b)(6) Opp'n at 23). Although the Lanham Act claim incorporates by reference all prior allegations (*id.* ¶161), as alleged, it does not provide fair notice to Reed Hein that the claim is for false association and not false advertising. Accordingly, the Court declines to construe it as such for purposes of Reed Hein's motion.

Reed Hein's motion is granted insofar as it moves to dismiss the Lanham Act claim for false advertising. Because it does not appear that Welk could allege any additional facts to state a claim for false advertising under the Lanham Act, leave to amend on that theory is denied as futile. *See Foman*, 371 U.S. at 182.

The Court next considers whether Welk should be granted leave to amend to state a false association claim. In this regard, the Lanham Act provides:

> Any person who, . . . in connection with any . . . services . . . , uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to
the affiliation, connection, or association of such person with another person
. . .

[¶]

shall be liable in a civil action by any person who believes that he or she is
or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  Standing for the false association prong of the Lanham Act does not require a showing of competitive injury.  *Jack Russell,* 407 F.3d at 1037.  It requires allegation of "commercial injury based upon the deceptive use of a trademark or its equivalent." *Id.*  Because it may be possible for Welk to allege standing for false association, leave to amend the Lanham Act claim is granted.

## F.     Vacation Ownership and Time-Share Act

Welk claims that Reed Hein's allegedly false representations to timeshare owners violate the Vacation Ownership and Time-Share Act, Cal. Bus. & Prof. Code §§ 11210, *et seq.* ("Timeshare Act").  Reed Hein moves to dismiss the claim.

Initially, Reed Hein points out that only Welk Resorts Platinum Owners Association ("Welk Association") is a proper plaintiff, and that no claim under the Timeshare Act can be asserted by Welk Resort Group, Inc. ("Welk Resort").  A private right of action for violation of the Timeshare Act can only be brought by a "time-share interest owner or association."  Cal. Bus. & Prof. Code § 11285.  Welk does not oppose this argument.  (*See* 12(b)(6) Opp'n at 21-22.)  Accordingly, to the extent the claim is asserted by Welk Resort, it is dismissed without leave to amend.

To the extent the claim is asserted by Welk Association, Reed Hein argues, among other things, that it is exempt from liability by statute, which provides in pertinent part:

Any communication regarding a time-share interest that is addressed to any
person who has previously executed a contract for the sale or purchase of
that time-share interest and that does not constitute a solicitation of a time-
share interest, shall be exempt from this chapter.

Cal. Bus. & Prof. Code § 11217(b). Accordingly, representations made to individuals who already own a timeshare are exempt, if they concern the same timeshare and do not constitute "a solicitation of a time-share interest." *Id.*

Reed Hein claims that the gravamen of Welk's complaint is that Reed Hein, operating as TET, solicits Welk timeshare owners to terminate their contracts with Welk. It argues it is exempt because its advertising is directed at persons who already own timeshares. Welk counters by pointing to the allegation that "TET . . . attempts to either void Welk owners' contracts and/or transfer the ownership to a third party, all in exchange for Welk owners' money." (SAC ¶ 141.) Nowhere in the complaint, including the introduction and detailed background sections (*see id.* ¶¶ 1-79), does Welk elaborate on this theory of Reed Hein's operations. As alleged, the complaint does not provide fair notice of Welk's claim that Reed Hein's operations included transfers of timeshare contracts to a third party or possibly constituted a timeshare exchange program. (*See* 12(b)(6) Opp'n at 21-22.)

Accordingly, Reed Hein's motion to dismiss the Timeshare Act claim is granted. Welk is granted leave to amend to allege a sufficient factual basis.

### G. Racketeer Influenced and Corrupt Organizations Act

Welk also asserts a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Reed Hein under 18 U.S.C. § 1962(c). Welk alleges that Reed Hein repeatedly engages in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 to disseminate allegedly misleading representations to timeshare owners. Reed Hein moves to dismiss this claim because, among other things, Welk has not adequately alleged causation.

To state a claim for violation of 18 U.S.C. § 1962(c), the plaintiff must show that "the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 457 (2006) (internal quotation marks and citations omitted). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation

led *directly* to the plaintiff's injuries." *Id.* at 461 (emphasis added). Consistent with *Anza*, the Ninth Circuit applies a three-factor test to determine whether a plaintiff has shown proximate cause:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1055 (9th Cir. 2008) (citation omitted); *cf. Anza,* 547 U.S. at 458-60 (analyzing the same factors). Not all of the factors must be present for a court to conclude lack of proximate causation. *See Newcal*, 513 F.3d at 1055 (listing factors in the disjunctive); *Anza,* 547 U.S. at 459-61 (finding lack of proximate cause in the absence of risk of duplicative recoveries).

It is apparent from the allegations that Defendants' victims are the timeshare owners who are allegedly misled into contracting for Reed Hein's services. Welk is indirectly damaged by losing contract payments when the timeshare owners stop making payments and terminate their contracts. (SAC ¶¶ 97-110.) "The requirement of a direct causal connection is especially warranted where the immediate victims of the alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza,* 547 U.S. at 460 (citation omitted).

In addition, determining the amount of Welk's damages caused by Reed Hein's advertising activity, as opposed to timeshare terminations resulting from other causes, for example, from timeshare owners terminating on their own or terminating through the services of other timeshare exit companies,[6] would not be as straightforward as Welk would have one believe. Further, because Welk forecloses on defaulted timeshares (*see,*

---

[6] Welk alleges that timeshare exit companies are a "cottage industry." (SAC ¶ 1.)

*e.g.,* SAC ¶ 19), the Court would have to take this into account for each timeshare when calculating Welk's damages. Accordingly, Welk's damages would entail a difficult and complicated inquiry. *See Anza,* 547 U.S. at 458-60 (discussing difficulties entailed in determining damages in cases of indirect injury.) Welk therefore has not alleged the requisite proximate cause. *See also Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1147-49 (9th Cir. 2008).

Welk counters that the proximate cause element is an issue of fact and therefore should not be decided at the pleading stage. Its reliance on *Newcal* for this proposition is unwarranted, as its ruling in this regard was based on the circumstances specific to that case. 513 F.3d at 1055 ("Those questions are all factual questions, which we cannot resolve on Rule 12(b)(6) motion *in this case.*" (emphasis added)). Where the relevant allegations do not present factual issues, the proximate cause can be decided at the pleading stage. *See Anza,* 547 U.S. at 453 ("this case arises from a motion to dismiss"), 461 (holding that the claim "does not satisfy the requirement of proximate causation"). The facts necessary for the proximate cause inquiry are apparent on the face of Welk's complaint. The proximate cause issue therefore need not wait.

Finally, Welk requests leave to amend. The causation issue was raised in Reed Hein's initial motion to dismiss (doc. no. 18-1 at 6-7.) Subsequently, Welk filed the operative amended complaint (doc. no. 25). Based on this procedural history and the nature of Welk's claim, it appears that granting leave to amend would be futile. *See Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013). The RICO claim is therefore dismissed without leave to amend.

### H.    RICO Conspiracy

As a part of its civil conspiracy claim, Welk alleges conspiracy in violation of 18 U.S.C. § 1962(d). (SAC ¶¶ 116-22.) This theory of conspiracy is based entirely on Welk's RICO claim. Because Welk cannot state a claim for a RICO violation, its conspiracy claim is dismissed to the extent it is based thereon. Leave to amend is denied for the same reasons it was denied to amend the RICO claim.

## I.     California Unfair Competition Law

Finally, Welk alleges that Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") under each of its three prongs -- unlawful, unfair, and fraudulent business practice.  *See Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999).  Reed Hein and Privett move to dismiss this claim arguing that Welk lacks standing and cannot show that the alleged practices were unlawful, unfair or fraudulent.

The UCL does not proscribe specific business practices, but its "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns,* 20 Cal.4th at 180 (internal quotation marks and citations omitted).  Accordingly, to the extent Welk's other claims have been dismissed, they cannot form a basis for a UCL violation under the unlawful prong.

Welk's claim for interference with contractual relations and the related civil conspiracy claim survive Defendants' motions to dismiss.  Contrary to Reed Hein's contention, a common law tort, such as intentional interference with contract, is a sufficient basis for the unlawful prong of the UCL.  *See Angelica Textile Servs., Inc. v. Park,* 220 Cal. App. 4th  495, 510 (2013) (citing *CRST Van Expedited, Inc. v. Werner Enters., Inc.,* 479 F.3d 1099, 1107 (9th Cir. 2007)).  Because some of Welk's claims remain in the case, Welk can state a claim for a UCL violation against Privett and Reed Hein under the unlawful prong.[7]

Next, Reed Hein argues that Welk lacks statutory standing to assert a UCL claim based on the allegations that Defendants violated the Runners and Cappers Act, Cal. Bus.

---

[7]     Welk was granted leave to amend the Timeshare Act and Lanham Act claims.  If the amendments are successful, these claims may provide additional bases to allege unlawful business practices under the UCL.  However, such claims can be asserted only against Reed Hein.  (*See* SAC at 35, 39 (alleged only against Reed Hein).)

& Prof. Code §§ 6150 *et seq.*, and the Lawyer Referral Law, *id.* § 6155.[8]  This claim is based on Reed Hein's contracts retaining Privett and Schroeter to represent Reed Hein's customers against Welk.  (*See* SAC ¶¶ 128-31; *see also, e.g., id.* ¶¶ 70-73.)  Welk alleges it was damaged because timeshare owners ceased making contract payments, and because it had to increase staffing in response to an increase in requests to terminate contracts.  (*Id.* ¶ 136.)  To satisfy the standing requirement under the UCL, a plaintiff must show, among other things, that its "economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim." *Kwikset Corp.,* 51 Cal.4th at 322 (emphasis in original).  In this regard, a plaintiff must show that the unlawful practice was "an immediate cause" of the economic injury. *Id.* at 327 (internal quotation marks and citation omitted).  The immediate cause of Welk's injury are the timeshare owners who terminate their contracts, not the alleged violations of the Runners and Cappers Act and the Lawyer Referral Law.  Welk therefore does not have standing to allege a UCL claim based on violations of the Runners and Cappers Act or the Lawyer Referral Law.

Furthermore, the unfair and fraudulent business practices portion of Welk's UCL claim are based on the premise that Defendants misled consumers.  (SAC ¶¶ 132, 134.)  As discussed in the context of the false advertising claim, Welk lacks statutory standing because its injury did not result from reliance on the alleged misrepresentations.  *See Kwikset Corp.,* 51 Cal.4th at 326-27.

For the foregoing reasons, Reed Hein and Privett's motions to dismiss the UCL claim are granted in part.  They are denied insofar as Welk alleges unlawful business practices based on interference with contract and the related conspiracy, and to the extent it can sufficiently amend its Timeshare Act and Lanham Act claims against Reed Hein. In all other respects, the UCL claim is dismissed.

/ / / / /

---

[8]    (Reed Hein Mot. (doc. no. 66-1) at 14-15.)  Welk does not respond to this argument.  (*See* 12(b)(6) Opp'n at 19-20.)

Welk's request for leave to amend is denied. Reed Hein asserted the same standing arguments in its initial motion to dismiss (doc. no.18-1 at 15). Welk had an opportunity to consider them before filing its operative amended complaint (doc. no. 25). Leave to amend is therefore denied as futile. *See Salameh,* 726 F.3d at 1133.

## IV. CONCLUSION

For the reasons stated above, it is ordered as follows:

1.      The special motion to strike filed by Defendant Schroeter Goldmark & Bender is granted. All claims alleged against this Defendant are dismissed without leave to amend. Schroeter Goldmark & Bender's motion to dismiss is denied as moot.

2.      The motion to dismiss filed by Defendant Ken B. Privett, PLC is granted in part and denied in part. The motion is granted insofar as the Third Claim for Relief alleging Civil Conspiracy and the Fourth Claim for Relief alleging Violation of the California Unfair Competition Law are dismissed in part as stated herein. In all other respects, the motion is denied.

3.      The motion to dismiss filed by Defendant Reed Hein & Associates, LLC is granted in part and denied in part. The motion is granted insofar as Plaintiffs' Second Claim for Relief alleging Violations of the Racketeer Influenced and Corrupt Organizations Act, Fifth Claim for Relief alleging Violation of the California Vacation Ownership and Time-Share Act, Sixth Claim for Relief alleging Violation of the California False Advertising Law, and Seventh Claim for Relief alleging False Advertising in Violation of the Lanham Act are dismissed. Plaintiffs' Third Claim for Relief alleging Civil Conspiracy and Fourth Claim for Relief alleging Violation of the California Unfair Competition Law are dismissed in part as stated herein. In all other respects, the motion is denied.

4.      Plaintiffs' request for leave to amend is granted in part as stated herein.

5.      If Plaintiffs choose to file a third amended complaint, they must do so no later than 21 calendar days after this Order is filed. Defendants shall file their responses, if any, no later than 14 calendar days after the service of Plaintiffs' third amended

complaint.  If Plaintiffs choose to forego amendment, Defendants' responses, if any, shall be filed no later than 35 calendar days after this Order is filed.

     **IT IS SO ORDERED.**

Dated:  March 18, 2019

                                       Hon. M. James Lorenz
                                       United States District Judge