Heather L. Rosing, Bar No. 183986
Gregor A. Hensrude, Bar No. 226660
Robert M. Shaughnessy, Bar No. 174312
KLINEDINST PC
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/FAX (619) 238-8707
hrosing@klinedinstlaw.com
ghensrude@klinedinstlaw.com
RShaughnessy@klinedinstlaw.com

Attorneys for Defendant
SCHROETER GOLDMARK &
BENDER, P.S.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP, INC., a California corporation; and WELK RESORTS PLATINUM OWNERS ASSOCIATION, a California non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT TEAM, a Washington limited liability company; SCHROETER GOLDMARK & BENDER, P.S., a Washington professional corporation; and KEN B. PRIVETT, PLC, an Oklahoma limited liability company, <br><br> Defendants. | Case No. 3:17-cv-01499-L-AGS <br><br> **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANT SCHROETER GOLDMARK AND BENDER'S MOTION FOR ATTORNEYS' FEES AND COSTS AS PREVAILING PARTY (CAL. CODE CIV. PROC. SEC. 425.16(C)(1)** <br><br> Date: May 6, 2019 <br> Time: 10:30 a.m. <br> Courtroom: 5B <br> Judge: Hon. M. James Lorenz <br> Magistrate Judge: Hon. Andrew G. Schopler <br> Complaint Filed: July 25, 2017 <br> Trial Date: None set <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

Defendant SCHROETER GOLDMARK & BENDER, P.S. hereby lodges the following documents in support of its Motion for Attorneys' Fees and Costs as Prevailing Party (Cal. Code Civ. Proc. Sec. 425.16(C)(1).)

1.     Attached hereto as **Exhibit "A"** is a true and correct copy of the Court's Order (1) Granting Defendant Schroeder Goldmark & Bender's Special

- 1 -

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

Motion to Strike; (2) Denying as Moot Defendant Schroeter Goldmark & Bender's Motion to Dismiss; (3) Granting in Part Defendant Ken B. Privett PLC's Motion to Dismiss; and (4) Granting in Part Defendant Reed Hein & Associates, LLC's Motion to Dismiss;

2. Attached hereto as **Exhibit "B"** is a true and correct copy of a spreadsheet entitled "Klinedinst PC: Billed Fees Related to anti-SLAPP Motion," prepared from data maintained by Klinedinst, PC's billing software program, Juris, and redacted as necessary to maintain attorney-client confidentiality;

3. Attached hereto as **Exhibit "C"** is a true and correct copy of a spreadsheet entitled "Klinedinst PC: Incurred-unbilled fees for anti-SLAPP motion," prepared from data maintained by Klinedinst, PC's billing software program, Juris, redacted as necessary to maintain attorney-client confidentiality;

4. Attached hereto as **Exhibit "D"** is a true and correct copy of a spreadsheet entitled "Klinedinst PC: Costs incurred for anti-SLAPP motion," ," prepared from data maintained by Klinedinst, PC's billing software program, Juris, and redacted as necessary to maintain attorney-client confidentiality;

5. Attached hereto as **Exhibit "E"** is a true and correct copy of the personal profile page for attorney Robert M. Shaughnessy, downloaded from the Klinedinst, PC web page;

6. Attached hereto as **Exhibit "F"** is a true and correct copy of the personal profile page for attorney Heather L. Rosing, downloaded from the Klinedinst, PC web page; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

7. Attached hereto as **Exhibit "G"** is a true and correct copy of the personal profile page for attorney Gregor A. Hensrude, downloaded from the Klinedinst, PC web page.

KLINEDINST PC


DATED: April 1, 2019          By: /s/Robert M. Shaughnessy
                                  Heather L. Rosing
                                  Gregor A. Hensrude
                                  Robert M. Shaughnessy
                                  Attorneys for Defendant
                                  SCHROETER GOLDMARK &
                                  BENDER, P.S.

17568995v1

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

# TABLE OF CONTENTS TO EXHIBITS

| Exhibit No. | Description | Page Range |
|:---:|:---|:---:|
| A | Court Order filed 3/18/19 (Doc. 80) | 5 – 42 |
| B | Klinedinst Billed Fees | 43 – 72 |
| C | Klinedinst UnBilled Fees | 73 – 74 |
| D | Klinedinst Billed Costs | 75 – 76 |
| E | Klinedinst website profile for Robert M. Shaughnessy | 77 – 79 |
| F | Klinedinst website profile for Heather L. Rosing | 80 – 83 |
| G | Klinedinst website profile for Gregor A. Hensrude | 84 - 86 |

KLINEDINST PC
501 WEST BROADWAY, SUITE 600
SAN DIEGO, CALIFORNIA 92101

NOL ISO DEFENDANT SCHROETER GOLDMARK AND BENDER'S MOTION FOR ATTORNEYS' FEES
AND COSTS AS PREVAILING PARTY (CAL. CODE CIV. PROC. 425.16(C)(1)
3:17-cv-01499-L-AGS

# EXHIBIT A

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP INC., et al., | Case No.:  3:17-cv-01499-L-AGS |
| Plaintiffs, | **ORDER**<br>**(1) GRANTING DEFENDANT SCHROETER GOLDMARK & BENDER'S SPECIAL MOTION TO STRIKE;**<br>**(2) DENYING AS MOOT DEFENDANT SCHROETER GOLDMARK & BENDER'S MOTION TO DISMISS;**<br>**(3) GRANTING IN PART DEFENDANT KEN B. PRIVETT PLC'S MOTION TO DISMISS; AND**<br>**(4) GRANTING IN PART DEFENDANT REED HEIN & ASSOCIATES, LLC'S MOTION TO DISMISS** |
| v. | |
| REED HEIN & ASSOCIATES, LLC, dba TIMESHARE EXIT TEAM; et al., | |
| Defendants. | |

Pending before the Court in this action for interference with timeshare contracts is a special motion to strike (the "Anti-SLAPP Motion"), filed by Defendant Schroeter Goldmark & Bender, P.S. ("Schroeter") (doc. no. 64), and motions to dismiss the Second Amended Complaint (doc. no. 25 ("SAC")) filed by each of the Defendants (docs. no. 31, 65 and 66).  The Court decides the motions on the briefs without oral argument.  *See* Civ.

L. R. 7.1(d.1).  For the reasons stated below, Schroeter's Anti-SLAPP Motion is granted, and its motion to dismiss is denied as moot.  Motions to dismiss filed by Defendants Ken B. Privett, PLC ("Privett") and Reed Hein & Associates, LLC ("Reed Hein") are granted in part and denied in part.  Plaintiffs' request for leave to amend is granted in part.

## I.   BACKGROUND

According to the operative complaint, Plaintiffs Welk Resort Group, Inc. and Welk Resorts Platinum Owners Association (collectively "Welk" or "Plaintiffs") develop and operate multiple resorts.  Ownership interests in these resorts are available through Welk's timeshare program.  A person acquires a timeshare by signing a written purchase and sale agreement, becoming a member of the association, and agreeing to pay maintenance fees.

Reed Hein operates under the name of Timeshare Exit Team ("TET"), and advertises itself as a "Consumer Protection Firm" that is "ready to help [timeshare owners] dissolve [their] timeshare contracts."  (SAC Ex. A.)  TET representatives show potential clients a chart (*id.* Ex. F) of the cost of paying Welk's fees over 15 years (tens of thousands of dollars) compared to a much lower one-time fee for TET to end the timeshare contract.  TET allegedly falsely represents to its customers that it works with experienced attorneys who "guarantee" they will get people out of their contracts, that it "does business with Welk," and that discontinuing the contract payments to Welk "won't negatively affect" the customer's credit.  (*Id.* ¶25.)

According to the allegations, when a customer signs up with TET, he or she is instructed to stop making payments to Welk.  Reed Hein then contacts one of its regularly retained law firms, including Schroeter or Privett.  The attorneys receive a flat fee from Reed Hein, and send a boilerplate demand letter to Welk, stating, for example, that "we want to terminate the above referenced owners' obligations with your timeshare company."  (SAC ¶ 72 & Ex. B (Privett's letter).)  The letter also informs Welk that it may no longer contact its timeshare owners because they are now represented by counsel. (*Id.* ¶73 (discussing Schroeter's letter), Ex. B (Schroeter's letter).)

Welk alleges that many TET customers who are Welk timeshare owners are never contacted by their alleged counsel.  The combination of TET's instruction to the timeshare owners to stop making payments, and the demand letters instructing Welk to communicate only through counsel prevents it from sending correspondence and collection/foreclosure notices to the timeshare owners directly.  Therefore, while many TET customers terminate their timeshare agreements with Welk, Welk claims it happens through foreclosure, which negatively affects their credit.  (SAC ¶ 19.)

Welk asserts claims for intentional interference with contractual relations, civil conspiracy and violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* against all Defendants.  In addition, it alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.,* the Vacation Ownership and Time-Share Act, Cal. Bus. & Prof. Code §§ 11245, *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) against Reed Hein only.  Welk alleges that Defendants caused it to lose $5.68 million worth of loan balances that it would have otherwise received through the timeshare contracts, $256,000.00 worth of maintenance fees, and $9.8 million in future lost maintenance fees.  (SAC ¶ 79.)   In addition, Welk incurred expenses for additional staffing to manage the increased volume of requests for timeshare termination and suffered reputational damage.  (*Id.* ¶92.)  Welk seeks damages, injunctive relief, restitution and disgorgement of profits, among other relief.  (*Id.* at 41-43.)

The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

/ / / / /

**Exhibit A**
**Page 8**

3:17-cv-01499-L-AGS

1  **II.    SCHROETER'S ANTI-SLAPP MOTION AND MOTION TO DISMISS**

2          California legislature enacted section 425.16 ("Anti-SLAPP Law")[1] to stem "a

3  disturbing increase in lawsuits brought primarily to chill the valid exercise of the

4  constitutional rights of freedom of speech and petition for the redress of grievances."

5  Cal. Civ. Proc. Code § 425.16(a).   "[D]efendants sued in federal courts can bring anti-

6  SLAPP motions to strike state law claims."   *Verizon Del., Inc. v. Covad Commc'ns Co.*,

7  377 F.3d 1081, 1091 (9th Cir. 2004).

8          Based on policy considerations, section 425.16 is construed broadly.   *Id*.   Under

9  the statute,

10         [a] cause of action against a person arising from any act of that person in
11         furtherance of the person's right of petition or free speech under the United
           States Constitution or the California Constitution in connection with a public
12         issue shall be subject to a special motion to strike, unless the court
13         determines that the plaintiff has established that there is a probability that the
           plaintiff will prevail on the claim.
14

15  Cal. Civ. Proc. Code § 425.16(b)(1).   Accordingly, ruling on an anti-SLAPP motion

16  entails a two-step process:

17         First, the court decides whether the defendant has made a threshold showing
18         that the challenged cause of action is one arising from protected activity.
           The moving defendant's burden is to demonstrate that the act or acts of
19         which the plaintiff complains were taken in furtherance of the defendant's
           right of petition or free speech . . ..   If the court finds such a showing has
20         been made, it then determines whether the plaintiff has demonstrated a
21         probability of prevailing on the claim.

22

23  *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002) (internal quotation

24  marks, citations and brackets omitted).

25  _____

26

27  [1]      SLAPP is an acronym for "strategic lawsuits against public participation."
    *Navellier v. Sletten*, 29 Cal.4th 82, 85 & n.1 (2002).
28

4

### A.    Threshold Showing

As to the threshold showing, the Anti-SLAPP Law protects specified acts in furtherance of a person's right of petition or free speech. *See* Cal. Civ. Proc. Code § 425.16(e). At this stage, "the court does not consider whether the complaint alleges a cognizable wrong or whether the plaintiff can prove damages," "the court decides only whether the claims arise from protected activity." *Coretronic Corp. v. Cozen O'Connor,* 192 Cal. App. 4th 1381, 1390, 1389 (2011). "[T]he court looks to the gravamen of the claims to determine if the case is a SLAPP." *Id.* at 1388. "Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action." *Id.* at 1389; *see also City of Cotati v. Cashman,* 29 Cal.4th 69, 78 (2002) (the court must "focus . . . on the substance of [the] lawsuit"). "The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable." *Coretronic Corp.,* 192 Cal. App. 4th at 1389. [2]

Schroeter maintains that Welk's complaint is based on the demand letters Schroeter sent on behalf of Reed Hein customers who wanted to terminate their timeshare contracts with Welk. It argues that its conduct falls under § 425.16(e)(2), which protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," and § 425.16(e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

/ / / / /

---

[2]    The parties submitted evidence in support of their respective positions. Welk objected to Schroeter's evidence. (*See* docs. no. 69-4 through 69-6, 72.) To the extent the Court relies on Schroeter's evidence in this Order, the objections are overruled.

**Exhibit A**
**Page 10**

3:17-cv-01499-L-AGS

1    Welk does not dispute that Schroeter's demand letters, to the extent they were sent

2    on behalf of clients Schroeter actually represented, are protected for purposes of the Anti-

3    SLAPP Law.  (*See* Anti-SLAPP Opp'n (doc. no. 69) at 1-13.)  Prelitigation demand

4    letters may constitute protected activity under § 425.16(e)(2). *See, e.g., Malin v. Singer,*

5    217 Cal. App. 4th 1283, 1293 (2013).  Alternatively, attorney correspondence regarding

6    matters of public interest is protected under § 425.16(e)(4).  *Ruiz v. Harbor View Cmty.*

7    *Ass'n,* 134 Cal. App. 4th 1456, 1467-70 (2005).  Schroeter represented individuals who

8    wanted to terminate their timeshare contracts.  Welk alleges that the timeshare industry

9    has a large impact on the national and California economy and encompasses 100,000s of

10   timeshare units nationally, of which Welk represents a substantial share.  (SAC ¶¶ 3-8.)

11   According to Schroeter, it represented individuals who wanted to terminate their

12   timeshare contracts based on high-pressure or deceptive sales techniques.  (Breen Decl.

13   (doc. no. 64-3) ¶¶ 10, 12; Schroeter Exs. A-F (doc no. 64-5), Y (doc no. 64-8).)

14   Protecting consumers from alleged deceptive business practices is considered a public

15   issue or an issue of public interest for purposes of § 425.16(e)(4).  *Makaeff v. Trump*

16   *Univ., LLC,* 715 F.3d 254, 262 (9th Cir. 2013).

17      Although Welk does not dispute that Schroeter's demand letters, to the extent they

18   were sent on behalf of clients Schroeter actually represented, are protected under §

19   425.16(e)(2) or (4), it counters that Schroeter misconstrues the substance of Welk's

20   claims.  It maintains "the gravamen of [its] claims against SGB[3] do [*sic*] not arise from

21   any protected activity that SGB may have been involved with, but rather SGB's false

22   representations that they represented Welk timeshare owners, when they did not."  (Anti-

23   SLAPP Opp'n at 3 (footnote added); *see also id.* at 1 & n.1; 2 n.5.)

24      Welk points to a Master Fee Agreement with Reed Hein as prohibiting Schroeter

25   from representing Reed Hein customers who wish to terminate their timeshare contracts.

26

27   ───────────────

28   [3]    Welk refers to Schroeter as SGB.

**Exhibit A**
**Page 11**

3:17-cv-01499-L-AGS

(SAC Ex. C (Master Fee Agreement ¶ 2).)  The agreement was amended effective March 17, 2016, to expressly permit Reed Hein to retain counsel on behalf of its customers.  (*Id.* Ex. C (Memorandum of Understanding and Amendment of Agreement ¶ 2).)  According to Welk's in-house counsel Dominic Peterson, who had "personally reviewed each letter that ha[d] been sent by SGB claiming to represent a Welk Timeshare Owner," he began receiving Schroeter's demand letters on or about January 10, 2017 (Peterson Decl. (doc. no. 69-2) ¶ 2), after the Master Fee Agreement had been amended.  The Master Fee Agreement therefore does not support Welk's contention that the Master Fee Agreement prohibited Schroeter from representing Reed Hein customers.

According to Schroeter's shareholder and litigation attorney Thomas Breen, Schroeter represented specific Welk timeshare owners against Welk in settlement negotiations, arbitrations and in court, all of whom were Reed Hein customers.  (Breen Decl. ¶¶ 15-24, 34; Schroeter Exs. A-F, S (doc. no. 64-8), T (doc. no. 64-8), Y; *see also* Breen Decl. ¶¶ 6-8.)  Consistently, Schroeter's demand letter, signed by Breen and attached to Welk's operative complaint, references specific clients and contracts, and states that Schroeter represents them.  (SAC Ex. B; *see also* Breen Reply Decl. & Schroeter Ex. AA (doc. no. 70-1).)  After sending the demand letter, Schroeter represented two of the clients referenced in the letter in arbitration, and two other clients in a state court action against Welk.  (Breen Reply Decl. & Schroeter Exs. AA, C, D, Y; *cf.* SAC Ex. B.)  In addition, Schroeter is representing three other clients in two other superior court lawsuits against Welk.  (Schroeter Exs. A, B, E, F.)

Welk counters that even if the Court credits the above, Schroeter still "admittedly" sent demand letters on behalf of some Reed Hein customers who were not Schroeter's clients.  It offers that it had received demand letters from Schroeter on behalf of 142 different Welk timeshare owners (*see* Peterson Decl. ¶ 5), points to Schroeter's evidence that it had successfully resolved 30 cases against Welk, had one in arbitration, as well as three lawsuits pending in state court (Anti-SLAPP Opp'n at 9 (citing Breen Decl. ¶ 29)), and tenders the following conclusion, "Even if this Court takes SGB's unsubstantiated

claims as fact, this still leave [*sic*] a group of approximately 108 individuals that SGB sent letters on behalf of that they admittedly do not represent."  (Anti-SLAPP Opp'n at 9.)  To accept Welk's conclusion, the Court would have to assume that as of the date of Breen's declaration, all of the disputes referenced in its demand letters had been concluded.  Welk offers no evidence in support of such an assumption, and the assumption is negated by Schroeter's evidence, including correspondence exchanged with Peterson regarding pending disputes.  (*See* Breen Decl. ¶¶ 16-26; Schroeter Exs. S, T, W (doc. no. 64-8).)  Welk's contention that Schroeter is falsely stating it represents some 108 Welk timeshare owners is therefore rejected.

The declaration of Welk timeshare owner Cheyenne Wells also does not support Welk's position.  Wells entered into a timeshare exit agreement with Reed Hein on May 20, 2017, but she stopped payment to Reed Hein the same day and cancelled the agreement.  (Wells Decl. ¶¶ 7-10 & Exs. F, I (doc. no. 69-1).)  Welk relies on Wells' statement that no one from Reed Hein put her in contact with an attorney, and no attorney reached out to her during her contractual relationship with Reed Hein.  (*Id.* ¶11.)  In light of Wells' immediate cancellation, this is not surprising.

Welk also cites the agreement and disclosure Wells signed with Reed Hein to suggest that the documents precluded direct attorney-client communication.  (*See* Anti-SLAPP Opp'n at 5; Wells Decl. ¶11 & Exs. F, I.)  The contract provides that "Reed Hein is authorized to hire an attorney on your behalf . . ..  Reed Hein will facilitate communication and will interface between you and an attorney."  (Wells Decl. Ex. F at 3.)  The disclosure further states that an attorney will be hired on behalf of Wells, and that a Reed Hein account coordinator will be "the liaison between you and the attorney. If you have any questions or concerns that you would like addressed, please contact your Account Coordinator."  (*Id.* Ex. I.)  Although the documents show that Reed Hein clients were initially encouraged to contact their account coordinator, nothing suggests that counsel, once retained, was precluded from reaching out to Reed Hein customers directly, / / / / /

or that Reed Hein customers could not respond directly to their counsel.  Accordingly, the documents Wells signed with Reed Hein do not support Welk's position.

Finally, Welk contends that if its opposition to Schroeter's protected activity showing is unsuccessful, it is entitled to discovery to be better able to oppose.  (Anti-SLAPP Opp'n at 2 & n.6.)  Although Welk may be entitled to discovery under appropriate circumstances, *see Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828, 834 (9th Cir. 2018); *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 845-47 (9th Cir. 2001), such circumstances are not present here.  The demand letters, which form the basis of Welk's claims against Schroeter, were sent to Welk and reviewed by Peterson.  (SAC Ex. B; Peterson Decl. ¶ 2 ("I have personally reviewed each letter that has been sent by SGB claiming to represent a Welk Timeshare Owner.").)  The arbitration documents and lawsuits Schroeter filed on behalf of timeshare owners against Welk were served on Welk.  To the extent formal proceedings were not filed, Schroeter engaged in settlement negotiations with Peterson on behalf of timeshare owners referenced in the demand letters.  (Breen Decl. ¶¶ 16-20; Schroeter Ex. T (email from Peterson to Schroeter regarding settlement negotiations of specific timeshare owners' claims).)  Because Welk is in possession of the documents and information on the issue whether Schroeter represented Welk timeshare owners referenced in demand letters, its request for discovery on this issue is denied.

Welk does not dispute that, generally, demand letters pertaining to a consumer protection matter are protected activity under § 415.16(e)(2) or (4).  Furthermore, Schroeter has made a sufficient showing that Welk's claims arise from protected activity to pass the threshold requirement of the Anti-SLAPP Law.

### B.   Probability of Welk Prevailing on Its Claims

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – *i.e.*, that arises from protected speech or petitioning *and* lacks even the minimal merit – is a SLAPP, subject to being stricken under the statute."  *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002) (emphases in original).

> Once it is determined that an act in furtherance of protected expression is being challenged, the plaintiff must show a reasonable probability of prevailing in its claims for those claims to survive dismissal.  To do this, the plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.  This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff.  Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.

*Metabolife Int'l,* 264 F.3d at 840 (internal quotation marks and citations omitted); *see also Planned Parenthood,* 890 F.3d at 833 (quoting *Metabolife Int'l,* 264 F.3d at 840)). "The district court, in making its decision, considers the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Planned Parenthood,* 890 F.3d at 833 (citing Cal. Civ. Proc. Code § 425.16(b)(2)).

Schroeter argues that all of Welk's claims are barred by the litigation privilege under California Civil Code § 47(b), which creates

> a *limitation on liability*, precluding use of the protected communications and statements as the basis for a tort action other than for malicious prosecution.  Thus, section 47(b) creates what in many other contexts is termed an "immunity" from suit.

*Moore v. Conliffe,* 7 Cal.4th 634, 638 n.1 (1994) (internal citations omitted, emphasis in original); *see also Dickinson v. Cosby,* 17 Cal. App. 5th 655, 681 (2017) (affirmative defense).  Under the litigation privilege,

> a publication or broadcast made as part of a judicial proceeding is privileged. This privilege is absolute in nature, applying to *all* publications, irrespective of their maliciousness.  The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.

**Exhibit A**
**Page 15**

3:17-cv-01499-L-AGS

*Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241 (2007) (internal quotation marks, brackets and citations omitted, emphasis in original).

> In its application to communications made in a "judicial proceeding," section 47(b) is not limited to statements made in a courtroom. Many cases have explained that section 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit.

*Hagberg v. Cal. Fed. Bank,* 32 Cal.4th 350, 361 (2004) (citing *Rubin v. Green,* 4 Cal.4th 1187, 1194-95 (1993)).

In this regard, the applicability of the privilege and the scope of its reach are based on the gravamen of the action. *See Action Apartment,* 41 Cal.4th at 1248; *Rubin,* 4 Cal.4th at 1196. For purposes of litigation privilege, Welk describes the nature of its claims against Schroeter as follows:

> SGB conspired to wage a multi-front war, along with TET as the principal actor, to induce the breach of the Welk owners, through various, combined, bogus efforts to create a false impression that the conspirators could somehow get any Welk owner "out" of binding, legitimate timeshare agreements with Welk -- *i.e.,* the [demand] letters in question being only one portion of the offending conduct.

(Anti-SLAPP Opp'n at 17.) The Court agrees that the gravamen of this action reaches beyond the demand letter attached to Welk's complaint, and encompasses Schroeter's role in the alleged scheme to assist Welk timeshare owners to terminate their contracts. In this regard, Schroeter received client referrals from Reed Hein, aka TET. Schroeter sent demand letters to Welk, which informed Welk of the timeshare owners' intention to terminate their contracts, and instructed Welk to communicate only with Schroeter (except for routine billings). (SAC ¶¶ 2, 10-11, 17-22, 45-48, 64-65, 71, 73, 78, Ex. B; Breen Decl. ¶¶ 12, 13, 16-24.) Schroeter then either negotiated settlements, arbitrated, or litigated the claims against Welk, all of which is ongoing. (Schroeter Exs. A-F, S-Z (doc. no. 64-8).)

**Exhibit A**
**Page 16**

3:17-cv-01499-L-AGS

1    Welk argues that the privilege does not apply because Schroeter's demand letter,

2    attached to the complaint, does not expressly threaten a lawsuit.  (*See* SAC Ex. B.)

3    Although Welk's description of the letter is accurate, the Court disagrees with Welk's

4    conclusion.

5    "[A] demand letter written by an attorney can fall within the litigation privilege,"

6    *Dickinson,* 17 Cal. App. 5th at 682, but "is privileged only when it relates to litigation

7    that is contemplated in good faith and under serious consideration," *Action Apartment,* 41

8    Cal.4th at 1251; *see also Dickinson,* 17 Cal. App. 5th at 682 ("The classic example of an

9    instance in which the privilege would attach to prelitigation communications is the

10   attorney demand letter threatening to file a lawsuit if a claim is not settled." (quoting

11   *Edwards v. Centex Real Estate Corp.,* 53 Cal. App. 4th 15, 35 n.10 (1997))).

12   When viewed not in isolation, but in the context of Reed Hein's scheme and the

13   arbitrations and court actions which followed the demand letter, it is apparent that the

14   letter was sent in contemplation of litigation.  "While not dispositive, whether a lawsuit

15   was ultimately brought is relevant to the determination of whether one was contemplated

16   in good faith at the time of the demand letter."  *Dickinson,* 17 Cal. App. 5th at 683

17   (citations omitted).  Following the demand letter, Schroeter filed an arbitration and three

18   lawsuits.  (Schroeter Exs. A-F, Y.)  The arbitration and one of the lawsuits were on behalf

19   of three of the very clients referenced in the demand letter attached to Welk's complaint

20   (*cf.* SAC Ex. B; Breen Reply Decl.; Schroeter Exs. AA, C, D & Y).  Moreover, Welk

21   commenced four arbitrations against Welk timeshare owners represented by Schroeter.

22   (*See* Breen Decl. ¶ 17; Schroeter Ex. U.)  It is therefore apparent that both sides

23   understood the demand letter to be an overture to litigation.

24   Welk has not submitted any evidence to controvert Schroeter's evidence in support

25   of the litigation privilege, but contends that "the underlying legitimacy of the intention to

26   pursue actual litigation . . . is a question of fact that cannot simply be resolved on the

27   pleadings alone."  (Anti-SLAPP Opp'n at 16.)  Welk's reliance for this proposition on

28   *Bisno v. Douglas Emmett Realty Fund 1988,* 174 Cal. App. 4th 1534, 1551 (2009), is

**Exhibit A**
**Page 17**

3:17-cv-01499-L-AGS

1  unavailing. *Bisno* noted that although a prelitigation letter may raise an issue of fact

2  whether it is sufficiently connected to a subsequent lawsuit, this is not necessarily the

3  case. *Id.* at 1551. The record in *Bisno* showed that the prelitigation letter was "quickly

4  followed" by a lawsuit and the party opposing litigation privilege did not contend that the

5  letter was a "hollow threat." *Id.* at 1552. This was sufficient for the court to reject

6  Bisno's argument that that the record left open "a factual question for the trier of fact."

7  *Id.* The court found the record sufficient to conclude that "no reasonable jury could

8  conclude" that the letter was "not sufficiently connected to" the subsequent lawsuit. *Id.* at

9  1552-53. The court found that the litigation privilege applied. "If there is no dispute as

10 to the operative facts, the applicability of the litigation privilege is a question of law."

11 *Kashian v. Harriman,* 98 Cal. App. 4th 892, 913 (2002).

12     The same is true here. Welk does not contend that the demand letter was a hollow

13 threat. It would seem unlikely that it would, because the letter, dated March 1, 2017, was

14 quickly followed by an avalanche of litigation. An arbitration was initiated by Schroeter

15 on April 5, 2017, and Welk commenced four other arbitrations on April 17, 2017.

16 (Schroeter Exs. Y, U.) Schroeter was able to terminate at least three of Welk's

17 arbitrations, and on July 21, 2017, filed lawsuits instead. (*Id.* Exs. A-F; *cf.* Ex. U.) The

18 record, which Welk does not dispute, is sufficient to find that the litigation privilege

19 applies to the claims asserted against Schroeter.

20     Furthermore, Welk filed this action on July 25, 2017, four days after Schroeter

21 filed three lawsuits against Welk. (Schroeter Exs. A, C, E.) Application of the litigation

22 privilege is therefore also supported by the policies the privilege is intended to advance:

23       It is not difficult to imagine the consequences likely to follow in the wake of
        a rule permitting the defendant in a civil action to institute parallel litigation
24      seeking to impose liability on the attorney for the adverse party based on the
        circumstances surrounding the formation of the attorney-client relationship
25      that led to the filing of the original suit. Apart from provoking yet another
        round of litigation, all of the evils identified in our prior cases as
26      accompanying retaliatory suits based on litigation-related communications
        would be promoted by such a tactic. The impairment of colorable claims by
27

28

disrupting access to counsel, the intimidating effect on attorneys of facing an almost certain retaliatory proceeding, the distractions inherent in requiring counsel to deal with defending a personal countersuit as well as the predicate action and, in general, the dampening effect on the unobstructed presentation of claims which we have identified as the central value supporting limitations on other derivative tort actions, apply with equal force to this suit.

*Rubin,* 4 Cal.4th at 1197-98 (citations omitted).  Similar to the present case, *Rubin* presented the issue "whether a defendant in an impending civil action may sue the attorneys for the opposing party on the ground that they wrongfully 'solicited' the litigation against him."  *Id.* at 1190.  The court held that the derivative proceeding against the attorneys for interference with contract and unfair business practices "not only undermines the established policy of allowing access to the courts, but that, given the availability of other remedies for the redress of attorney solicitation, [a] retaliatory suit is not maintainable."  *Id.* at 1190-91.

Finally, Welk argues that because Schroeter "fraudulently claim[ed] that it represented Welk owners, when in fact it appears to have been contractually prohibited by TET from doing so," "the privilege will not attach" because Schroeter's communications to Welk in this regard were "grounds for discipline."  (Anti-SLAPP Opp'n at 17, 16 (emphasis omitted).)  *Carney v. Rotkin, Schmerin & McIntyre,* 206 Cal. App. 3d 1513, 1522-23 (1988), on which Welk relies for this proposition, does not support the argument for several reasons.

First, Schroeter presented evidence contradicting Welk's allegation that Schroeter did not actually represent the timeshare owners referenced in the demand letter.  Welk has not controverted this evidence.  (*See* discussion *supra* in section II.A. (Threshold Showing).)  Welk's contention that Schroeter falsely stated that it represented Welk timeshare owners is therefore unsupported.

Second, *Carney* is distinguishable on its facts.  In *Carney,* the defendant law firm was hired to collect a money judgment against Carney.  Carney failed to appear at a

14

court-ordered judgment-creditor examination.  When she called the defendant law firm to explain, they falsely told her that a bench warrant had been issued for her arrest, and would not be recalled unless she paid $1,000 toward her debt.  Since she was unable to pay, Carney stayed in her apartment for several days expecting to be arrested.  206 Cal. App. 3d at 1518-19.  When she discovered there was no warrant, she filed a tort action against the law firm.  *Id.* at 1519.  The law firm sought dismissal based on the litigation privilege.  *Id.*  The appellate court found the privilege did not apply because the law firm's statements to Carney had not been made "to serve the purpose of litigation," which was to collect on a judgment.  *Id.* at 1522-23.  Unlike in *Carney,* Schroeter's demand letter was sent "to achieve the objects of the litigation."  *Action Apartment*, 41 Cal.4th at 1241.  The letter was an overture to the litigation which followed.

Third, the law on the issue raised by Welk has changed since *Carney.*  In part, *Carney's* holding is based on the assertion that "the attorney's blatantly false statements were not only unethical, they also appear to be a criminal violation."  206 Cal. App. 3d at 1522 (citing Cal. Bus. & Prof. Code § 6128).  More recent case law holds that the fact that the underlying attorney conduct is alleged to be unethical or unlawful does not stand in the way of the litigation privilege.  *See Kashian,* 98 Cal. App. 4th at 918 ("[T]he Supreme Court's subsequent decision in *Silberg v. Anderson,* [50 Cal.3d 205 (1990),] has raised a question about the continuing validity of *Carney.*"); *see also id.* at 917-20; *see also Rubin,* 4 Cal.4th 1187 (all claims based on allegedly unlawful attorney solicitation dismissed based on litigation privilege); *GeneThera, Inc. v. Troy & Gould Prof. Corp.,* 171 Cal. App. 4th 901, 909 (2009) (litigation privilege applied when communications were claimed to be "at variance with the Rules of Professional Conduct").  Welk's argument that the litigation privilege does not apply because Schroeter's statement in the demand letter was false is therefore rejected.

For the foregoing reasons, Schroeter has shown that the litigation privilege applies.  Because all claims alleged against Schroeter -- intentional interference with contractual

/ / / / /

1  relations, civil conspiracy and violation of the Unfair Competition Law -- arise from the
2  same communications and conduct, the privilege applies to all of them.

3        "A plaintiff cannot establish a probability of prevailing, if the litigation privilege
4  precludes the defendant's liability on the claim." *Bergstein v. Stroock & Stroock & Lavan*
5  *LLP,* 236 Cal. App. 4th 793, 814 (2015) (internal quotation marks and citation omitted).
6  Schroeter's Anti-SLAPP motion is therefore granted.  All claims asserted against
7  Schroeter are dismissed.  Schroeter's related motion to dismiss is denied as moot.

8        The Court next considers Welk's request for leave to amend.  An amended
9  complaint is subject to anti-SLAPP remedies.  *Gardner v. Martino,* 563 F.3d 981, 991
10  (9th Cir. 2009).  Rule 15 advises leave to amend shall be freely given when justice so
11  requires.  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality."
12  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal
13  quotation marks and citation omitted).

14        In the absence of any apparent or declared reason – such as undue delay, bad
15        faith or dilatory motive on the part of the movant, repeated failure to cure
16        deficiencies by amendments previously allowed, undue prejudice to the
        opposing party by virtue of allowance of the amendment, futility of the
17        amendment, etc. – the leave sought should, as the rules require, be freely
        given.

18
19  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks and citation
20  omitted).  Dismissal without leave to amend is not appropriate unless it is clear the
21  complaint cannot be saved by amendment.  *Id.*

22        Welk has already amended its complaint twice.  (*See* docs. no. 1, 5, 25.)  Welk's
23  second amended complaint was filed after Schroeter had filed an anti-SLAPP motion.[4]
24  (*See* docs. no 24, 25.)  In filing its operative complaint Welk therefore had an opportunity
25  to consider most of Schroeter's arguments presented in this motion.  Moreover, the

26  _____

27
28  [4]        In light of the amended complaint, Schroeter's initial anti-SLAPP motion was
denied as moot.  (*See* doc. no. 39.)

16

1  litigation privilege stems from the gravamen of Welk's operative complaint.  Leave to

2  amend would therefore be futile.  Welk's request for leave to amend is denied.

3  **III.    REED HEIN'S AND PRIVETT'S MOTIONS TO DISMISS**

4          Reed Hein and Privett, another law firm Reed Hein hired in furtherance of the

5  alleged scheme, filed motions to dismiss Welk's complaint under Federal Rule of Civil

6  Procedure 12(b)(6).  A motion under Rule 12(b)(6) tests the sufficiency of the complaint.

7  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted where the

8  complaint lacks a cognizable legal theory.  *Shroyer v. New Cingular Wireless Servs., Inc.,*

9  622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted).

10  Alternatively, a complaint may be dismissed where it presents a cognizable legal theory,

11  yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds,*

12  *Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

13          In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual

14  allegations and construe them most favorably to the nonmoving party.  *Huynh v. Chase*

15  *Manhattan Bank,* 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006).  However, legal

16  conclusions need not be taken as true merely because they are couched as factual

17  allegations.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Similarly,

18  "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a

19  motion to dismiss."  *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir. 1998).

20          As with Schroeter, Welk alleges three state law claims against Privett and Reed

21  Hein -- for intentional interference with contractual relations, civil conspiracy and

22  violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

23  ("UCL").  In addition, Welk alleges violations of the Racketeer Influenced and Corrupt

24  Organizations Act, 18 U.S.C. §§1961, *et seq.*, the Vacation Ownership and Time-Share

25  Act, Cal. Bus. & Prof. Code §§ 11245, *et seq.* ("Timeshare Act"), the False Advertising

26  Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and false advertising in violation of the

27  Lanham Act, 15 U.S.C. § 1125 against Reed Hein only.  Both Defendants argue that

28  / / / / /

**Exhibit A**
**Page 22**

3:17-cv-01499-L-AGS

Welk failed to sufficiently allege each of these claims.  Privett also maintains that it is protected by the litigation privilege.

### A.   <u>Litigation Privilege</u>

Privett contends it is immune from liability under the litigation privilege because Welk's "allegations . . . are premised on alleged communication by Privett in its capacity as counsel."  (Privett Mot. (doc. no. 31-1) at 6.)  The applicability of the privilege and its scope are determined from the gravamen of the action.  *See Action Apartment,* 41 Cal.4th at 1248; *Rubin,* 4 Cal.4th at 1196.

Although Welk's allegations against Privett are similar as against Schroeter, the applicability of the litigation privilege is not a foregone conclusion.  Privett raises the issue in the context of a Rule 12(b)(6) motion rather than an anti-SLAPP motion.  As a general rule, the Court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting it to a motion for summary judgment.  *United States v. Corinthian Colleges,* 655 F.3d 984, 998 (9th Cir. 2011); *see also* Fed. R. Civ. Proc. 12(d).  However, the Court may consider materials that are attached to, or referenced in, the complaint and matters of public record, to the extent the Court can take judicial notice under Federal Rule of Evidence 201.  *Corinthian Colleges,* 655 F.3d at 999.  As Privett has not submitted any judicially noticeable evidence, the Court considers the allegations in the operative complaint with exhibits.

Furthermore, litigation privilege is an affirmative defense.  A complaint may be dismissed under Rule 12(b)(6) based on an affirmative defense "only if the defense is clearly indicated and appears on the face of the pleading."  *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2014), *rev'd on other grounds in Amgen, Inc. v. Harris*, 136 S. Ct. 758 (2016) (internal quotation marks, brackets and citations omitted); *see also Jones v. Bock*, 549 U.S. 199, 211-12 & 215 (2007); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (dismissal appropriate "[w]hen an affirmative defense is obvious on the face of a complaint").

/ / / / /

**Exhibit A
Page 23**

3:17-cv-01499-L-AGS

As alleged, the gravamen of the claims against Privett encompasses its role in the alleged fraudulent scheme to assist Welk timeshare owners to terminate their contracts. Privett received client referrals from Reed Hein to negotiate terminations, and sent demand letters to Welk to inform it of the timeshare owners' intention to terminate. (SAC ¶¶ 2, 10-11, 17, 18, 20-22, 41-44, 64-65, 71-72, 78, Ex. B.)  Privett's demand letter reads in its entirety:

> Please be advised that we want to terminate the above referenced owners' obligation with your timeshare company, including the mortgage and promissory note, if applicable.  We would entertain a small transfer fee.
>
> Please grant us this request.

(*Id.* Ex. B.)  Considered in the context of the gravamen of Welk's complaint, this is insufficient to trigger the litigation privilege.  "[T]he privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed in good faith for the purpose of resolving the dispute . . .."  *Dickinson,* 17 Cal. App. 5th at 682 (quoting *Edwards,* 53 Cal. App. 4th at 35 n.10).

> The reason for the rule is that a successful invocation of the privilege results in the bar of a potentially meritorious claim.  "No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation."

*Dickinson,* 17 Cal. App. 5th at 682 (quoting *Action Apartment,* 41 Cal.4th at 1251).

Privett points to Schroeter's request for judicial notice of the lawsuits Schroeter had filed against Welk (Schroeter Exs. A-F) to argue that Schroeter's lawsuits "underscore[] the likelihood that unresolved disputes over Welk timeshare agreements would proceed to litigation."  (Privett Reply (doc. no. 48) at 2 n.1.)  For two reasons the Court declines Privett's invitation to consider Schroeter's lawsuits to bootstrap Privett's motion.  First, the request was made for the first time in the reply.  It is inappropriate to raise new issues in the reply, because it deprives the opposing party of an opportunity to respond.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not

consider arguments raised for the first time in a reply brief.")  Second, Schroeter's lawsuits, filed in the wake of its demand letters, are no indication whether *Privett* would do the same on behalf of a different timeshare owner.

For the foregoing reasons, Privett's litigation privilege argument is rejected.

## B.    Intentional Interference with Contractual Relations

Defendants argue that the claim for intentional interference with contractual relations should be dismissed for failure to sufficiently allege all of its elements and, alternatively, because they are immune from liability.

### 1.    Elements of the Claim

To state a claim for intentional interference with contract, a plaintiff must allege

> (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990) (internal citations omitted).  Reed Hein argues that Welk did not allege an intentional act, the requisite knowledge, or causation.

The required specificity of factual allegations is defined by the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2).   It "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks, ellipsis and citation omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

**Exhibit A**
**Page 25**

3:17-cv-01499-L-AGS

*Id.* (internal quotation marks, ellipsis and citation omitted).  Therefore, the court generally does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 570).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Welk's operative complaint alleges that in exchange for a fee, Reed Hein assists timeshare owners in terminating their contracts with Welk.  It solicits business by promising that it can effectuate contract termination without adverse consequences.  According to Welk, when customers sign up for Reed Hein's services, Reed Hein advises them to stop making payments to Welk.  Reed Hein also refers the customers' files to attorneys, like Privett, who send allegedly boilerplate demand letters to Welk.  Welk alleges that it suffers damages because its timeshare owners stop making payments, it has to hire additional staff to deal with the increased level of termination letters, and because its reputation has been tarnished.  (SAC ¶¶ 81-93.)

Reed Hein argues that its Timeshare Owner Exit Agreement, attached to the operative complaint, contradicts Welk's allegation that Reed Hein instructs timeshare owners to stop making payments (SAC ¶ 86) because it informs the owners that they remain obligated to make payments to Welk until their timeshare contract is terminated.  (*Id.* Ex. F ("you remain responsible for all financial obligations associated with your Timeshare until the exit is completed").)  The Court need not accept as true allegations that are contradicted by an exhibit attached to the complaint.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended at* 275 F.3d 1187 (9th Cir.

Exhibit A
Page 26

3:17-cv-01499-L-AGS

1    2001).  However, the provision in Reed Hein's Timeshare Owner Exit Agreement with its

2    customers does not necessarily contradict the allegations on the complaint.  Welk alleged

3    that "TET representatives instruct Welk owners to stop making their required payments."

4    (SAC ¶ 16.)  More specifically, Welk alleged that a Reed Hein representative at the San

5    Diego County Fair instructed a Welk employee, posing as a potential customer, that he or

6    she "could stop paying on the timeshare in order to afford TET's services" and that "TET

7    instructs owners to stop paying on their ownerships."  (*Id.* ¶ 25 (internal quotation marks

8    omitted).)  Construing the complaint as a whole, including attached exhibits, and drawing

9    all reasonable inferences most favorably to the nonmoving party, *see Huynh,* 465 F.3d at

10   997, 999 n.3, Reed Hein's agreement does not necessarily contradict Welk's allegations.

11   It is plausible to infer that notwithstanding the language in the agreement, Reed Hein's

12   representatives tell their customers that they can stop making payments to Welk.  Reed

13   Hein's contention that the complaint should be construed solely in light of the provision

14   in the agreement is rejected.

15       Welk alleged sufficient intentional acts designed to induce interference with Welk

16   timeshare contracts.  It alleged that Reed Hein solicited timeshare owners for the sole

17   purpose to assist them in terminating their contracts, it instructed them, even if only

18   orally, to stop making payments to Welk, and it instructed attorneys to send letters to

19   inform Welk of the intended contract terminations.  (SAC ¶¶83-86.)

20       Next, Reed Hein argues that Welk has not alleged that Reed Hein knew of the

21   timeshare contracts between Welk and the customers it solicited.  This argument is based

22   in part on the contention that the complaint does not reference any specific contracts

23   which were terminated.  This argument is rejected for several reasons.  First, under Rule

24   8 notice pleading, Welk is not required to list the contracts.  Second, specific contracts

25   are listed in the attorney demand letters attached to the complaint, albeit the particulars

26   are redacted.  (*See* SAC Ex. B.)  Last, Welk expressly alleged knowledge.  (*Id.* ¶82.)

27   Federal pleading rules do not require more.  *See* Fed. R. Civ. Proc. 9(b) ("Malice, intent,

28   knowledge, and other conditions of a person's mind may be alleged generally.")  The sole

purpose of Reed Hein's business was to attract individuals who had timeshare contracts. (*See, e.g., id.* Ex. A (Reed Hein's website, timeshareexitteam.com, stating "Our Consumer Protection Firm is ready to help you dissolve your timeshare contract.").) Even if knowledge were not expressly alleged, it could be inferred from the nature of Reed Hein's business.

Finally, Reed Hein maintains that Welk failed to allege causation, *i.e.,* that its contracts were breached or disrupted.  This argument is unsupported, as Welk alleged that timeshare owners have terminated their contracts.  (SAC ¶ 89.)  The Court rejects Reed Hein's contention that Welk's allegations are insufficient.

2.  Defenses

First, relying on *Schick v. Lerner,* 193 Cal. App. 3d 1321 (1987), Privett claims it is shielded from liability for interference with contract by its role as attorney for the Welk timeshare owners.  *Schick* is unavailing.

In *Schick,* a therapist consulted an attorney to determine whether he could sign a declaration to be filed in a divorce proceeding between two of his clients despite a confidentiality agreement.  On advice of counsel, he signed the declaration, which was subsequently filed in court.  The client sued the therapist's counsel for, among other things, intentional interference with the confidentiality agreement.  Dismissal of the claim was affirmed based on the public policy

> that attorneys must remain free to counsel their clients without fear of subjecting themselves to liability as a result of the proper discharge of their professional obligations[, and that c]lients as well must feel free to seek out an attorney's advice on *any* issue at *any* time.

*Id.* at 1329 (emphases in original).  Under *Schick,* the attorney's immunity is premised on responding to a client's request for legal advice.

Welk argues that Privett did not in fact represent any owners, because this was prohibited by Privett's agreement with Reed Hein.  (SAC ¶¶ 17, 65, 71, 72, citing Ex. C.) As with Schroeter, the agreement attached to the complaint contradicts Welk's

Exhibit A
Page 28

3:17-cv-01499-L-AGS

contention.  The agreement was amended on March 17, 2016, to provide that "KBP[5] will serve as the attorney for the timeshare owner (timeshare owner is KPB's client) . . .."  (*Id.* Ex. C (Memorandum of Understanding & Amendment of Agreement ¶ 2) (footnote added).)  Privett's demand letter attached to the complaint is dated January 12, 2017, after the agreement with Reed Hein was amended to provide for client representation.  (*Id.* Ex. B.)

Nevertheless, neither the letter on its own nor in the context of the alleged scheme, evinces any client contact, much less the seeking or giving of legal advice.  It merely states that the timeshare owner wants to terminate its contract.  Unlike Schroeter's letter, Privett's letter does not state that Privett represents the referenced timeshare owner.  According to the allegations, rather than timeshare owners seeking legal advice, they respond to Reed Hein's advertising that they can safely terminate Welk's timeshare contracts.  Reed Hein then forwards its client information to Privett to send a generic letter to Welk stating that a specific client wants to terminate his or her timeshare contract.  (SAC ¶¶ 16-18.)

Because advice of counsel is a defense, it must be apparent on the face of the complaint to succeed on a Rule 12(b)(6) motion to dismiss.  *Harris.*, 788 F.3d at 943; *Jones*, 549 U.S. at 215.  The defense is not apparent on the face of Welk's complaint, including exhibits.  Accordingly, at this stage of the case, *Schick* does not help Privett.

Second, both Defendants rely on the agent immunity defense, which is based on the principle that "there can be no action for inducement of breach of contract against the other party to the contract."  *Shoemaker v. Myers,* 52 Cal.3d 1, 24 (1990).  "[C]orporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract" because they "stand in the place of the employer."  *Id.*  Accordingly, "[t]he tort duty not to interfere with the contract falls only

---

[5]   The agreement refers to Privett as KBP.

**Exhibit A**
**Page 29**

3:17-cv-01499-L-AGS

on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 514 (1994).  However, agent immunity does not apply when the agent acts for his "individual advantage."  *Id.* at 512 n.4 (internal quotation marks and citation omitted).

The complaint is premised on the contention that Defendants acted to further their own interests.  Reed Hein collects a hefty fee from timeshare owners in exchange for its services, which fee must be refunded if Reed Hein is not successful in securing contract termination.  (SAC Ex. F (Timeshare Owner Exit Agreement) at 1 (Fee Amount), 3 (Guarantee).)  Privett receives a $1,200 fee from Reed Hein with every referral.  (*Id.* Ex. C at 2.)  Non-contracting parties with an economic interest in the contract may be held liable for interfering with it.  *See United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.,* 766 F.3d 1002, 1007-08 (9th Cir. 2014); *Popescu v. Apple Inc.,* 1 Cal. App. 5th 39, 52-56 (2016); *Asahi Kasei Pharma Corp. v. Actelion Ltd.,* 222 Cal. App. 4th 945, 958-65 (2013).

*Mintz v. Blue Cross of California,* 172 Cal. App. 4th 1594 (2009), on which both Defendants rely, is distinguishable.  The contract alleged to be interfered with in *Mintz* expressly stated that the defendant would act on behalf of one the contracting parties as its agent to administer the contract.  *Id.* at 1603-04.  This is not so in the instant case.  Defendants only became involved after they had solicited timeshare owners for the sole purpose of interfering with the timeshare contracts.  Unlike in the instant case, the complaint in *Mintz* did not allege that the defendant had a scheme of its own to induce its employer to breach the contract.

Based on the foregoing, it is not apparent from the face of the complaint that the agent immunity defense applies to Privett or Reed Hein.  Their respective motions to dismiss the claim for intentional interference with contractual relations are therefore denied.

/ / / / /

**Exhibit A**
**Page 30**

3:17-cv-01499-L-AGS

### C.  Conspiracy to Interfere with Contractual Relations

Defendants contend that Welk cannot state a claim for conspiracy to interfere with Welk's timeshare contracts because it cannot state the underlying claim for interference with contractual relations.  "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort . . .."  *Applied Equip.,* 7 Cal.4th at 511.  "It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law."  *Id.* at 514.  Because Defendants were not successful in dismissing the claim for interference with contract, their argument is rejected.

Alternatively, Reed Hein argues that the claim should be dismissed because Welk does not allege all of its elements.  To state a claim for civil conspiracy, a plaintiff must allege "(1) the formation and operation of the conspiracy; (2) the wrongful acts or acts done pursuant thereto; and (3) the damage resulting."  *Mosier v. S. Cal. Physicians Ins. Exchange,* 63 Cal. App. 4th 1022, 1048 (1998) (internal quotation marks and citations omitted); *see also* Judicial Council of California Civil Jury Instructions ("CACI") 3600, Conspiracy – Essential Factual Elements.  Reed Hein contends Welk has not sufficiently alleged the formation and operation element.  The Court disagrees.  Welk alleged that Reed Hein entered into a contract with Privett to represent Reed Hein customers for the purpose of terminating their timeshare contracts with Welk.  Welk elaborates on how the alleged scheme operated from the beginning, *i.e.,* Reed Hein's solicitation of timeshare owners, to the end, *i.e.,* retention of counsel and demand letters to Welk to terminate contracts.  (SAC ¶¶ 56-79, 81-92, 111-16.)

Defendants' motions to dismiss the claim for civil conspiracy are denied insofar as the claim is based on interference with contractual relations.

### D.  California False Advertising Law

Welk alleges that Reed Hein's advertising of timeshare exit services contained false and misleading statements in violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.  Welk's theory of liability is that Reed Hein's advertising misled

**Exhibit A**
**Page 31**

3:17-cv-01499-L-AGS

1  consumers into using its services against Welk, which caused Welk to lose money.  (SAC
2  ¶¶ 154-60.)  Reed Hein challenges Welk's statutory standing to allege this claim.

3          A private action alleging false advertising under California law may be brought
4  "by any person who has suffered injury in fact and has lost money or property as a result
5  of a violation of this chapter."  Cal. Bus. & Prof. Code § 17535.  The relevant portion of
6  the statute is the requirement that money and property be lost *as a result of*  false
7  advertising.  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by'
8  and requires a showing of a causal connection or reliance on the alleged
9  misrepresentation."  *Kwikset Corp. v. Super. Ct. (Benson),* 51 Cal.4th 310, 326 (2011)
10  (internal quotation marks and citation omitted).  The plaintiff must therefore
11  "demonstrate actual reliance on the allegedly deceptive or misleading statements, in
12  accordance with well-settled principles regarding the element of reliance in ordinary
13  fraud actions."  *Id.* at 326-27 (quoting *In re Tobacco II Cases,* 46 Cal.4th 298, 306
14  (2009)) (footnote omitted).  "'Reliance' as used in the ordinary fraud context has always
15  been understood to mean reliance on a statement for its truth and accuracy."  *Kwikset,* 51
16  Cal.4th at 327 n.10.  Accordingly, the plaintiff must be "motivated to act or refrain from
17  action based on the truth or falsity of a defendant's statement, not merely the fact it was
18  made." *Id.*

19          Welk's claim is not premised on its reliance on the truthfulness of Reed Hein's
20  representations, but on the fact that the customers, who were allegedly defrauded by Reed
21  Hein, caused Welk to lose money when they terminated their timeshare contracts.  Welk
22  lacks standing to allege a false advertising claim under California law.  Reed Hein's
23  motion to dismiss this claim is granted.  Because there appears to be no set of facts which
24  Welk could allege to render the claim actionable, its request for leave to amend is denied.
25  *See Foman*, 371 U.S. at 182.

26          **E.      False Advertising in Violation of the Lanham Act**

27          Reed Hein also moves to dismiss Welk's claim for false advertising in violation of
28  15 U.S.C. § 1125(a)(1), which provides in pertinent part:

**Exhibit A**
**Page 32**

3:17-cv-01499-L-AGS

Any person who, . . . in connection with any . . . services . . . , uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—

[¶]

(B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities . . . of his or her or another person's . . . services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

As with its false advertising claim under California law, Welk alleges that Reed Hein's false advertising to consumers caused Welk to suffer damages.  (SAC ¶¶ 163-71.)  In addition, Welk alleges that Reed Hein is its competitor because it competes for timeshare owners' resources – timeshare owners will either pay Welk under their timeshare contracts, or Reed Hein's fee to extricate them from the timeshare contacts.  (*Id.* ¶ 165.)  Reed Hein challenges Welk's statutory standing.

Reed Hein's motion is premised on the assumption that Welk asserted a false advertising claim, as expressly stated in the operative complaint (*id.* at 39 (heading)), under 15 U.S.C. § 1125(a)(1)(B).  To allege standing for this claim, a plaintiff must allege it is a competitor.  *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.,* 407 F.3d 1027, 1037 (9th Cir. 2005).

Although Welk alleges that it "competes" with Reed Hein for timeshare owners' resources, this is not the kind of competition necessary to establish standing.  The intent of the Lanham Act, as relevant here, is "to protect persons engaged in . . . commerce against unfair competition."  15 U.S.C. § 1127; *see also Halicki v. United Artists Commc'ns, Inc.,* 812 F.2d 1213, 1214 (9th Cir. 1987) (statutory intent expressed in § 1127 "extraordinarily helpful" in interpreting standing requirements); *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir. 1992), *cert. den.,* 506 U.S. 1080 (1993).  For a false advertising claim, therefore, a plaintiff must allege a "discernibly competitive injury,"

Exhibit A
Page 33

3:17-cv-01499-L-AGS

*Waits,* 978 F.2d at 1110, *i.e.,* that "the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant," *Jack Russell,* 407 F.3d at 1037.  This requires that the competitors provide the same product or service.  *See Brosnan v. Tradeline Sols., Inc.,* 681 F. Supp. 2d 1094, 1101 (N.D. Cal. 2010); *see also Black's Law Dictionary* (10th ed. 2014) ("competition").  Welk does not dispute that this is the applicable definition of competition for purposes of false advertising under the Lanham Act.  (*See* 12(b)(6) Opp'n (doc. no. 68) at 22-23.)  Because Welk and Reed Hein do not offer the same products or services, they are not in competition.  Welk lacks standing to assert a false advertising claim under the Lanham Act.

Instead, Welk opposes Reed Hein's motion by changing tack.  It points to the allegation in the California false advertising claim that Reed Hein falsely represented that it "does business with Welk."  (SAC ¶ 154.)  For the first time in its opposition brief Welk reveals that what it termed in the complaint as "False Advertising in Violation of the Lanham Act" (*id.* at 39) is really a false association claim under the Lanham Act (12(b)(6) Opp'n at 23).  Although the Lanham Act claim incorporates by reference all prior allegations (*id.* ¶161), as alleged, it does not provide fair notice to Reed Hein that the claim is for false association and not false advertising.  Accordingly, the Court declines to construe it as such for purposes of Reed Hein's motion.

Reed Hein's motion is granted insofar as it moves to dismiss the Lanham Act claim for false advertising.  Because it does not appear that Welk could allege any additional facts to state a claim for false advertising under the Lanham Act, leave to amend on that theory is denied as futile.  *See Foman*, 371 U.S. at 182.

The Court next considers whether Welk should be granted leave to amend to state a false association claim.  In this regard, the Lanham Act provides:

> Any person who, . . . in connection with any . . . services . . . , uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—

**Exhibit A**
**Page 34**

3:17-cv-01499-L-AGS

(A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . .

[¶]

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  Standing for the false association prong of the Lanham Act does not require a showing of competitive injury.  *Jack Russell,* 407 F.3d at 1037.  It requires allegation of "commercial injury based upon the deceptive use of a trademark or its equivalent." *Id.*  Because it may be possible for Welk to allege standing for false association, leave to amend the Lanham Act claim is granted.

## F.   Vacation Ownership and Time-Share Act

Welk claims that Reed Hein's allegedly false representations to timeshare owners violate the Vacation Ownership and Time-Share Act, Cal. Bus. & Prof. Code §§ 11210, *et seq.* ("Timeshare Act").  Reed Hein moves to dismiss the claim.

Initially, Reed Hein points out that only Welk Resorts Platinum Owners Association ("Welk Association") is a proper plaintiff, and that no claim under the Timeshare Act can be asserted by Welk Resort Group, Inc. ("Welk Resort").  A private right of action for violation of the Timeshare Act can only be brought by a "time-share interest owner or association."  Cal. Bus. & Prof. Code § 11285.  Welk does not oppose this argument.  (*See* 12(b)(6) Opp'n at 21-22.)  Accordingly, to the extent the claim is asserted by Welk Resort, it is dismissed without leave to amend.

To the extent the claim is asserted by Welk Association, Reed Hein argues, among other things, that it is exempt from liability by statute, which provides in pertinent part:

Any communication regarding a time-share interest that is addressed to any person who has previously executed a contract for the sale or purchase of that time-share interest and that does not constitute a solicitation of a time-share interest, shall be exempt from this chapter.

Cal. Bus. & Prof. Code § 11217(b).  Accordingly, representations made to individuals who already own a timeshare are exempt, if they concern the same timeshare and do not constitute "a solicitation of a time-share interest." *Id.*

Reed Hein claims that the gravamen of Welk's complaint is that Reed Hein, operating as TET, solicits Welk timeshare owners to terminate their contracts with Welk. It argues it is exempt because its advertising is directed at persons who already own timeshares.  Welk counters by pointing to the allegation that "TET . . . attempts to either void Welk owners' contracts and/or transfer the ownership to a third party, all in exchange for Welk owners' money."  (SAC ¶ 141.)  Nowhere in the complaint, including the introduction and detailed background sections (*see id.* ¶¶ 1-79), does Welk elaborate on this theory of Reed Hein's operations.  As alleged, the complaint does not provide fair notice of Welk's claim that Reed Hein's operations included transfers of timeshare contracts to a third party or possibly constituted a timeshare exchange program.  (*See* 12(b)(6) Opp'n at 21-22.)

Accordingly, Reed Hein's motion to dismiss the Timeshare Act claim is granted. Welk is granted leave to amend to allege a sufficient factual basis.

## G.   Racketeer Influenced and Corrupt Organizations Act

Welk also asserts a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Reed Hein under 18 U.S.C. § 1962(c).  Welk alleges that Reed Hein repeatedly engages in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 to disseminate allegedly misleading representations to timeshare owners. Reed Hein moves to dismiss this claim because, among other things, Welk has not adequately alleged causation.

To state a claim for violation of 18 U.S.C. § 1962(c), the plaintiff must show that "the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well."  *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 457 (2006) (internal quotation marks and citations omitted).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation

led *directly* to the plaintiff's injuries." *Id.* at 461 (emphasis added).  Consistent with *Anza*, the Ninth Circuit applies a three-factor test to determine whether a plaintiff has shown proximate cause:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1055 (9th Cir. 2008) (citation omitted); *cf. Anza,* 547 U.S. at 458-60 (analyzing the same factors).  Not all of the factors must be present for a court to conclude lack of proximate causation.  *See Newcal*, 513 F.3d at 1055 (listing factors in the disjunctive); *Anza,* 547 U.S. at 459-61 (finding lack of proximate cause in the absence of risk of duplicative recoveries).

It is apparent from the allegations that Defendants' victims are the timeshare owners who are allegedly misled into contracting for Reed Hein's services.  Welk is indirectly damaged by losing contract payments when the timeshare owners stop making payments and terminate their contracts.  (SAC ¶¶ 97-110.)  "The requirement of a direct causal connection is especially warranted where the immediate victims of the alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Anza,* 547 U.S. at 460 (citation omitted).

In addition, determining the amount of Welk's damages caused by Reed Hein's advertising activity, as opposed to timeshare terminations resulting from other causes, for example, from timeshare owners terminating on their own or terminating through the services of other timeshare exit companies,[6] would not be as straightforward as Welk would have one believe.  Further, because Welk forecloses on defaulted timeshares (*see,*

---

[6]     Welk alleges that timeshare exit companies are a "cottage industry."  (SAC ¶ 1.)

*e.g.,* SAC ¶ 19), the Court would have to take this into account for each timeshare when calculating Welk's damages. Accordingly, Welk's damages would entail a difficult and complicated inquiry. *See Anza,* 547 U.S. at 458-60 (discussing difficulties entailed in determining damages in cases of indirect injury.) Welk therefore has not alleged the requisite proximate cause. *See also Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1147-49 (9th Cir. 2008).

Welk counters that the proximate cause element is an issue of fact and therefore should not be decided at the pleading stage. Its reliance on *Newcal* for this proposition is unwarranted, as its ruling in this regard was based on the circumstances specific to that case. 513 F.3d at 1055 ("Those questions are all factual questions, which we cannot resolve on Rule 12(b)(6) motion *in this case.*" (emphasis added)). Where the relevant allegations do not present factual issues, the proximate cause can be decided at the pleading stage. *See Anza,* 547 U.S. at 453 ("this case arises from a motion to dismiss"), 461 (holding that the claim "does not satisfy the requirement of proximate causation"). The facts necessary for the proximate cause inquiry are apparent on the face of Welk's complaint. The proximate cause issue therefore need not wait.

Finally, Welk requests leave to amend. The causation issue was raised in Reed Hein's initial motion to dismiss (doc. no. 18-1 at 6-7.) Subsequently, Welk filed the operative amended complaint (doc. no. 25). Based on this procedural history and the nature of Welk's claim, it appears that granting leave to amend would be futile. *See Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013). The RICO claim is therefore dismissed without leave to amend.

## H.   RICO Conspiracy

As a part of its civil conspiracy claim, Welk alleges conspiracy in violation of 18 U.S.C. § 1962(d). (SAC ¶¶ 116-22.) This theory of conspiracy is based entirely on Welk's RICO claim. Because Welk cannot state a claim for a RICO violation, its conspiracy claim is dismissed to the extent it is based thereon. Leave to amend is denied for the same reasons it was denied to amend the RICO claim.

**Exhibit A**
**Page 38**

3:17-cv-01499-L-AGS

1

### I.        California Unfair Competition Law

2        Finally, Welk alleges that Defendants violated the Unfair Competition Law, Cal.

3  Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") under each of its three prongs -- unlawful,

4  unfair, and fraudulent business practice.  *See Cel-Tech Commc'ns., Inc. v. Los Angeles*

5  *Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999).  Reed Hein and Privett move to dismiss

6  this claim arguing that Welk lacks standing and cannot show that the alleged practices

7  were unlawful, unfair or fraudulent.

8        The UCL does not proscribe specific business practices, but its "unlawful" prong

9  "borrows violations of other laws and treats them as unlawful practices that the unfair

10  competition law makes independently actionable."  *Cel-Tech Commc'ns,* 20 Cal.4th at

11  180 (internal quotation marks and citations omitted).  Accordingly, to the extent Welk's

12  other claims have been dismissed, they cannot form a basis for a UCL violation under the

13  unlawful prong.

14        Welk's claim for interference with contractual relations and the related civil

15  conspiracy claim survive Defendants' motions to dismiss.  Contrary to Reed Hein's

16  contention, a common law tort, such as intentional interference with contract, is a

17  sufficient basis for the unlawful prong of the UCL.  *See Angelica Textile Servs., Inc. v.*

18  *Park,* 220 Cal. App. 4th  495, 510 (2013) (citing *CRST Van Expedited, Inc. v. Werner*

19  *Enters., Inc.,* 479 F.3d 1099, 1107 (9th Cir. 2007)).  Because some of Welk's claims

20  remain in the case, Welk can state a claim for a UCL violation against Privett and Reed

21  Hein under the unlawful prong.[7]

22        Next, Reed Hein argues that Welk lacks statutory standing to assert a UCL claim

23  based on the allegations that Defendants violated the Runners and Cappers Act, Cal. Bus.

24

---

25

26  [7]        Welk was granted leave to amend the Timeshare Act and Lanham Act claims.  If
the amendments are successful, these claims may provide additional bases to allege

27  unlawful business practices under the UCL.  However, such claims can be asserted only
against Reed Hein.  (*See* SAC at 35, 39 (alleged only against Reed Hein).)

28

**Exhibit A**
**Page 39**

3:17-cv-01499-L-AGS

& Prof. Code §§ 6150 *et seq.*, and the Lawyer Referral Law, *id.* § 6155.[8]  This claim is based on Reed Hein's contracts retaining Privett and Schroeter to represent Reed Hein's customers against Welk.  (*See* SAC ¶¶ 128-31; *see also, e.g., id.* ¶¶ 70-73.)  Welk alleges it was damaged because timeshare owners ceased making contract payments, and because it had to increase staffing in response to an increase in requests to terminate contracts.  (*Id.* ¶ 136.)  To satisfy the standing requirement under the UCL, a plaintiff must show, among other things, that its "economic injury was the result of, i.e., *caused by,* the unfair business practice . . . that is the gravamen of the claim."  *Kwikset Corp.,* 51 Cal.4th at 322 (emphasis in original).  In this regard, a plaintiff must show that the unlawful practice was "an immediate cause" of the economic injury.  *Id.* at 327 (internal quotation marks and citation omitted).  The immediate cause of Welk's injury are the timeshare owners who terminate their contracts, not the alleged violations of the Runners and Cappers Act and the Lawyer Referral Law.  Welk therefore does not have standing to allege a UCL claim based on violations of the Runners and Cappers Act or the Lawyer Referral Law.

Furthermore, the unfair and fraudulent business practices portion of Welk's UCL claim are based on the premise that Defendants misled consumers.  (SAC ¶¶ 132, 134.)  As discussed in the context of the false advertising claim, Welk lacks statutory standing because its injury did not result from reliance on the alleged misrepresentations.  *See Kwikset Corp.,* 51 Cal.4th at 326-27.

For the foregoing reasons, Reed Hein and Privett's motions to dismiss the UCL claim are granted in part.  They are denied insofar as Welk alleges unlawful business practices based on interference with contract and the related conspiracy, and to the extent it can sufficiently amend its Timeshare Act and Lanham Act claims against Reed Hein. In all other respects, the UCL claim is dismissed.

/ / / / /

---

[8]      (Reed Hein Mot. (doc. no. 66-1) at 14-15.)  Welk does not respond to this argument.  (*See* 12(b)(6) Opp'n at 19-20.)

Exhibit A
Page 40

3:17-cv-01499-L-AGS

1    Welk's request for leave to amend is denied.  Reed Hein asserted the same standing

2    arguments in its initial motion to dismiss (doc. no.18-1 at 15).  Welk had an opportunity

3    to consider them before filing its operative amended complaint (doc. no. 25).  Leave to

4    amend is therefore denied as futile.  *See Salameh,* 726 F.3d at 1133.

## IV.    CONCLUSION

6    For the reasons stated above, it is ordered as follows:

7    1.    The special motion to strike filed by Defendant Schroeter Goldmark &

8    Bender is granted.  All claims alleged against this Defendant are dismissed without leave

9    to amend.  Schroeter Goldmark & Bender's motion to dismiss is denied as moot.

10    2.    The motion to dismiss filed by Defendant Ken B. Privett, PLC is granted in

11    part and denied in part.  The motion is granted insofar as the Third Claim for Relief

12    alleging Civil Conspiracy and the Fourth Claim for Relief alleging Violation of the

13    California Unfair Competition Law are dismissed in part as stated herein.  In all other

14    respects, the motion is denied.

15    3.    The motion to dismiss filed by Defendant Reed Hein & Associates, LLC is

16    granted in part and denied in part.  The motion is granted insofar as Plaintiffs' Second

17    Claim for Relief alleging Violations of the Racketeer Influenced and Corrupt

18    Organizations Act, Fifth Claim for Relief alleging Violation of the California Vacation

19    Ownership and Time-Share Act, Sixth Claim for Relief alleging Violation of the

20    California False Advertising Law, and Seventh Claim for Relief alleging False

21    Advertising in Violation of the Lanham Act are dismissed.  Plaintiffs' Third Claim for

22    Relief alleging Civil Conspiracy and Fourth Claim for Relief alleging Violation of the

23    California Unfair Competition Law are dismissed in part as stated herein.  In all other

24    respects, the motion is denied.

25    4.    Plaintiffs' request for leave to amend is granted in part as stated herein.

26    5.    If Plaintiffs choose to file a third amended complaint, they must do so no

27    later than 21 calendar days after this Order is filed.  Defendants shall file their responses,

28    if any, no later than 14 calendar days after the service of Plaintiffs' third amended

**Exhibit A**
**Page 41**

3:17-cv-01499-L-AGS

1  complaint.  If Plaintiffs choose to forego amendment, Defendants' responses, if any, shall
2  be filed no later than 35 calendar days after this Order is filed.

3          **IT IS SO ORDERED.**

4

5  Dated:  March 18, 2019

6

7  _____
   Hon. M. James Lorenz
8  United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**
**Page 42**

3:17-cv-01499-L-AGS

# EXHIBIT B

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 08/10/17 | HLR | 0.20 | $ 240.00 | $ 48.00 | Review timing for responsive pleading and anti-SLAPP motion. |
| 08/10/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Brief analysis and research re: federal standard issues on anti-SLAPP presentation and timing. |
| 08/10/17 | GAH | 0.30 | $ 240.00 | $ 72.00 | Receive and review and analysis of complaint and potential anti-SLAPP issues and obstacles. |
| 08/11/17 | HLR | 0.30 | $ 240.00 | $ 72.00 | Prepare revised list of documents and information needed from client in order to prepare motion to dismiss an anti-SLAPP motion. |
| 08/11/17 | HLR | 1.20 | $ 240.00 | $ 288.00 | [Redacted] [Client input] re: next steps, litigation plan, anti-SLAPP [redacted]. |
| 08/18/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Client input re: anti-SLAPP motion exhibits]. |
| 08/18/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Further client input regarding motion to dismiss and anti-SLAPP motion to strike]. |
| 08/20/17 | HLR | 0.40 | $ 240.00 | $ 96.00 | Review and analysis of [documents] pertaining to chronology for anti-SLAPP motion. |
| 08/21/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Further client input regarding motion to dismiss and anti-SLAPP motion to strike]. |
| 08/22/17 | GAH | 0.30 | $ 240.00 | $ 72.00 | Prepare substantive outline for anti-SLAPP and 12(b)(6). |
| 08/28/17 | HLR | 0.30 | $ 240.00 | $ 72.00 | [Redacted] [Further client input regarding motion to dismiss and anti-SLAPP motion to strike]. |
| 08/29/17 | HLR | 0.40 | $ 240.00 | $ 96.00 | Telephone call with G. Lee re: case, anti-SLAPP, and Rule 11. |
| 08/29/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Analysis re potential Anti-SLAPP motion pursuant to Cal. Code Civ. P. sec 425.16 and potential defense to motion under exception for commercial speech. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 08/29/17 | RMS | 1.20 | $ 230.00 | $ 276.00 | Review pleadings, including complaint and related complaints filed against Welk Plaintiffs. |
| 08/29/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Review [redacted] analysis by [redacted] related to viability of Anti-SLAPP motion [redacted]. |
| 08/30/17 | RMS | 1.00 | $ 230.00 | $ 230.00 | Review and analyze documents including related lawsuits against clients and lawsuits filed by clients on behalf of Welk Resort time share owners. |
| 08/30/17 | RMS | 2.20 | $ 230.00 | $ 506.00 | [Redacted] [Further client input re:] strategy related to 12(b)(6) motion and Cal. Code Civ. Proc. 425.16 motion to dismiss. |
| 08/30/17 | RMS | 1.70 | $ 230.00 | $ 391.00 | Additional research re 12(b)(6) and 425.16 Anti-SLAPP motion issues including protected petitioning activity arising from pre-litigation negotiations and communications, contesting arbitration, and retention of local counsel to file litigation in California forum. |
| 08/30/17 | GAH | 0.30 | $ 240.00 | $   72.00 | Conference with R. Shaughnessy re: 12(b)(6) and anti-SLAPP theories and follow-up research needed. |
| 08/30/17 | HLR | 2.30 | $ 240.00 | $ 552.00 | Strategy call with clients re: facts, anti-SLAPP, [redacted]. |
| 08/30/17 | HLR | 0.60 | $ 240.00 | $ 144.00 | Prepare report to clients re: documentation needed, motion to dismiss, anti-SLAPP, and call with [redacted]. |
| 08/31/17 | RMS | 1.20 | $ 230.00 | $ 276.00 | Review and analyze 3 separate sanctions motions and 3 separate motions to compel arbitration in three related San Diego Superior Court actions filed by timeshare owners at client's direction against Welk, and to consider utility of documents as additional support for 425.16 motion to dismiss. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/01/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Participate in telephone conference [redacted] in connection with preparation of 12(b)(6) and 425.16 motions. |
| 09/05/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Analysis of ethical issues arising from representation agreement between Reed Hein and clients for representation of Timeshare clients, and connection to Rule 12(b)(6) motion to dismiss and anti-SLAPP motion. |
| 09/11/17 | RMS | 1.40 | $ 230.00 | $ 322.00 | Review and analyze additional argument re prior lawsuits against Welk related to fraud and misrepresentation, and analyze need for additional evidence subject to judicial notice, related to other cases filed by timeshare owners against Welk. |
| 09/12/17 | HLR | 0.20 | $ 240.00 | $ 48.00 | Analysis of issue pertaining to Welk dropping auto pay when counsel is announced. |
| 09/18/17 | RMS | 2.00 | $ 230.00 | $ 460.00 | Research re comment on issue of public concern, applied to disputes over aggressive timeshare marketing and misrepresentation. |
| 09/18/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Review case law for authority supporting application of special Anti-SLAPP statute to RICO or similar federal claims. |
| 09/19/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft outline and introduction to anti-SLAPP motion to dismiss. |
| 09/19/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Draft Notice of Motion and Special Motion to Strike First Amended Complaint pursuant to California Anti-SLAPP law, Cal. Code Civ. Proc. sec. 425.16. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/19/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Further research regarding applicability of anti-SLAPP motion to federal courts sitting in diversity jurisdiction, and application to federal claims. |
| 09/19/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | [Redacted] [Further preparation of] T. Breen declaration supporting anti-SLAPP motion. |
| 09/20/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Exchange of email communications with client regarding edits and revisions to draft declaration of T. Breen supporting anti-SLAPP motion to strike. |
| 09/20/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft discussion of factual background supporting anti-SLAPP motion to strike, including discussion of public issue surrounding Welk timeshare sale practices. |
| 09/20/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Further online research of public discussion of Welk Resorts timeshare sales practices, including complaints about sharp practices and fraud/misrepresentation. |
| 09/21/17 | RMS | 3.10 | $ 230.00 | $ 713.00 | Draft argument portion of memorandum of points and authorities discussing first step analysis of motion to strike under anti-SLAPP law. |
| 09/22/17 | RMS | 2.10 | $ 230.00 | $ 483.00 | Further review and revise declaration of T. Breen to include additional facts and circumstances supporting anti-SLAPP motion, including speech regarding a public issue and speech in connection with litigation matter. |
| 09/22/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Further research re federal law applying step one anti-SLAPP law analysis to state law claims. |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/22/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Further draft memorandum of points and authorities in support of anti-SLAPP motion to strike, including extensive fact section establishing fraudulent sales practices of timeshare companies as a public issue, with citation to documents subject to judicial notice. |
| 09/22/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Further case research regarding protected activity arising out of pre-litigation communications including discussions that lead to settlement, where litigation is a serious consideration. |
| 09/23/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Further draft memorandum of points and authorities in support of anti-SLAPP motion, including detailed fact section describing history of SGB, providing work for timeshare clients, and interaction with Welk, including corporate counsel. |
| 09/23/17 | RMS | 1.40 | $ 230.00 | $ 322.00 | Further draft argument supporting application of anti-SLAPP law to pre-litigation communications with Welk, including the sending of demand letters, settlement of 30 cases, arbitration of one matter, and filing of active litigation in 3 California matters. Draft step-one arguments premised upon communications in connection with petitioning activity and private communications in connection with a matter of public interest. |
| 09/23/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Complete draft of memorandum of points and authorities in support of anti-SLAPP motion including step two argument in favor of dismissal without leave to amend based on application of litigation privilege, McDermott/Solin line of cases, and agent immunity rule. |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/25/17 | RMS | 2.10 | $ 230.00 | $ 483.00 | Review and revise memorandum of points and authorities in support of anti-SLAPP motion in accordance with Breen declaration edits and additional arguments arising from inconsistent statements by Welk counsel. |
| 09/25/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Telephone conference with Attorney James regarding meet and confer obligations under standing order that parties moving for the same relief coordinate on scheduling and briefing. |
| 09/25/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Communication with client regarding [redacted] anti-SLAPP motion together with 12(b)(6) motion. |
| 09/25/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | [Redacted] [A]nalysis of whether to include comments against interest by Welk counsel in motion and/or declaration of Breen. |
| 09/25/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | [Redacted] [Further preparation of draft of Breen declaration supporting anti-SLAPP motion. |
| 09/25/17 | GAH | 1.10 | $ 240.00 | $ 264.00 | Continue preparation of points and authorities in support of anti-SLAPP motion. |
| 09/25/17 | GAH | 0.60 | $ 240.00 | $ 144.00 | Review and redline T. Breen declaration in support of anti-SLAPP motion. |
| 09/25/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Prepare email [redacted] regarding [Breen] declaration. |
| 09/25/17 | HLR | 0.90 | $ 240.00 | $ 216.00 | Review and research of issue of application of anti-SLAPP statute to RICO allegations, and effect on overall dispositive motion strategy. |
| 09/26/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Review and revise memorandum of points and authorities and Breen declaration to address additional facts learned [redacted] at ARDA conference. |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/26/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Further review and revise Breen declaration to address issues related to attorney-client and attorney-work-product privileges. |
| 09/26/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Further review and revise Breen declaration in light of [client input] [redacted]. |
| 09/26/17 | RMS | 1.00 | $ 230.00 | $ 230.00 | Further review and revise memorandum of points and authorities in support of anti-SLAPP motion, including arguments related to RICO. |
| 09/26/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Research regarding RICO subject to anti-SLAPP motion to dismiss under California law. |
| 09/27/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Further analysis regarding timing for filing anti-SLAPP motion to strike. |
| 09/27/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Telephone conference with Attorney P. James regarding meet and confer regarding anti-SLAPP motion coordination of briefing and scheduling. |
| 09/27/17 | RMS | 0.30 | $ 230.00 | $  69.00 | [Redacted] Further analysis concerning edits and input to Breen declaration. |
| 09/27/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Review and revise request for judicial notice to include additional exhibits supporting anti-SLAPP motion. |
| 09/27/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Review and revise notice of lodgment to include additional exhibits |
| 09/27/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Further review and revise Breen declaration [redacted] [regarding legal services provided and need to protect attorney-client and work-product privileges]. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/27/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Receive and review  [redacted] [further input for Breen declaration]. |
| 09/27/17 | GAH | 0.40 | $ 240.00 | $ 96.00 | [Redacted] further revise [Breen declaration]. |
| 09/28/17 | HLR | 0.50 | $ 240.00 | $ 120.00 | Review client's changes to anti-SLAPP motion and status regarding the same. |
| 09/28/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Receive and review [redacted] [client input regarding anti-SLAPP motion]. |
| 09/28/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Review documents and further analysis of Welk timeshare owner's credit-reporting issues]. |
| 09/28/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | Receive and review email[redacted] regarding credit reporting issue and reply. |
| 09/28/17 | RMS | 2.80 | $ 230.00 | $ 644.00 | Review client input regarding arguments and fact discussion for anti-SLAPP motion brief, and review and revise memorandum of points and authorities discussion of facts. |
| 09/28/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | [Redacted] [Consider and analyze] additional facts to be included in declaration of T. Breen. |
| 09/28/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | [Redacted] Analyze benefits of adding argument to brief and facts to declaration discussing Welk plaintiffs' actions to harm client credit. |
| 09/28/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Review and revise Breen declaration to include discussion of manner in which Welk plaintiffs retaliate against clients by deleting auto-pay accounts and creating missed payments. |

## Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 09/28/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Review and revise memorandum of points and authorities supporting anti-SLAPP motion to include discussion of Welk actions taken in retaliation against clients who retain legal counsel. |
| 09/28/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Follow up [redacted] regarding further revisions to Breen declaration and revisions to memorandum of points and authorities supporting anti-SLAPP motion to dismiss. |
| 09/28/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Further draft and revise memorandum of points and authorities in support of anti-SLAPP motion to strike to include additional arguments and facts provided by clients. |
| 09/29/17 | RMS | 2.90 | $ 230.00 | $ 667.00 | Further review and revise memorandum of points and authorities in support of special anti-SLAPP motion to strike first amended complaint, to address numerous additional proposed revisons, edits, and comments [redacted]. |
| 09/29/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review and revise and finalize declaration of T. Breen in support of anti-SLAPP motion to strike. |
| 09/29/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft declaration of R. Shaughnessy in support of anti-SLAPP motion to strike. |
| 09/29/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Review and revise and finalize notice of lodgment of documents supporting anti-SLAPP motion to strike. |
| 09/29/17 | RMS | 1.50 | $ 230.00 | $ 345.00 | Review, revise and finalize request for judicial notice in support of anti-SLAPP motion to dismiss |
| 09/29/17 | GAH | 0.60 | $ 240.00 | $ 144.00 | Final pre-filing preparation of points and authorities in support of anti-SLAPP moton. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 10/02/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | [Redacted] [Client input re: anti-SLAPP motion issues]. |
| 10/02/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Follow up discussion with clerk of the court regarding mandatory meet and confer requirements for filing and hearing of anti-SLAPP motion |
| 10/04/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review exhibits lodged in support of anti-SLAPP motion to strike to determine which, if any, exhibits contain settlement discussions. |
| 10/04/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Consider strategy for best dealing with exhibits containing settlement discussions. |
| 10/04/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Review [redacted] [documents re: Welk's refusal to communicate with counsel because of email communications]. |
| 10/05/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Communicate with clerk of the court for best method to seal or replace exhibit with redacted version. |
| 10/05/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | [Redacted] [Analysis and strategy regarding response to Kibbe letter addressing issue of exhibits lodged in support of anti-SLAPP motion]. |
| 10/05/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Telephone conference with clients T. Breen and J. Hailey re: response to letter from attorney Kibbe raising objection to exhibits lodged in support of anti-SLAPP motion. |
| 10/05/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Draft and circulate proposed response letter of attorney Shaughnessy to letter from attorney Kibbe, offering joint motion to seal exhibit T. |
| 10/05/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Prepare revised and redacted version of Exhibit T. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 10/09/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Review of online docket report for active case and review prior order striking Complaint and granting leave to amend. |
| 10/09/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Research issue of plaintiff's right to file amended pleading once as a matter of right following first order striking original complaint and granting leave to amend. |
| 10/09/17 | RMS | 1.80 | $ 230.00 | $ 414.00 | Research and analysis re best way to proceed with fees issue arising from anti-SLAPP motion in light of filing of Second Amended Complaint. |
| 10/09/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Further analysis re best response to filing of Second Amended Complaint and re likely response of Welk to anti-SLAPP motion in light of filing of amended pleading. |
| 10/10/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Review letter responding to offer to stipulate to sealing of Exhibit T and filing of redacted public version and follow [redacted] [and follow up re same]. |
| 10/10/17 | RMS | 1.20 | $ 230.00 | $ 276.00 | Review and analyze allegations of Second Amended Complaint, including RICO and conspiracy allegations. |
| 10/11/17 | GAH | 0.90 | $ 240.00 | $ 216.00 | Prepare civil conspiracy section for 12(b)(6) and anti-SLAPP motions, including legal research for same. |
| 10/12/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Follow up communication with counsel for Welk re: stipulation to seal Exhibit T. |
| 10/13/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Draft special motion to strike Second Amended Complaint. |
| 10/13/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft Notice of Lodgment of Documents in Support of special motion to strike second amended complaint |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 10/13/17 | RMS | 1.10 | $ 230.00 | $ 253.00 | Draft Request for Judicial Notice of Documents in Support of Motion to Dismiss and Special Motion to Strike Second Amended Complaint. |
| 10/13/17 | RMS | 1.10 | $ 230.00 | $ 253.00 | Draft declaration of attorney R. Shaughnessy in support of motion to dismiss and special motion to strike Second Amended Complaint. |
| 10/13/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Communicate with attorney Greg Lee to discuss coordinating of briefing as required by departmental rules where defendants seek similar relief. |
| 10/13/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Draft proposed order granting stipulated joint motion to seal Exhibit T |
| 10/13/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft stipulation and joint motion to seal Exhibit T. |
| 10/13/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | [Redacted] [provide further] analysis and input on joint motion and stipulation to seal Exhibit T. |
| 10/16/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Further draft declaration of T. Breen in support of special motion to strike Second Amended Complaint. |
| 10/16/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Research and analysis re failure of SAC to note language in Amendment to KBP Agreement stating that clients were timeshare owners, including research re disregard of allegations contradicted by attached and referenced documents. |
| 10/16/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Telephone conference with Greg Lee re meeting and conferring over Motion to Dismiss and anti-SLAPP motion as well as coordinating briefing and hearing dates. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 10/16/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Further review and analysis re: failure of Welk to allege facts consistent with KBP Agreement regarding timeshare owners as clients, and failure of Welk to allege facts consistent with attached Timeshare Exit agreement noting that timeshare owner had continuing obligation to pay timeshare fees and association dues and assessments until exit was final. |
| 10/16/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Draft detailed declaration of T. Breen in support of special motion to strike Second Amended Complaint. |
| 10/16/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | Receive and review Welk's non-opposition to special motion to strike. |
| 10/16/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | Complete preparation of declaration of T. Breen in support of special motion to strike. |
| 10/16/17 | HLR | 0.90 | $ 240.00 | $ 216.00 | Further analysis of second amended complaint and allegations therein, in anticipation of new motion to dismiss and anti-SLAPP motion. |
| 10/16/17 | HLR | 0.30 | $ 240.00 | $ 72.00 | [Redacted] [Analysis re] new motion to dismiss and anti-SLAPP motion, with timing, and commentary on position taken by Welk in arbitration. |
| 10/16/17 | HLR | 0.30 | $ 240.00 | $ 72.00 | Further attention to new motion to dismiss and new anti-SLAPP motion, light of revised allegations in second amended complaint (.3 of .6 at no charge). |
| 10/17/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Begin damages analysis of Cholakian theory, prepare possibilities and structure necessary follow-up research. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 10/17/17 | RMS | 2.60 | $ 230.00 | $ 598.00 | Outline and draft memorandum of points and authorities in support of special motion to strike Second Amended Complaint (Cal. Civ. Code sec. 425.16), including introduction and detailed statement of facts. |
| 10/17/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | [Redacted] [Further analysis regarding new motion to strike and supporting declarations]. |
| 10/17/17 | RMS | 1.20 | $ 230.00 | $ 276.00 | Revise argument in support of anti-SLAPP motion to address revisions to pleadings to exclude reference to "demand" letters, and revise brief to address failure of Welk to plead facts acknowledging statements contained within attached exhibits that are contrary to allegations in pleading. |
| 10/18/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Extensive meet and confer discussion to address coordinating of dates for hearing on 12(b)(6) motions to dismiss and anti-SLAPP motion, and to coordinate briefing to avoid duplication. |
| 10/18/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Review and edit [redacted] declaration of T. Breen in support of anti-SLAPP motion to strike Second Amended Complaint. |
| 10/18/17 | HLR | 0.50 | $ 240.00 | $ 120.00 | Further attention to draft motion and attendant strategy considerations. |
| 10/19/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Review and revise and finalize request for judicial notice in support of 12(b)(6) motion to dismiss and 425.16 special motion to strike. |
| 10/19/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Review and revise and finalize declaration of R. Shaughnessy in support of 12(b)(6) motion to dismiss and anti-SLAPP motion to strike Second Amended Complaint. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 10/19/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Follow up [redacted] re: finalizing T. Breen declaration supporting motion to strike Second Amended Complaint. |
| 10/19/17 | RMS | 1.60 | $ 230.00 | $ 368.00 | Draft reply to non-opposition to special motion to strike First Amended Complaint addressing prevailing party and attorneys' fees issues. |
| 10/19/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Review and revise and finalize notice of lodgment of documents in support of special anti-SLAPP motion to strike the Second Amended Complaint. |
| 10/19/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Review, revise, and finalize notice of motion and special motion to strike second amended complaint. |
| 10/19/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Follow up [redacted] re: declaration supporting anti-SLAPP motion to strike Second Amended Complaint. |
| 10/20/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review and revise and finalize memorandum of points and authorities in support of special motion to strike Second Amended Complaint. |
| 10/20/17 | RMS | 1.20 | $ 230.00 | $ 276.00 | Further analysis re: reply in support of fees and costs incurred in bringing special motion to strike first amended complaint, and review and revise and finalize reply in support of attorneys' fees and costs. |
| 10/20/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Draft proposed order granting special anti-SLAPP motion to strike Second Amended Complaint. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 10/20/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review, revise, and finalize all papers in support of anti-SLAPP motion to dismiss Second Amended Complaint, including notice and motion, points and authorities, T. Breen declaration, R. Shaughnessy declaration, notice of lodgment, and request for judicial notice. |
| 10/20/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Further review and revise proposed stipulation and joint motion to seal, and proposed order to seal exhibit T. |
| 10/20/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Exchange of further emails with opposing counsel regarding further revisions to joint motion to seal Exhibit T. |
| 10/20/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Revise proposed stipulation to seal Exhibit T, revise proposed joint motion to seal, and revise proposed order granting joint motion to seal Exhibit T. |
| 10/20/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Complete and revise joint motion to seal and order thereon. |
| 10/20/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | Complete reply in support of first anti-SLAPP motion. |
| 10/23/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review and revise and finalize joint stipulation and motion to seal Exhibit T. |
| 10/23/17 | RMS | 0.10 | $ 230.00 | $ 23.00 | Review, revise, and finalize proposed order sealing exhibit T. |
| 10/23/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Exchange of emails with Attorney M. Kibbe to obtain written permission to file joint stipulation and motion to seal Exhibit T. |
| 10/24/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Review and revise joint motion to seal Exhibit T to comply with joint motion and stipulation local rules and procedures. |
| 10/26/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | Receive and review notice from court re: rejection of Welk briefing. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 10/26/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Review and analyze order from court rejecting Welk's request to file sur-reply brief in opposition to special motion to strike first amended complaint. |
| 10/30/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Analysis of court order sealing Exhibit T to first motion to strike and its impact on ability to file redacted exhibits revealing communications from Welk related to settlement communications between counsel in response to allegations against SGB raised in Welk Complaint. |
| 11/07/17 | HLR | 0.40 | $ 240.00 | $ 96.00 | Preliminary review of opposition to anti-SLAPP. |
| 11/07/17 | RMS | 1.40 | $ 230.00 | $ 322.00 | Research regarding argument in opposition that litigation privilege does not support communication that is alleged to be fraudulent, unethical, or even illegal.  (Overruling Carney v. Rotkin relied upon by Welk) |
| 11/07/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Legal research regarding Welk's claim that issue of good faith filing of litigation is a question of fact that cannot be resolved at the pleading stage. |
| 11/07/17 | RMS | 1.60 | $ 230.00 | $ 368.00 | Research regarding issue of whether federal court considering anti-SLAPP motion may strike pleading where plaintiff fails to present any evidence to support its claims, or to support an argument for leave to take discovery. |
| 11/07/17 | GAH | 0.70 | $ 240.00 | $ 168.00 | Receive, review and analysis of oppositions to pending motions, conference with R. Shaughnessy regarding strategy for reply. |
| 11/07/17 | RMS | 1.10 | $ 230.00 | $ 253.00 | Outline and begin drafting reply memorandum of points and authorities in support of special motion to strike second amended complaint. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 11/07/17 | RMS | 1.70 | $ 230.00 | $ 391.00 | Research issue of litigation privilege requiring voiced threat of good faith litigation in communication for privilege to apply. |
| 11/07/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Review and analyze arguments in Welk's papers filed in opposition to special motion to strike, including objections to request for judicial notice, objections to lodged documents, and objections to declaration of T. Breen. |
| 11/08/17 | RMS | 3.10 | $ 230.00 | $ 713.00 | Further draft and revise reply memorandum in support of special motion to strike second amended complaint. |
| 11/08/17 | RMS | 2.40 | $ 230.00 | $ 552.00 | Further outline and draft reply memorandum of points and authorities in support of special motion to strike second amended complaint. |
| 11/08/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Review and analysis of arguments outline, revisions to same. |
| 11/09/17 | RMS | 1.40 | $ 230.00 | $ 322.00 | Draft reply argument that litigation privilege applies and distinguishing case law cited by Welk in opposition to the litigation privilege. |
| 11/09/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft reply argument that Welk failed to meet its burden under anti-SLAPP law by presenting evidence, or otherwise showing that discovery was necessary to defeat the motion. |
| 11/09/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | Draft reply argument responding to claim that Privett agreement with Reed Hein evidenced SGB's inability to directly represent Welk timeshare owners. |
| 11/09/17 | RMS | 1.10 | $ 230.00 | $ 253.00 | Further draft reply argument addressing claims by Welk that evidence lodged in support of motion related to clients who were not also clients of Reed Hein. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 11/09/17 | RMS | 1.70 | $ 230.00 | $ 391.00 | Draft reply brief argument that burden to show false statement regarding representation of Welk timeshare owners is plaintiff's burden under second step of anti-SLAPP law analysis and not the burden of the moving defendant to disprove. |
| 11/09/17 | RMS | 1.80 | $ 230.00 | $ 414.00 | Further research regarding step one analysis for application of anti-SLAPP law, including review of case law cited by Welk in opposition to argument that lawsuit arises from petitioning and speech activity. |
| 11/10/17 | RMS | 2.80 | $ 230.00 | $ 644.00 | Further draft reply brief in support of anti-SLAPP motion to strike. |
| 11/10/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Revise supplemental declaration of T. Breen [redacted]. |
| 11/10/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | [Redacted] [Further analysis regarding] supplemental declaration language and input. |
| 11/10/17 | RMS | 0.80 | $ 230.00 | $ 184.00 | Draft and circulate proposed supplemental declaration of T. Breen in support of special anti-SLAPP motion to strike. |
| 11/10/17 | GAH | 0.60 | $ 240.00 | $ 144.00 | Continue preparation of reply in support of anti-SLAPP. |
| 11/10/17 | GAH | 0.30 | $ 240.00 | $ 72.00 | [Redacted] [Further analysis and preparation of supplemental T. Breen declaration]. |
| 11/10/17 | RMS | 1.80 | $ 230.00 | $ 414.00 | Further draft reply brief, including discussion of facts related to filing of three California actions and showing falsity of Welk's assertion that SGB had no prior connection to Welk timeshare plaintiffs. |
| 11/12/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | [Redacted] [Further analysis and preparation of Reply brief and Breen reply declaration]. |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 11/13/17 | GAH | 0.40 | $ 240.00 | $ 96.00 | Complete reply in support of anti-SLAPP motion, [redacted]. |
| 11/13/17 | RMS | 2.90 | $ 230.00 | $ 667.00 | Further review and revise and finalize Reply memorandum in support of special anti-SLAPP special motion to strike second amended complaint [redacted]. |
| 11/13/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | [Redacted] [F]inalize supplemental Breen declaration in support of motion to strike second amended complaint. |
| 11/13/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Follow up discussion with co-defendants regarding the coordination of reply briefing in accordance with local department rule. |
| 11/13/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Review and finalize supplemental Breen declaration and follow regarding obtaining signature copy for filing. |
| 11/16/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Review orders from Judge Lorenz striking motion to dismiss and anti-SLAPP motion to strike, striking oppositions to motion to dismiss and anti-SLAPP motion to strike, and striking responses to oppositions to motions to strike SAC. |
| 11/16/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Telephone conference with law clerk for Judge Lorenz to address orders striking motion to dismiss and special anti-SLAPP motion to strike SAC. |
| 11/17/17 | RMS | 1.60 | $ 230.00 | $ 368.00 | Draft declaration of attorney Shaughnessy in support of ex parte application for leave to re-file 12(b)(6) and anti-SLAPP motions. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 11/17/17 | RMS | 2.70 | $ 230.00 | $ 621.00 | Draft ex parte application for leave to re-file 12(b)(6) and anti-SLAPP motions for hearing on separate dates, or in the alternative, with combined memorandum of points and authorities. |
| 11/17/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Exchange of communications with counsel for Reed Hein regarding joint defense strategy for moving court for leave to re-file motions to dismiss and strike. |
| 11/20/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Consider best strategy for seeking order allowing re-filing of both 12(b)(6) and anti-SLAPP motions. |
| 11/21/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Further consideration of strategy for re-filing anti-SLAPP motion and 12(b)(6) motion to dismiss or filing Answer with affirmative defenses in the alternative. |
| 11/21/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Review Welk plaintiffs' opposition to ex parte application for leave to re-file 12(b)(6) and anti-SLAPP motions. |
| 11/21/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Draft combined memorandum of points and authorities in support of anti-SLAPP motion to strike Second Amended Complaint. |
| 11/21/17 | RMS | 1.00 | $ 230.00 | $ 230.00 | Further preparation of combined memorandum of points and authorities in support of 12(b)(6) motion and anti-SLAPP motion to strike. |
| 11/21/17 | RMS | 2.90 | $ 230.00 | $ 667.00 | Further preparation of combined memorandum of points and authorities in support of 12(b)(6) and anti-SLAPP motions. |
| 11/22/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | [Redacted] Analysis and [redacted] strategy regarding re-filing of motions to include arbitration award. |

## Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 11/22/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Further analysis of arbitration award and consider strategy for adding the award as an additional exhibit to motion to dismiss and/or anti-SLAPP motion. |
| 11/22/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | [Redacted] [Further analysis and strategy consderation regarding] use of arbitration award in connection with anti-SLAPP motion. |
| 11/22/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Review and analyze order granting ex parte application to re-file 12(b)(6) and anti-SLAPP motions. |
| 11/22/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Further consideration and analysis regarding] using arbitration ruling, [redacted]. |
| 11/24/17 | HLR | 0.40 | $ 240.00 | $ 96.00 | Review of court ruling allowing refiling of motions and assessment regarding new timing. |
| 11/27/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Telephone call with Attorney Lee regarding coordinating memoranda of points and authorities in accordance with court order and local rules. |
| 11/27/17 | RMS | 0.20 | $ 230.00 | $ 46.00 | Further [redacted] [consider] strategy and procedure for filing of revised motion to dismiss and motion to strike. |
| 11/27/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Revise Notice of Motion and Motion to Strike Second Amended Complaint per Cal. Anti-SLAPP Law, to comply with court order of November 22, 2017. |
| 11/27/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Review and revise Request for Judicial Notice to comply with Refiling order of November 22, 2017. |
| 11/27/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Review and revise Notice of Lodgment to add arbitration award as exhibit, and to comply with November 22, 2017 Refiling |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| | | | | | order. |
| 11/27/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Further analysis and strategy consideration regarding re-filing of joint memorandum to comply with court order, Rules of Court, and standing order for civil litigation cases. |
| 11/27/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Review and revise declaration of T. Breen to update facts for filing of revised memorandum of points and authorities, including representation of Reed Hein customers, successful arbitration award, and findings of fact. |
| 11/28/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Additional coordination of briefing with Reed Hein mandated by Standing Order and Rules of Court, to comply with court's request that briefing does not overlap. |
| 11/28/17 | RMS | 1.10 | $ 230.00 | $ 253.00 | Further review and revise declaration of T. Breen in support of revised anti-SLAPP motion to strike. |
| 11/28/17 | RMS | 2.80 | $ 230.00 | $ 644.00 | Further review and revise combined memorandum of points and authorities in support of anti-SLAPP motion to strike and 12(b)(6) motion to dismiss to comply with joint briefing requirements and to comply with standing order regarding duplicative briefing of issues. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 11/28/17 | RMS | 0.60 | $ 230.00 | $ 138.00 | Review and revise documents supporting special anti-SLAPP motion to strike and 12(b)(6) motion to dismiss, including notices and motions, requests for judicial notice, declarations of T. Breen and R. Shaughnessy, and joinder, to comply with Court clerk's additional local notice requirements for motions briefed in accordance with special scheduling order. |
| 11/28/17 | RMS | 0.40 | $ 230.00 | $   92.00 | Telephone conference call with clerk of the court and co-defendant's counsel regarding coordinating briefing and procedural requirements related to special set briefing schedule. |
| 11/28/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Review and revise combined memorandum of points and authorities regarding arbitration award. |
| 11/29/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Review and revise combined memorandum of points and authorities to further address arbitration issues, and to further address and re-cast legal argument as factual argument arising from legal conclusion in Welk's pleadings that SGB does not represent Welk owners. |
| 11/29/17 | RMS | 0.50 | $ 230.00 | $ 115.00 | Further review and revise T. Breen declaration consistent with changes to combined memorandum of points and authorities. |
| 11/29/17 | GAH | 0.70 | $ 240.00 | $ 168.00 | Continue preparation of combined points and authorities in support of anti-SLAPP and 12(b)(6) motions. |
| 12/01/17 | RMS | 1.00 | $ 230.00 | $ 230.00 | [Redacted] Consider additional proposed changes and edits to combined brief]. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 12/01/17 | RMS | 0.90 | $ 230.00 | $ 207.00 | [Further ] [r]eview and revise combined memorandum of points and authorities in support of motion to dismiss and motion to strike, [redacted]. |
| 12/02/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | [Redacted] [C]oordinate finalizing declaration and points and authorities. |
| 12/04/17 | RMS | 0.30 | $ 230.00 | $ 69.00 | Communications with attorney G. Lee to coordinate briefing of SGB motion to dismiss with motion filed by co-Defendant Reed Hein [as required by local rules]. |
| 12/04/17 | RMS | 2.60 | $ 230.00 | $ 598.00 | [Redacted] [Further] coordinate finalizing briefs, supporting declarations, and exhibits in support of motion to dismiss and anti-SLAPP motion to strike. |
| 12/04/17 | RMS | 3.80 | $ 230.00 | $ 874.00 | Review and revise memorandum of points and authorities to blend in additional proposed edits [redacted]. |
| 12/12/17 | RMS | 0.70 | $ 230.00 | $ 161.00 | Research issue of process of appealing from order on anti-SLAPP motion in federal district court, where motion granted in part. |
| 12/15/17 | RMS | 2.10 | $ 230.00 | $ 483.00 | Review memorandum of points and authorities in opposition to motion to dismiss and anti-SLAPP motion. |
| 12/16/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Review evidence presented in opposition to anti-SLAPP motion, including Wells declaration and voluminous attached exhibits, Breen declaration references, and declaration of Dominic Peterson. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 12/16/17 | RMS | 2.10 | $ 230.00 | $ 483.00 | Analysis re: response to evidence offered in opposition to anti-SLAPP motion, including response and objections to Peterson and Wells declarations and voluminous documents attached to Wells declaration. |
| 12/16/17 | RMS | 1.30 | $ 230.00 | $ 299.00 | Outline and draft objections to declarations of D. Peterson and C. Wells. |
| 12/17/17 | RMS | 0.40 | $ 230.00 | $ 92.00 | Further preparation of objections to declarations of D. Peterson and C. Wells. |
| 12/17/17 | RMS | 1.90 | $ 230.00 | $ 437.00 | Further analysis of arguments presented by Welk in opposition to anti-SLAPP and 12(b)(6) motions, including false assertion that SGB did not actually represent non-settling and/or non-litigation clients, assertion that Reed Hein prevented clients from communicating with counsel, and argument that agreement between Reed Hein and Privett showed lack of ability to represent Welk timeshare owners. |
| 12/17/17 | RMS | 2.90 | $ 230.00 | $ 667.00 | Draft joint reply brief in support of Rule 12(b)(6) motion to dismiss and anti-SLAPP motion to strike, including introduction, Anti-SLAPP step one analysis (arising from protected conduct); response to evidence in opposition; and step two analysis (Welk not likely to prevail). |
| 12/17/17 | RMS | 1.60 | $ 230.00 | $ 368.00 | Outline joint reply brief in support of Rule 12(b)(6) motion to dismiss and anti-SLAPP motion to strike. |
| 12/18/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Coordinate with clients to prepare reply briefing]. |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 12/18/17 | GAH | 2.90 | $ 240.00 | $ 696.00 | Continue preparation of reply in support of anti-SLAPP and 12(b)(6). |
| 12/18/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |
| 12/19/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |
| 12/19/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |
| 12/19/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Prepare declaration of T. Breen. |
| 12/19/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | Begin preparation of supporting documents and exhibits for reply. |
| 12/19/17 | GAH | 2.20 | $ 240.00 | $ 528.00 | Continue preparation of reply in support of 12(b)(6) and anti-SLAPP motions. |
| 12/20/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |
| 12/21/17 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |
| 12/21/17 | GAH | 0.30 | $ 240.00 | $ 72.00 | [Redacted] [Review and revise reply memorandum]. |
| 12/21/17 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Further analysis regarding revisions to reply memorandum]. |
| 12/22/17 | GAH | 1.00 | $ 240.00 | $ 240.00 | Complete reply in support of anti-SLAPP and 12(b)(6). |
| 01/10/18 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Further coordinate with clients to prepare reply briefing]. |

# Klinedinst PC

## Billed Fees Related to anti-SLAPP Motion

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| 01/30/19 | RMS | 0.40 | $ 230.00 | $ 92.00 | Analysis and strategy consideration regarding response to notice of related rulings, including outline for possible response and objection. |
| 01/30/19 | HLR | 0.20 | $ 240.00 | $ 48.00 | Review of attempt by Welk to influence Southern District Court with orders from the Westgate Resorts v. Reed Hein and Orange Lake Country Club v. Reed Hein cases and analysis of need for potential objection. |
| 01/30/19 | RMS | 0.70 | $ 230.00 | $ 161.00 | Review and analyze notice of related rulings filed by plaintiff's counsel in connection with pending motion to dismiss and anti-SLAPP motion to dismiss; review three detailed rulings on two 12(b) motions to dismiss and one summary judgment motion. |
| 01/31/19 | GAH | 0.20 | $ 240.00 | $ 48.00 | Review and revise objection to notice of related decisions. |
| 01/31/19 | GAH | 0.20 | $ 240.00 | $ 48.00 | [Redacted] [Client input] re: notice of related decisions, [redacted]. |
| 01/31/19 | RMS | 0.70 | $ 230.00 | $ 161.00 | Further analysis of Notice of Related Rulings, including analysis of arguments presented by Welk that all three rulings are related to the present case. |
| 01/31/19 | RMS | 1.70 | $ 230.00 | $ 391.00 | Draft detailed response and objections to Notice of Related Rulings. |
| 01/31/19 | RMS | 0.80 | $ 230.00 | $ 184.00 | Further analysis of voluminous rulings claimed by Welk to be "related" to SGB's pending anti-SLAPP motion. |
| 01/31/19 | RMS | 0.30 | $ 230.00 | $ 69.00 | [Redacted] [Client input regarding] response and objections to Notice of Related Rulings. |
| | | 213.00 | | $ | |

**Klinedinst PC**

**Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|------|------|-------|------|--------|-----------|
| | | | | 49,276.00 | |
| | | | | | |
| | | | | | |
| Average hourly rate: | | | $ 232.57 | | |

# EXHIBIT C

**Exhibit C**
**Page 73**

**Klinedinst PC**

**Incurred Un-Billed Fees Related to anti-SLAPP Motion**

| Date | Tmkr | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|
| 02/04/19 | RMS | 0.20 | $ 230.00 | $ 46.00 | [Redacted] [client input re:] [redacted] objections to notice of related rulings. |
| 02/04/19 | RMS | 0.90 | $ 230.00 | $ 207.00 | Review and revise and finalize objections to notice of related rulings. |
| 02/04/19 | GAH | 0.10 | $ 240.00 | $ 24.00 | [Redacted] [further client input re:] objection[s] [redacted]. |
| 02/06/19 | RMS | 0.20 | $ 230.00 | $ 46.00 | Review court order sustaining SGB's objections and striking Plaintiff's Notice of Related Rulings. |
| 02/06/19 | GAH | 0.10 | $ 240.00 | $ 24.00 | Receive and review order rejecting supplemental briefing, [redacted]. |
| 03/06/19 | RMS | 0.20 | $ 230.00 | $ 46.00 | Analysis of court's order in response to objection to notice of related decisions. |
| 03/18/19 | RMS | 0.40 | $ 230.00 | $ 92.00 | Review and analysis of order granting special anti-SLAPP motion to strike, and dismissing entire action against client SGB. |
| 03/18/19 | RMS | 0.40 | $ 230.00 | $ 92.00 | Analysis regarding right to recover attorneys' fees as prevailing party under California law, (Cal. Code Civ. Proc. sec. 425.16(c)), in federal action arising under diversity jurisdiction. |
| | | | | | |
| | | | **TOTAL** | **$ 577.00** | |

# EXHIBIT D

# Klinedinst PC

## Costs Incurred Related to anti-SLAPP Motion

| Date | Amount | Narrative |
|---|---|---|
| 08/17/17 | $ 1.00 | Copy (BW) |
| 08/17/17 | $ 0.20 | Copy (BW) - P |
| 09/01/17 | $ 24.04 | Cost advanced to San Diego County Superior Court for copies of complaint on 09/06/2017. vs. |
| 09/15/17 | $ 9.00 | Copy (BW) |
| 09/27/17 | $ 0.20 | Copy (BW) |
| 10/01/17 | $ 43.10 | Cost advanced to San Diego Superior for obtaining complaints on 09/12/2017. vs. |
| 10/01/17 | $ 33.08 | Cost advanced to San Diego Superior for obtaining complaints on 09/12/2017. vs. |
| 10/05/17 | $ 0.20 | Copy (BW) |
| 10/17/17 | $ 30.00 | Cost Advanced to Cal Express for filing of documents at USDC Southern District on 10/02/2017. |
| 10/19/17 | $ 18.80 | Cost Advanced to Pacer for public access to court usage from 07/01-09/30/17. |
| 12/18/17 | $ 24.00 | Cost Advanced to Cal Express for filing documents at USDC on 12/05/2017. |
| | | |
| **TOTAL** | **$ 183.62** | |

# EXHIBIT E

**Klinedinst**

# Robert M. Shaughnessy

## Shareholder

**Robert M. Shaughnessy** is a seasoned litigator based out of the San Diego office. As Shareholder, Mr. Shaughnessy dedicates his practice to all aspects of business litigation, with a special emphasis in civil appeals. He brings nearly twenty years of complex law-and-motion and appellate experience to the firm's Appellate Practice Group and is knowledgeable in a variety of practice areas. Mr. Shaughnessy counsels clients on matters including unfair competition, false advertising, trade secret misappropriation, employment issues, invasion of privacy, director and officer liability, real property law, and trust disputes.

Mr. Shaughnessy, who has achieved Martindale's highest AV®-Preeminent™ rating, represents clients in all phases of litigation from the outset of a case through trial, judgment, and the appeal process. He has extensive administrative hearing experience, having represented clients in numerous county government proceedings. Mr. Shaughnessy's law and motion experience allows him to successfully resolve many cases early in the litigation process, saving clients the time and expense of a trial. His significant appellate experience allows him to protect a client's successful trial-court outcome on appeal, or to spot appellate issues and obtain relief when a trial court ruling unfairly prejudices a client's case.

Mr. Shaughnessy authors articles on various legal topics including the unauthorized practice of law, malicious prosecution, the Unfair Competition Law, and California's Anti-SLAPP statute. He is a leader in the legal community. He serves as Chair of the San Diego County Bar Association's (SDCBA) Appellate Practice Section, where he has held past positions as Program Chair and Civil Rules Comment Chair. Mr. Shaughnessy is also an an appellate attorney volunteer for pro per appellants and provides procedural guidance for SDCBA's Pro Bono Appellate Practice Workshop. He is a founding member of the San Diego Appellate Inn of Court, where he holds the rank of Barrister. Mr. Shaughnessy also serves as the Senior Membership Chair for the San Diego Chapter of the Association of Business Trial Lawyers (ABTL). Outside of the legal community, Mr. Shaughnessy serves as Board Member to No Limits Limb Loss Foundation and is a member of several non-profit organizations.

Mr. Shaughnessy earned his Juris Doctor from the California Western School of Law, where he graduated in the top 15th percentile of his class. He graduated *cum laude* with a Bachelor of Arts degree in Communication from California State University, San Bernardino.

**Exhibit E**
**Page 78**

## Education

- California State University, San Bernardino (B.A., *cum laude*)

- California Western School of Law (J.D.)



## Contact

**San Diego**
619.239.8131
619.238.8707 Fax

**Email**
RShaughnessy
@KlinedinstLaw.com

## Admissions

- California
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- United States Court of Appeals for the Eighth Circuit
- United States Court of Appeals for the Ninth Circuit
- Supreme Court of the United States of America

## Practice Groups

- Appellate
- Public Entity

**Exhibit E**
**Page 79**

# EXHIBIT F

**Klinedinst**

# Heather L. Rosing

## Chief Financial Officer, Shareholder

**Heather L. Rosing** serves as the Chairperson of the Professional Liability Department, working with a team of Klinedinst lawyers across the state in the defense of professionals such as lawyers and accountants. Ms. Rosing has developed a nationwide reputation for her experience and skill in litigating complex malpractice, fraud cases, and D&O matters, and in advising in the areas of ethics and risk management. Ms. Rosing also serves as a consultant and expert witness in the areas of fee disputes, professional responsibility, privileges, and attorney duties.

For approximately a decade, Ms. Rosing has also represented judges and commissioners in matters before the Commission on Judicial Performance and advised judicial officers on matters pertaining to judicial ethics.

Ms. Rosing is certified as a specialist in Legal Malpractice Law by the State Bar of California Board of Legal Specialization. Ms. Rosing has represented numerous lawyers and other professionals in hundreds of cases and matters in State Court, Federal Court, and arbitration proceedings. Her track record includes notable victories, both by way of motion and at trial.

In addition to serving as the Department Chairperson, Ms. Rosing has served as the Chief Financial Officer since 2006. As a member of the Klinedinst Board of Directors and Executive Committee, she also serves as one of the managing attorneys of the 130 employee firm, and previously served as the firm's General Counsel.

Rated AV®-Preeminent™ by Martindale since 2000, Ms. Rosing has been honored with numerous accolades for her work in ethics and professional liability defense. Ms. Rosing donates much of her time to speaking and teaching free of charge on ethics, professionalism, and malpractice across the state and county.  In 2009, Ms. Rosing also was appointed to the American Bar Association's Standing Committee on Lawyers' Professional Liability, and chaired its bi-annual conference in September 2009 in Chicago and in September 2013 in San Diego.

Ms. Rosing currently serves as President of the California Lawyers Association, which strives to promote professional advancement of attorneys practicing in California. In addition, Ms. Rosing also serves as President of the Board of Directors of the California Bar Foundation, which works to improve access to justice for the underserved and under-represented in California.

**Exhibit F**
**Page 81**

Ms. Rosing served on the Board of Trustees of the State Bar of California for four years. In addition to serving as an officer for two years, she chaired the Planning and Budget Committee and the Regulations and Discipline Committee. Ms. Rosing served for six years on the Board of Directors of the San Diego County Bar Association (SDCBA), a 10,000 member organization. In 2008, she served as its President, spearheading a countywide campaign to highlight civility and professionalism in the practice of the law. Her service on the Board of Directors was preceded by two years as the co-chairperson of the SDCBA's Legal Ethics Committee. She also volunteered her time to lead a SDCBA committee to establish a pro bono program to assist San Diego's active duty military personnel under the Servicemembers Civil Relief Act. It is one of the first of its kind in the country. For her work on behalf of the organization, it honored her with its "Service to the SDCBA" Award in 2012.

Ms. Rosing also previously served on the board of directors of the San Diego Volunteer Lawyer Program. She co-chaired the organization's first ever LAF-Off in 2007, and co-chaired the event through its conclusion in 2013. She is also active in Lawyers Club of San Diego, having served as the golf tournament chairperson and newsletter editor.

Born in Chicago, Ms. Rosing attended the University of Illinois and Northwestern University School of Law, where she served as president of the Student Bar Association. She has been licensed to practice law in California since 1996, and in Illinois since 1997.

## Education

- University of Illinois (B.S., 1993)

- Northwestern University School of Law (J.D., 1996)

## Contact

**San Diego**
619.239.8131
619.238.8707 Fax

**Los Angeles**
213.406.1100
213.406.1101 Fax

**Email**
hrosing
@KlinedinstLaw.com

**Exhibit F**
**Page 82**



## Admissions

- California (1996)
- Supreme Court of Illinois (1997)
- U.S. Bankruptcy Court, Southern and Central Districts of California (1996)
- U.S. Court of Appeals for the Ninth Circuit (2012)
- U.S. District Court, Central District of California (1998)
- U.S. District Court, Eastern District of California (2007)
- U.S. District Court, Northern District of California (2011)
- U.S. District Court, Southern District of California (1997)

## Practice Groups

- Business and Commercial Litigation
- Lawyers and Accountants
- Legal Ethics and Law Firm Risk Management

**Privacy** | **Contact**

Copyright © 2019 KLINEDINST PC. All rights reserved.

# EXHIBIT G

**Klinedinst**

# Gregor A. Hensrude

## Managing Shareholder

As managing shareholder of Klinedinst's Seattle office, **Gregor Hensrude** focuses his practice on the representation of companies and professionals. For corporate clients, Mr. Hensrude serves as a front-line resource for making smart business decisions incorporating liability concerns with traditional business models. For professionals and companies, Mr. Hensrude serves as an experienced litigator and trial lawyer.

Mr. Hensrude's transactional practice includes standard services like negotiating contracts and managing intellectual property, but also includes major acquisitions, working with administrative agencies, and how-to advice on employment, financing, real estate, and antitrust issues. As examples of that diversity, Mr. Hensrude has successfully extricated a founder from a company in a collegial way during challenging circumstances, negotiated the purchase of a multi-million-dollar patent portfolio, and set up a pricing policy for a manufacturer to comply with antitrust law. Mr. Hensrude's clients are generally closely-held companies that have exited the start-up phase but are still growing rapidly.

Like the scope of his services on the counseling side, Mr. Hensrude prides himself on being a "cradle to grave" litigator. He has personally completed every aspect of litigation from filing a complaint or answer to litigating before courts of appeal, but generally manages small teams to win cases through all of those means. Mr. Hensrude has tried cases to judges and juries in state and federal courts, and has argued many appeals before state and federal courts of appeal. He has litigated over one hundred legal malpractice actions, as well as defended many claims against other kinds of professionals, including real estate brokers, accountants, and those in the financial services industry.  Mr. Hensrude has also litigated intellectual property disputes, real estate matters, breach of contract claims, employment-related cases, and many other kinds of business disputes. Those matters have ranged from small collections claims up to class actions and claims involving tens of millions of dollars in alleged damages. While Mr. Hensrude most often ends up on the defense side, where he has obtained judgments on behalf of clients in many cases, he has also litigated corporations' affirmative claims to jury verdict and seven figure settlements.

## Education

- Western Washington University (B.A., 2000)

**Exhibit G**
**Page 85**

- University of Washington School of Law (J.D., 2003)

## Contact

**Seattle**
206.682.7701
206.682.7449 Fax

**San Diego**
619.239.8131
619.238.8707 Fax

**Email**
GHensrude
@KlinedinstLaw.com



## Admissions

- Washington
- California
- District of Columbia
- United States Court of Appeals for the Federal Circuit
- United States Court of Appeals for the Ninth Circuit
- United States District Court, Central, Eastern and Southern Districts of California
- United States District Court, Eastern and Western Districts of Washington

## Practice Groups

- Business and Commercial Litigation
- Employment Counseling and Advice
- Employment Litigation
- Intellectual Property
- Lawyers and Accountants
- Real Estate Professionals
- Workplace Investigations

Privacy | Contact

Copyright © 2019 KLINEDINST PC. All rights reserved.

**Exhibit G**
**Page 86**