# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELK RESORT GROUP, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>REED HEIN & ASSOCIATES, LLC dba TIMESHARE EXIT TEAM, *et al.*,<br><br>Defendants. | Case No. 3:17-cv-01499-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SCHROETER GOLDMARK AND BENDER'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Pending before the Court in this action for interference with timeshare contracts is a motion for attorneys' fees filed by Defendant Schroeter Goldmark and Bender ("Schroeter"). Schroeter prevailed on its special motion to strike pursuant to California Civil Procedure Code § 425.16 ("Anti-SLAPP Motion"), which resulted in the dismissal of all claims alleged against Schroeter. (*See* doc. no. 80 ("Anti-SLAPP Order") at 36.) Schroeter requests attorneys' fees in the sum of $170,212.50 and costs in the sum of $182.62 pursuant to § 425.16(1)(c). Plaintiffs Welk Resort Group, Inc. and Welk Resorts Platinum Owners Association (collectively, "Welk") filed an opposition. Schroeter replied. For the reasons stated below, Schroeter's motion is granted.

With exceptions not applicable here, California Civil Procedure Code § 425.16(1)(c) provides for "mandatory attorney fees" to a defendant who prevails

on an anti-SLAPP motion. *Ketchum v. Moses,* 24 Cal.4th 1122, 1131 (2001); *see also id.* at 1141-42.[1] The lodestar method applies to the calculation of the fee award. *See id.* at 1131-36, 1140; *see also PLCM Group v. Drexler,* 22 Cal.4th 1084, 1095 (2000). The lodestar method entails multiplying the reasonable hourly rate by the reasonable number of hours. *Id.*

Schroeter was represented by three attorneys from Klinedinst PC ("Klinedinst"). (*See* doc. no. 84-1 at 16-19; doc. no. 84-2 at 8-11; 84-3 at 44-74 & 78-86.)[2] Heather L. Rosing is an attorney with more than twenty years in practice, who is highly regarded among her peers. She is a certified specialist in legal malpractice law and practices in the area of professional liability. She was involved in the Anti-SLAPP Motion briefing because Welk alleged that Schroeter violated several ethical standards of the legal profession, including California Business & Professions Code §§ 6151 and 6152 (running and capping) and § 6155 (Lawyer Referral Services Law). (*See* doc. no. 5; *see also* Anti-SLAPP Order at 6-9, 14-15.)

Robert M. Shaughnessy is an attorney with 25 years in practice. His background is in business and appellate litigation. He heads Klinedinst's appellate department. He was involved in the Anti-SLAPP Motion briefing because the case arose from a business dispute which included allegations of violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c), intentional interference with contract, unfair competition under California Business and Professions Code §§ 17200 *et seq.*, and civil conspiracy. (*See* docs. no. 5 (first am. compl.) & 25 (second am. compl.)). Furthermore, the denial of an

///

---

[1] Unless otherwise noted, internal quotation marks, citations, and footnotes are omitted throughout.

[2] All page citations in this order refer to those generated by the court's CM/ECF system.

2

anti-SLAPP motion is immediately appealable.  *See Manzari v. Associated Newspapers Ltd.,* 830 F.3d 881, 886 (9th Cir. 2016).

Gregor A. Hensrude has been in practice for 16 years.  His area of practice is business litigation and transactional work.  He is licensed in the States of Washington and California, and practices out of Klinedinst's Seattle, Washington office, where Schroeter's offices are also located.  (*See* doc. no. 64-3 at 1, 2-4, 18; doc. no. 64-8 at 4.)

The attorneys seek compensation at the rate of $450 per hour.  "The reasonable hourly rate is that prevailing in the community for similar work."  *PLCM Group,* 22 Cal.4th at 1095.  The relevant local community is the community where the court is located rather than the local community of out-of-town counsel.  *Nichols v. City of Taft*, 155 Cal.App.4th 1233, 1242-43 (2007); *Rey v. Madera Unif. Sch. Dist.*, 203 Cal. App. 4th 1223, 1241 (2012); *Ctr for Biological Diversity v. County of San Bernardino*, 188 Cal. App. 4th 603, 617-19 (2010).  In 2009, a court in this district concluded that $425 per hour was a reasonable hourly rate of Kinedinst attorneys' work on an anti-SLAPP motion.  *Fleming v. Cornerstone,* 2009 WL 764940 (Mar. 18, 2009) (Hayes, J.).

Welk opposes the motion arguing that the fees Kinedinst actually billed were much lower -- $240 and $230 per hour.  (*Cf.* doc. no. 84-3 at 44-74.)  Klinedinst explains that these rates represent a substantial volume discount they extend to their insurance company clients.  (Doc. no. 84-2 at 5.)  In support of its argument, Welk cites *El Escorial Owners' Ass'n v. DLC Plastering, Inc.,* 154 Cal. App. 4th 1337, 1367 (2007).  Its reliance is unavailing.  *El Escorial Owners Association* involved contractual attorneys' fees and did not apply the lodestar method.  *See id* at 1365.  It also does not include any discussion why the lower hourly rates charged the insurance company were reasonable.  *See id.* at 1367.  When applying the lodestar method, California courts award a reasonable hourly rate even when the fee agreement provides for a lower rate.  *See Chacon v. Litke,* 181 Cal. App.

3

4th 1234, 1260 (2010) (awarding $350 per hour although the fee agreement provided for $300 per hour).

Welk also contends that the requested billing rate is unreasonable because the case should have been staffed by lower level attorneys. The Court disagrees.

> [T]he reasonable hourly rate used to calculate the lodestar is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case.

*Ketchum,* 24 Cal.4th at 1138-39 (brackets omitted).

In addition to punitive damages, Welk sought more than $15 million in compensatory damages against three Defendants, including Schroeter. (*See* doc. no. 25 at 22.) The initial complaint alleged a RICO claim against Schroeter, which raised the risk of treble damages. (Doc. no. 5 at 23-24.) Although the second amended complaint omitted Schroeter from the RICO claim, it contained a conspiracy claim which sought indirectly to expose Schroeter to the same risk. (Doc. no. 25 at 28-29.) In addition to exposing Schroeter to the risk of several million dollars in damages, the lawsuit attacked Schroeter's professional reputation in the legal community by alleging it was involved in an unethical and unlawful client representation scheme. Finally, the anti-SLAPP motion involved a complex fact pattern. (*See* Anti-SLAPP Order at 2-3, 5-16.)

Based on the complexity of the case requiring a high level of skill in the business litigation and professional responsibility areas, attorneys' qualifications, billing rates in this District, and the passage of time since *Fleming v. Cornerstone*, the Court finds the requested hourly rates reasonable.

The attorneys seek compensation for a total of 270.5 hours. This includes 215.5 hours billed in relation to the Anti-SLAPP Motion and 55 hours attributed to the briefing of the pending motion for attorneys' fees and costs. (Doc. no. 84-1 at 12.)

///

4

Hours billed to the Anti-SLAPP Motion comprise of factual background investigation, including the settlement negotiations, arbitrations and lawsuits between Schroeter's clients and Welk, which preceded the filing of the instant action. It further involved research and drafting of the anti-SLAPP motion seeking to strike the first amended complaint. Instead of opposing the motion, Welk chose to file the second amended complaint. (*See* doc. no. 28.) In its response to Welk's statement of non-opposition, Schroeter reserved its right to seek attorneys' fees for preparation of the initial motion as a prevailing defendant, because Welk dropped three claims it had alleged against Schroeter in the first amended complaint. (Doc. no. 34.) The hours also cover preparation of the Anti-SLAPP motion to strike the second amended complaint, including re-drafting the points and authorities to bring them into compliance with Civil Local Rule 7.1 and Standing Order for Civil Cases, and coordination with co-defense counsel's anti-SLAPP motion and motions to dismiss. Finally, the time includes preparation of the reply brief.

Welk claims that 215.5 hours was excessive based on the counsel's experience and the "non-complex" nature of the case. (Doc. no. 98 at 15.) It complains that the time includes "unrelated" matters (*id.* at 18) such as reviewing the amended complaints, reviewing filings in related cases that were not cited in the anti-SLAPP motion, and considering RICO allegations that ultimately were not included in the anti-SLAPP motions. Welk further argues the hours were unreasonable because Schroeter is seeking reimbursement for drafting two separate anti-SLAPP motions that were "substantively identical" (*id.* at 16), drafting its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and re-drafting of the second anti-SLAPP motion to combine it with Rule 12(b)(6) motion and coordinate with co-defendants' counsel. Finally, Welk maintains that the attorneys' time entries were too vague, and attorneys engaged in double billing.

Upon review of detailed time entries filed in support of the motion (doc. no. 84-3 at 44-74; doc. no. 84-2 at 4-7), Welk's arguments are rejected. The time

5

entries include sufficient explanation to evaluate their reasonableness. To describe the case as "non-complex" is an unfair understatement in light of the fact pattern and legal issues raised by the parties. (*See generally* Anti-SLAPP Order.) Furthermore, given the facts and claims of this case, it was necessary for the attorneys to familiarize themselves with related proceedings to prepare the Anti-SLAPP Motion. (*See, e.g.*, Anti-SLAPP Order at 7, 9, 12.) Time billed to this work was therefore reasonable.

It was also reasonable and necessary for the attorneys to review the amended complaints filed by Welk. This was not only necessary to prepare a motion to dismiss, but to draft an Anti-SLAPP Motion as well. To prevail on the Anti-SLAPP Motion, the attorneys had to successfully rebut Welk's argument that its case had at least "minimal merit." *See Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002); *see also* Cal. Civ. Proc. Code § 425.16(b)(1); *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 840 (9th Cir. 2001). In this regard, Welk had to show, and Schroeter had to rebut, that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment." *Navellier*, 29 Cal.4th at 88-89. In ruling on this issue, the court considers the pleadings, among other things. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* 890 F.3d 828, 833 (9th Cir. 2018) (citing Cal. Civ. Proc. Code § 425.16(b)(2)). Accordingly, there is often a substantial overlap between an anti-SLAPP motion and a Rule 12(b)(6) motion to dismiss. Schroeter's motion to dismiss rested almost entirely on the arguments in support of its Anti-SLAPP Motion. (*See* doc. no. 64-1 at 25.) Although the Anti-SLAPP Motion was granted based on the litigation privilege defense, it was prudent to brief alternative arguments why Welk's claims lacked even "minimal merit." To the extent the billing records show an overlap between the two motions, including consideration of the RICO claim, the fees were reasonably incurred in connection with the Anti-SLAPP Motion.

6

Also rejected is Welk's contention that Schroeter's attorneys spent an unreasonable amount of time on the second Anti-SLAPP Motion after Welk filed the second amended complaint, and on re-drafting the briefs to comply with local and chambers rules, including coordinating with co-defendant counsel. Review of the time entries reflects that the work was necessary and efficiently performed.

Finally, the great majority of the work was performed by Mr. Shaughnessy (186.7 out of 215.5 hours), which virtually eliminates the possibility of double billing. Review of the time billed by Ms. Rosing and Ms. Hensrude, does not reveal an undue overlap in the work.

For the foregoing reasons, the Court finds that 215.5 hours were reasonably incurred in connection with the Anti-SLAPP Motion in light of the procedural history of this case, and complexity of the issues presented in the Anti-SLAPP motion and Welk's opposition.

Schroeter also requests reimbursement of the fees incurred relative to the pending motion for attorneys' fees. Welk does not oppose this request. Mr. Shaughnessy's declaration states he billed 45 hours to prepare the moving papers, and he estimated an additional ten hours for the reply. (Doc. no. 84-2 at 12.) Fees recoverable under California Civil Procedure Code § 425.16(1)(c) "ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." *Ketchum*, 24 Cal.4th at 1141. Upon review of the fee motion with attached exhibits, the Court finds the request to be reasonable.

Based on the foregoing, Schroeter's request for reimbursement of 270.5 hours at $450 per hour is reasonable. The lodestar is therefore calculated at **$121,725**.

Schroeter requests a 1.5 multiplier to be applied to its lodestar to the extent it is attributable to the Anti-SLAPP Motion. This amounts to an additional $48,487.50. (Doc. no. 84-1 at 12; doc. no. 100 at 10 n.4.) Welk opposes this request.

"[S]ection 425.16 permits the use of the so-called lodestar adjustment method[, which] allows a court awarding attorney fees to include a fee enhancement . . .." *Ketchum,* 24 Cal.4th at 1131, 1136. After calculating the lodestar, a court considers whether the total award so calculated is reasonable. *See PLCM Group*, 22 Cal.4th at 1095-96. In adjusting the lodestar, the court may consider: "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 1096 (internal quotation marks and citation omitted). However, the court "should not consider these factors to the extent they are already encompassed within the lodestar." *Ketchum,* 24 Cal.4th at 1138. "[T]he party seeking a fee enhancement bears the burden of proof." *Id.*

The request is based primarily on the contention that Welk's action was filed essentially in bad faith by making representations of fact Welk knew were untrue. (*See* doc. no. 100 at 10.) It also points to the fact that the Anti-SLAPP motion resulted in a complete dismissal of the case against Schroeter, which was the result of exceptional representation. Klinedinst also claims that by charging discounted rates to Schroeter's insurance company, it undertook the representation on something akin to a contingency basis by taking the risk that payment may not reflect the full value of their services. (*Id.*)

The Court disagrees that enhancement is necessary for reasonable compensation.

> [T]he legislative aim in including the attorney fee provision [in section 425.16] was apparently to strengthen enforcement of certain constitutional rights, including freedom of speech and petition for redress of grievances, by placing the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system, and by encouraging private representation, including instances when a litigant cannot afford fees.

*Ketchum,* 24 Cal.4th at 1136.

/ / /

8

Both aims weigh against a fee enhancement here. A sanction against abuse of the judicial system is inherent in the fee-shifting provision. It therefore cannot also serve as a reason to enhance the fees. *See Ketchum,* 24 Cal.4th at 1142, 1139 (fee enhancement should not be "imposed for the purpose of punishing the losing party").

Furthermore, Klinedinst was not retained on a contingency basis by an indigent litigant. It was retained by Schroeter's insurance company at a volume-discounted hourly rate. It was promised payment at the agreed-upon rate. By prevailing on the Anti-SLAPP Motion, it received not only the rate it was promised by the Schroeter's insurance, but a higher, reasonable rate. The Court therefore finds that further enhancing Schroeter's fees for contingency representation is not warranted.

Finally, the Court declines to enhance Klinedinst's fees based on exceptional representation.

> For the most part . . . quality of representation [is] already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate. . . . Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable.

*Ketchum,* 24 Cal.4th at 1138-39. The Court awarded Klinedinst an hourly rate commensurate with the attorneys' experience and expertise required to address the complexities of this case. Despite the high quality of representation which resulted in an excellent outcome for the client, the quality of representation did not exceed the level provided by attorneys commanding the same hourly rate. To further enhance the fees would amount to "improper double counting." *See id.* at 1138.

///

9

Accordingly, Schroeter is awarded $121,725 for reasonable attorneys' fees associated with the Anti-SLAPP Motion and pending motion for attorneys' fees. Its request for a fee enhancement is denied.

Schroeter further requests **$182.62** for costs, which Welk does not oppose. Upon review of the documentation provided in support of the cost request (doc. no. 84-3 at 76), the Court finds them to be reasonable.

For the foregoing reasons, Schroeter's motion for attorneys' fees and costs is granted in part and denied in part. Welk shall pay Schroeter $121,725 for attorneys' fees and $182.62 for costs.

**IT IS SO ORDERED.**

Dated: February 3, 2020

_____
Hon. M. James Lorenz
United States District Judge